# EXHIBIT 6

```
 1              UNITED STATES DISTRICT COURT
                SOUTHERN DISTRICT OF TEXAS
 2                   HOUSTON DIVISION

 3   UNITED STATES OF AMERICA      *   CRIMINAL NO. H-12-503
                                   *
 4   VERSUS                        *   Houston, Texas
                                   *   July 18, 2018
 5   JASON DANIEL GANDY            *   8:30 a.m.

 6

 7                              JURY TRIAL
                BEFORE THE HONORABLE LEE H. ROSENTHAL
 8             CHIEF UNITED STATES DISTRICT JUDGE
                              (Day 1)
 9

10   For the Government:

11           Ms. Sherri Zack
             Ms. Kimberly Ann Bulger Leo
12           U.S. Attorney's Office
             1000 Louisiana Street
13           Suite 2300
             Houston, Texas 77002
14

15   For the Defendant:

16           Mr. Sean R. Buckley
             Attorney At Law
17           770 South Post Oak Lane
             Suite 620
18           Houston, Texas 77056

19

20           Mr. Dustan Orlando Neyland
             Law Offices of Dustan Neyland
21           900 Rockmead
             Suite 132
22           Kingwood, Texas 77339

23

24   Proceedings recorded by mechanical stenography, produced by
     computer-aided transcription
25
```

1   Appearances - Cont:

2

3

4   Court Reporter:

5               Fred Warner
                Official Court Reporter
6               515 Rusk Avenue
                Houston, Texas 77002
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          THE COURT:  Good morning.  Please be seated after
2     you state your appearances.
3          MS. ZACK:  Sherri Zack and Kim Leo on behalf of the
4     United States, Your Honor.
5          MR. BUCKLEY:  Good morning, Your Honor.  Sean
6     Buckley and Dustan Neyland for Mr. Gandy.
7          THE COURT:  All right.  Thank you very much.
8               Let me begin by asking if the government has
9     related to the defendant, defense counsel the latest plea
10    offer that the government might be prepared to make.  Do not
11    tell me what it is.  Just tell me that you have conveyed it
12    to defense counsel.
13         MS. ZACK:  Yes, Your Honor.
14         THE COURT:  And have, Mr. Buckley, have you in turn
15    made sure that your client is fully aware of it and discussed
16    it with him, the advantages and disadvantages, his rights and
17    exposures?
18         MR. BUCKLEY:  Yes, Your Honor.
19         THE COURT:  And that he has made an informed
20    decision to continue to plead not guilty?
21         MR. BUCKLEY:  Yes, Your Honor.  And I think, to add
22    some context to that answer, throughout my representation, I
23    have covered those topics; and then most recently I have
24    conveyed the offer.  So the discussion may not have occurred
25    all at once, but it has occurred over the time period that I

1  have been involved in this case.

2          THE COURT:  And is there any benefit to be gained by

3  taking 15 minutes and having you and Ms. Zack meet with or

4  without your client and co-counsel to discuss anything

5  further?  I am happy to give it to you if it would help.  You

6  tell me.

7          MR. BUCKLEY:  Unless the government's offer would

8  change from its last offer, then I don't believe that there

9  would be a benefit to that, Your Honor.

10         THE COURT:  I wasn't sure because there had been

11  some late rulings that might have affected the discussion.  I

12  didn't know one way or the other.

13         MS. ZACK:  No, Your Honor.

14         THE COURT:  "No" being it didn't affect it, or "no,"

15  you don't think there is any reason to continue discussion?

16         MS. ZACK:  Both.  It didn't affect it, and I don't

17  think there is any reason unless they would like to discuss

18  anything.  We have made our offer, and that's where we sit.

19         MR. BUCKLEY:  And we've, "we" meaning me, I have

20  discussed I think what our position would be for

21  counteroffer, which was rejected, and so I just think that --

22         THE COURT:  Let's go forward.

23              And, Mr. Gandy, is it your decision to continue

24  to plead not guilty rather than plead guilty and get the

25  benefits under the guidelines that pleading guilty provides?

1          THE DEFENDANT:  Yes, ma'am.

2          THE COURT:  All right.  And that's based on your

3  discussions with counsel?

4          THE DEFENDANT:  Yes.

5          THE COURT:  And your family?

6          THE DEFENDANT:  Yes, ma'am.

7          THE COURT:  All right.  Thank you.  You may be

8  seated, sir.

9          Okay.  Have you had a chance to go through the

10  jury questionnaires to see if there is anybody here who you

11  know or who has some kind of background that might make them

12  not even worth bringing up?

13          MS. ZACK:  Not yet, Your Honor.

14          THE COURT:  Go ahead and do that real quick.

15          MR. BUCKLEY:  Thank you.

16          THE COURT:  And have the exhibit lists been marked

17  up to reflect and modified to reflect the Court's latest

18  ruling on the suppression motion?

19          MS. ZACK:  Yes, Your Honor.

20          THE COURT:  Did all counsel review the juror

21  information sheet, and what is the parties' best estimate now

22  on the length of the trial?

23          MS. ZACK:  Your Honor, I don't believe that the

24  ruling really altered the time frame in any way.

25          THE COURT:  I wasn't suggesting it did.  Just remind

1  me what your estimate is.

2          MS. ZACK:  I think the government should be done by

3  Friday afternoon is my hope.

4          THE COURT:  Okay.  I am guessing Monday.

5          MR. BUCKLEY:  Yes, Your Honor.  I think that we will

6  make the determination fairly quickly whether to rest at the

7  end of the government's case.  If we go to Monday, it will be

8  brief, Your Honor.

9          THE COURT:  Very good.  Thank you.

10          Well, I have cleared my decks.  I do have a

11  lunch meeting today, so we will interrupt jury selection for

12  that, sadly; but other than that, I have cleared my decks for

13  you all.

14          Given the amendments -- tell me when you are

15  done with what you are doing and then we will take up one

16  other thing.  Tell me when you are ready.

17          MR. BUCKLEY:  We're ready for the defense, Your

18  Honor.  We haven't noticed anyone who we know or who we

19  think would not be worth bringing up.

20          THE COURT:  Good.

21          Is that true for the government as well?

22          MS. ZACK:  Just whether we know them, correct?

23          THE COURT:  Or that there is something disqualifying

24  about them on the face that would make it not even worth

25  bringing them up.

1          MS. ZACK:  I don't think, without further inquiry,
2     that would be the case.
3          THE COURT:  Very good.  Lisa, you want to get them
4     up.
5          MR. BUCKLEY:  Your Honor, there is one matter before
6     the panel comes in that I want to address to the Court.
7          THE COURT:  That's fine.  Go ahead.
8          MR. BUCKLEY:  Mr. Gandy has indicated that it's his
9     preference to wear his FDC clothing during the trial, against
10    my advice, but --
11         THE COURT:  I am not going to permit it.  I think
12    that is prejudicial to the jury.  It conveys a signal that,
13    very visible signal that Mr. Gandy is already incarcerated.
14    That's true, but it doesn't -- it's not anything relevant to
15    the jury's decision, and it can have a prejudicial impact.
16    So unless I can understand a specific reason for it, I am not
17    going to permit it.
18         MR. BUCKLEY:  Yes, Your Honor.  May I confer with
19    Mr. Gandy for a moment?
20         THE COURT:  You may.
21             (Mr. Buckley confers with Mr. Gandy)
22         THE COURT:  Tell me when you are ready.
23         MR. BUCKLEY:  We understand the Court's ruling, Your
24    Honor.
25         THE COURT:  All right.  Very good.

1    MS. ZACK:  Your Honor, may I speak to two things we
2    would like to bring up briefly?
3    THE COURT:  Lisa, go ahead and bring the panel up
4    while they're going through these things, please, so we can
5    get started.
6    CASE MANAGER:  He is not dressed.
7    THE COURT:  Oh, he is not dressed yet.
8    Will the Marshals take him and let him get
9    dressed.  Do you have clothes for him?
10    MR. BUCKLEY:  Yes, Your Honor.  I delivered the
11    clothes this morning.
12    THE COURT:  All right.  Make sure he is dressed
13    promptly and back here as quickly as possible.
14    THE MARSHAL:  We will, Your Honor.
15    THE COURT:  Thank you.  Thank you, Lisa.
16    Go ahead.
17    MS. ZACK:  Okay.  Two things, Your Honor.
18    First, in reviewing Your Honor's ruling -- and
19    I am not asking for reconsideration, I am not suggesting
20    anything of the sort -- I just wanted to point out because I
21    know how meticulous Your Honor is in drafting --
22    THE COURT:  Just get to the point, Ms. Zack.
23    MS. ZACK:  You cited, Your Honor, to page 4 -- I'm
24    sorry -- 549 in Murray in your decision.  549 in Murray is
25    contained within the dissent.

1     THE COURT:  All right.  So let's just make sure that
2  we have got the right cite.  Go ahead and check that, please
3  right away.  We'll check.  Thank you.
4     MS. ZACK:  Thank you, Your Honor.
5     THE COURT:  It doesn't change the outcome.
6     MS. ZACK:  I just wanted to point out --
7     THE COURT:  And I still don't understand why the
8  government waited so long.  I am sure it's frustrating for
9  you, Ms. Zack.  It was equally frustrating for me.  It's an
10  unnecessary issue, wholly unnecessary.
11     MS. ZACK:  I don't disagree with Your Honor at all.
12     THE COURT:  I know.  Enough said.
13     MS. ZACK:  We are just as frustrated.
14     THE COURT:  Enough said.
15     MS. SACK:  The other issue, Your Honor, and we
16  brought it to Mr. Buckley's attention, and I have case law
17  for Your Honor, there is a scrivener's error in the
18  indictment if the Court were to look at Count 5.
19     THE COURT:  I have it right here.  What page?
20     MS. ZACK:  4.
21     THE COURT:  February indictment of 2018?
22     MS. ZACK:  Yes, Your Honor.
23     THE COURT:  Got it.
24     MS. ZACK:  In Count 5 it currently reads November 1,
25  2006 to December 27th, 2006.  Those should both be 5s, not

1  6s.  And I have case law to suggest that that is not a
2  constructive amendment.
3           THE COURT:  Any objection?
4           MR. BUCKLEY:  Yes, Your Honor.  We do object.  I
5  understand it may not be a constructive amendment, but I do
6  believe it's a prejudicial -- it would constitute a
7  prejudicial variance.
8           THE COURT:  Why?
9           MR. BUCKLEY:  In the sense that on the face of the
10 indictment, it was our belief that the government's proof
11 that we anticipated at trial would not be sufficient to
12 convict on that count.  And that relates to the anticipated
13 defensive strategy in this case as to that count, and I
14 learned about this yesterday.  I think, I believe it was
15 yesterday.  So that's the objection.  It is surprising and
16 prejudicial as to our presentation of the defense, Your
17 Honor.
18           MS. ZACK:  May I respond, Your Honor?
19           THE COURT:  Yes.
20           MS. ZACK:  This indictment has been in play since
21 February of 2018 this year.  Defense counsel has always been
22 in possession of the dates of birth of the victims.  It would
23 be a factual impossibility, and I don't believe that Mr.
24 Buckley would deny that he knew that, that if the dates were
25 2006.  I mean, it's an obvious error.  It was not -- it

1    doesn't change the elements of the crime charged.  It might
2    have at some point been the subject of a motion to dismiss or
3    a motion for bill of particulars or some such other thing,
4    but it is absolutely a typographical error that was made.  We
5    know -- we knew when we indicted the defendant how old the
6    victim was.  The victim's date of birth doesn't change, and
7    it would be a factual impossibility to be under 18 in 2006.
8            THE COURT:  I will grant the variance with the
9    change.  I am not sure it is a variance.
10           MR. BUCKLEY:  Understood, Your Honor.
11           MS. ZACK:  I have three copies for the Court, if
12   Your Honor would like, of the corrected version for use
13   throughout the trial.
14           THE COURT:  All right.  Thank you.
15           MR. BUCKLEY:  Your Honor, Ms. Zack and I were having
16   a discussion about voir dire prior to Your Honor's appearance
17   this morning.  I think that we would be willing to waive our
18   individual voir dires if the Court would be willing to do the
19   entire voir dire.  And Ms. Zack may have a particular issue
20   with that.
21           THE COURT:  Are you okay with that?
22           MS. ZACK:  I am, Your Honor, subject to if there is
23   an area that we believe Your Honor had not covered
24   thoroughly.
25           THE COURT:  But you still get to participate in voir

 1  dire up here individually, No. 1.

 2          MS. ZACK:  Absolutely.

 3          THE COURT:  And No. 2, I will ask you if there is

 4  any additional question that should be asked either of

 5  individual members of the panel or the panel as a whole

 6  before we shut it down.

 7          MS. ZACK:  Absolutely.  That would be fantastic.

 8          THE COURT:  I am happy to do it.

 9          MS. ZACK:  Thank you, Your Honor.  We greatly

10  appreciate it.

11          THE COURT:  Very few people say that.  It's usually

12  the other way:  What, you are not going to let me do more?

13          MR. BUCKLEY:  I reported the pleasant experience I

14  had previously with that, and I think that it was very

15  efficient.

16          THE COURT:  The use of the word "pleasant" is a

17  marvelous choice.  Thank you.

18          MR. BUCKLEY:  Thank you, Your Honor.

19          THE COURT:  The Court notes that Mr. Gandy is back

20  with his non-jail clothing on.  Thank you.

21          MS. ZACK:  Your Honor, can I bring something to the

22  Court and defense counsel's attention?

23          THE COURT:  Yes, ma'am.

24          MS. ZACK:  I looked at names when you asked us to.

25  I do want to bring up one thing.  In going through them now

1  and looking at people's occupations, it appears that Juror

2  No. 19 is a professor of zoology at Rice University.

3        THE COURT:  So.

4        MS. ZACK:  I mentored a group of fifth graders and

5  arranged for an interview with them.  It was with a zoology

6  professor at Rice.  And through the life of me I don't --

7        THE COURT:  I don't think that causes any problem.

8        MS. ZACK:  She may recognize me.

9        THE COURT:  It doesn't matter.  That is not the kind

10  of contact or acquaintanceship that we are worried about

11  here.  But thank you for letting me know.

12

13              (Jury panel enters courtroom)

14

15        THE COURT:  Good morning, ladies and gentlemen.

16  Please be seated.

17        JURY PANEL:  Good morning.

18        THE COURT:  It is a pleasure to welcome you to your

19  courthouse, this courtroom and this phase of your jury

20  selection.

21              My name is Lee Rosenthal.  I am one of the

22  trial judges here in the Houston Division of the Federal

23  Courts for the Southern District of Texas, and I have the

24  great honor of being the Chief Judge of district.  And it is

25  a real pleasure, as I said, to welcome you.  It is a pleasure

1  for us and for the attorneys whose job it is to present this
2  case to those of you selected as jurors for your deliberation
3  and decision.

4          I know it is not a pleasure for all or most of
5  you.  We all know that your presence here today is not your
6  first choice of how to spend this midsummer morning in the
7  middle of the week in the middle of July in Houston, Texas.
8  We know that some of you got up very early this morning and
9  drove a long way because Texas is big and this division alone
10 takes up 13 counties.  The entire district takes up about
11 30-some counties.

12          We are one of the biggest districts in the
13 country.  We go all the way down to Brownsville, Laredo and
14 Corpus Christi.  We cover Galveston and Victoria and back to
15 Houston.  And you can tell from that description just what a
16 diverse and interesting district that is.

17          But you are here in Houston, and you are here
18 to help us select a jury to try a criminal case.  And
19 although I know that your presence here is at least
20 inconvenient, I hope very much that at the end of this
21 process you will understand more than you did when you came
22 in or at least have a renewed appreciation for what you
23 already knew, that jury duty is not merely an obligation of
24 citizenship in this country, it is a privilege, and I mean it
25 in this way.

1           The fact that our courtrooms are open to
2  anybody, citizens, press, anybody, the fact that we have a
3  court reporter here taking down a complete, word-for-word,
4  honest record of everything said that anybody can read, that
5  kind of transparency, the fact that we assemble juries made
6  up of citizens who don't know each other necessarily, don't
7  know the parties, who independently assess important matters
8  like guilt or innocence, that kind of transparency, that kind
9  of citizen participation, we don't stack decks, those are
10  hallmarks of democracy, and they require citizen
11  participation to protect and to defend it.  And these are not
12  trivial rights.  The right to a jury trial is so important
13  that it's in our Constitution, and we as judges are sworn to
14  enforce it and apply it fairly in every case.  You, as
15  members of the jury panel, are an indispensable part of that.
16           We all pay taxes.  Some of us, ourselves, our
17  families serve in the military, and we vote, I hope; but
18  beyond that, we really don't do much as citizens, we really
19  don't.
20           This is your opportunity to serve today, and we
21  are delighted to have given you that opportunity, because
22  what you help us do is fulfill the promise we make to every
23  party, civil or criminal, citizen or not, regardless of race,
24  gender, sexual orientation, ethnicity, anything else.  That
25  promise is this:  You will be entitled to a jury.  You will

1  get a jury that is as best we can ensure fair and impartial

2  for your case.

3          Now, what do I mean by a fair and impartial

4  jury?  First question.  A fair and impartial jury is made up

5  of jurors who do not start out with a preconceived or

6  predetermined idea of how the case ought to end.  You start

7  out with an open mind and you listen very carefully to all of

8  the evidence.  At the end of that evidence you make up your

9  mind.  You deliberate together based on only three things:

10          No. 1, my instructions on the law.  Even if you

11  disagree with them, you have to apply the law as I instruct

12  you it is.  Even if you were charged, if you were president,

13  you were whatever, you would write it differently, you have

14  to be able to apply it as Congress enacted it and courts have

15  interpreted it.

16          No. 2, you base your decision on the evidence

17  in this courtroom, on the documents that have been admitted

18  into evidence and on the testimony from the witness stand.

19  You do not base it on what you remember reading on TV or

20  listening to on television, reading in the newspaper or

21  things that happened to you or members of your family or your

22  close personal friends.  You base it on the evidence that was

23  presented here in court.

24          No. 3, yes, you use your common sense, but you

25  don't substitute things that happened elsewhere to other

1   people, including yourselves.  You don't allow yourselves to

2   be swayed by bias or prejudice or sympathy in any way.

3   That's a fair and impartial jury.

4              And what we do during jury selection, the

5   reason we have so many of you, because we are only going to

6   pick a certain number, is because not every juror is a fair

7   and impartial juror for every kind of case.

8              Let me give you an example.  Let's assume that

9   this was a civil case, not a criminal case, which it's not,

10  and let's assume that it involved a car accident in which

11  somebody rear-ended somebody else and the result was a back

12  injury in the car that got hit, okay, you with me?

13             So let's assume for the purpose of this example

14  that within the last year you were in a very similar

15  accident, had a very similar injury, or one of your children

16  or your parents or your spouse or significant other or your

17  very best personal friend was the person who got it hit and

18  had the back injury.  You would probably find it very

19  difficult to separate yourselves, your own feelings from what

20  the case was about.  You would not be a fair and impartial

21  juror for that case, but you might be a terrific juror for

22  the breach of contract case that another judge was trying

23  down the hallway.

24             So we have this process that we are about to

25  launch called the voir dire examination to help us identify

1   who is not fair and impartial, who would have a hard time

2   being the kind of fair and impartial juror I've described.

3   And here's how that process works:  So "voir dire" is

4   actually the Texas pronunciation -- we're the only people who

5   say it that way -- of two words that started out as French

6   words.

7               Voir, v-o-i-r, or voir, most people call it

8   "voir deer."  We think that's sissified or high-fallutin'.

9   Voir dire, voir means to see.  Dire means to speak, to see

10  and to speak.

11              So what is it that you are going to be seeing

12  in this phase?  It's not evidence.  Nothing you hear in this

13  part of the proceeding is evidence in the case.  That comes

14  later when we have our jury.  And you are not going to be

15  hearing any instructions on what the law is.  That, too,

16  comes later.

17              What you get now is a kind of a handshake

18  introduction to the people the case involves and the issues

19  the case involves.  That's what you will see.  I'll introduce

20  you to the lawyers who will be representing the parties, to

21  the representatives of the parties, the parties themselves,

22  and I will give you a description, not evidence, a summary of

23  what the parties' positions on the facts are, what the case

24  is about, just the subject matter.  And then you will speak,

25  to see and to speak.  You will tell us, in response to a

series of questions I ask, if there is anything about the
issues, the case, the people or the way in which we insist,
the rules of the road, if you will, for any criminal case
that raise a concern on your part about your ability to be
fair and impartial if you were picked for this jury.  That's
what we're doing.  It's an important but very limited
purpose, but it is important.

So here's the mechanics of how we proceed:  All
of the questions I ask you, ladies and gentlemen, are going
to be in a format that will not ask you or call on you to
answer it at that point.  I will ask a question along the
following lines:  Is there any member of the jury panel who,
is there any member of the panel who's close, very close
personal friends and members of your immediate family who?

If any of the concerns or points of the
question applies to you or could, raise your hand, okay.  And
when I recognize you, stand up so I know you're ready to talk
and I know who you are, and in a loud voice, because this is
a big courtroom with lousy acoustics unless you have a
microphone, in a big voice give me just your jury number.
Don't give me your name; don't answer the question.

When we finish this section of the voir dire,
the questions asked to you as a group, I will ask those who
raised their hand in response to any question to come up here
to the bench and with only me and the lawyers up here tell me

why you raised your hand, and we may ask some additional
questions then.

And I do it this way for a couple of reasons.
One reason is because it is not always easy in response to
some of the questions.  And we are not being nosey.  We are
just trying to get in issues that experience, centuries of
experience has taught need to be raised and explored to
expose, make us aware of issues that might present problems
for us as we try to deliver on our promise of a fair and
impartial jury in every case.

But some of these questions call for
information that we don't necessarily want to divulge in
front of a group of people we haven't met before or even if
we have, so we encourage your open and frank participation in
this process.  And it won't work if you're not forthcoming,
open and frank.  I have you come up here, and in the
relatively privacy of just us, to explain why, and I will
only refer to you throughout by your number.

I'm not reducing you to a number, I'm
protecting your privacy, because the record is available to
all.  Your names, your contact information is available to no
one.  We do not share it, and we do not reveal it on a
publicly-available transcript.

So I will call you up a row at a time; and when
we finish that, the lawyers and I will confer, we will have a

1  jury and we'll proceed with the rest of the case.  So that is

2  our process, that's our purpose; and as you can tell, none of

3  it works, as I said, without your full participation.

4          If you are uncertain that you are indeed among

5  those a particular question is meant to draw response from,

6  but you're not sure, err on the side of responding.

7          Now, having said that and without detracting

8  from it in the slightest, this is not an invitation for you

9  to get creative and come up with a really good reason why you

10  just can't be there.  And there are about three important

11  reasons for that.

12          First, if you are trying to get out of jury

13  service, it's a lousy way to do it.  This case is anticipated

14  to take maybe a week, maybe.  If you are not chosen for this

15  case, you would remain in the pool and the judge who has a

16  four-week trial down the hall may find you super.  So it is a

17  really clumsy way of trying to get out of jury duty.

18          But more importantly, ladies and gentlemen,

19  that's not why you're here.  That kind of approach wastes the

20  time of all of us.  And look around at how many people and

21  how much time is represented in this room.  We will respect

22  that time and we will be as thorough and as efficient both as

23  we possibly can be.  Don't waste our time, and don't waste

24  the importance of this process in a trial and of your

25  participation in this process.

1         All right.  Enough of the civic lesson.  Let's
2    get to the specifics.  As I said, this is a criminal case.
3    You've heard all of these things before, the very basis of
4    the rights that we guarantee to every person charged with a
5    crime who comes into the courts to be tried; but I want to be
6    sure that you're reminded of these basic rights and that none
7    of you have an issue applying them.

8         In a criminal case in any court in the United
9    States of America, everyone brought into court as a
10   defendant, as I said, regardless of race, religion,
11   nationality, sexual orientation, sex, anything else, everyone
12   is innocent unless and until proven guilty.

13        In some systems of the world you're charged
14   with a crime, you're presumed guilty before there is any
15   proof at all.  We do not follow that system.  We have the
16   opposite presumption.  Everyone, including the defendant, is
17   innocent of any crime that they're charged with; and they are
18   innocent throughout this proceeding unless and until the
19   government, the prosecution proves guilt as to every element
20   of the offenses that the defendant is charged with beyond a
21   reasonable doubt.

22        Okay.  Everybody's heard that, right, the
23   presumption of innocence until and unless proof of guilt is
24   established beyond a reasonable doubt.  That is not the same
25   as beyond a shadow of a doubt.  A shadow of a doubt is

1 absolute certainty.  That's not required.  But it must be
2 beyond a reasonable doubt.

3        When money is involved in a civil case, it is
4 by a preponderance of the evidence; technical term, 51
5 percent.  Beyond a reasonable doubt goes beyond that.  It's
6 more.  It is proof that would satisfy you in making a
7 decision in the most important of your own affairs.

8        Is there anybody in the jury panel who, without
9 hearing a word of what the case is about, who it involves,
10 anything like that, would have difficulty in applying this
11 basic rule that sitting here today the defendant is innocent
12 of the charges and that throughout the case the government
13 has the burden of proving guilt beyond a reasonable doubt in
14 order to secure a conviction?

15        Anybody on the first row have trouble applying,
16 they think that they might have a difficulty applying that
17 standard?

18              (No Response)

19     THE COURT:  Second row?

20              (No Response)

21     THE COURT:  Okay.  My depth perception is not what
22 it used to be.

23     Third row?

24              (No Response)

25     THE COURT:  Fourth row?

1                    (No Response)

2            THE COURT:  And the last row, anybody at all?

3                    (No Response)

4            THE COURT:  Thank you.

5            Is there anybody in the panel who is catching

6    themselves thinking right now, jeez, where there's smoke,

7    there's got to be fire.  The defendant wouldn't be here if he

8    hadn't done something criminal.  Anybody catch themselves

9    thinking that?

10           I see one hand, a couple hands.

11           PROSPECTIVE JUROR NO. 32:  32.

12           THE COURT:  You modeled the behavior.  That's

13   exactly the right way to do it.

14           PROSPECTIVE JUROR NO. 34:  34.

15           THE COURT:  Anybody else?

16           PROSPECTIVE JUROR NO. 37:  37.

17           THE COURT:  Yes, sir.  I see one more hand.

18           PROSPECTIVE JUROR NO. 47:  47.

19           THE COURT:  Thank you.

20           Anybody else?

21                    (No Response)

22           THE COURT:  Thank you.

23           In a federal case -- some of you have served in

24   state court on juries in criminal cases.  In a federal case,

25   the jury is not involved in any way in punishment.  That is

1    entirely up to the Court later.  If and only if the defendant
2    is found guilty beyond a reasonable doubt, the jury has
3    nothing to do with punishment, considers guilty or not
4    guilty, and no consideration of punishment should enter into
5    any deliberations.
6              Is there anybody on the panel who might have
7    difficulty applying that standard?
8                        (No Response)
9         THE COURT:  I see no hands.  Thank you.
10              I think you have also all heard the term that
11   someone "has been indicted."  An indictment is just the way a
12   case gets to court.  It is no evidence at all of anyone's
13   guilt.  It's the mechanism used.
14              Is there anybody who believes that just because
15   the indictment has been issued, the defendant must, again,
16   must be guilty of what the indictment alleges?  Anybody have
17   that belief going in?
18              I see one hand.  Thank you.  Go ahead.
19         PROSPECTIVE JUROR NO. 37:  37.
20         THE COURT:  Thank you.
21              Anybody else?
22                        (No Response)
23         THE COURT:  Thank you.
24              There are a couple of other basic rules of
25   criminal cases I wanted to go over with you.  Because the

1    burden is entirely on the prosecution, the government, to
2    prove guilt beyond a reasonable doubt, a defendant has no
3    obligation whatsoever to prove his or her own innocence,
4    none.  Defendant does not have to produce any evidence.
5    That burden is all on the government.
6            Defendant is not required to testify.  Indeed,
7    it is just the opposite.  Our Constitution protects every
8    defendant from having to testify in court in a case against
9    that defendant.  It is the privilege against self
10   incrimination.  You've heard about that.
11           And it is such a vital protection that it is in
12   our Constitution, and every jury in every criminal case gets
13   the instruction:  If the defendant does not testify, you may
14   not consider that fact for any purpose in deciding guilt or
15   innocence.
16           So we have these two basic instructions:  If
17   the defendant produces no evidence or less evidence than the
18   government, you may not consider that or hold it against the
19   defendant in deciding guilt or innocence.
20           Is there anyone on the panel who would have
21   difficulty doing that?
22                    (No Response)
23        THE COURT:  I see no hands.
24           The defendant has no obligation to testify in
25   any criminal case.  Is there anybody on the defendant -- on

1   the jury panel -- excuse me -- who would have difficulty

2   following the instruction that if the defendant does not

3   testify, you may not consider that fact in deciding guilty or

4   not guilty?  Is there anybody who would have difficulty in

5   applying that rule?

6                     (No Response)

7           THE COURT:  Let me ask that a little bit more

8   searchingly.  If the defendant says nothing, is there anybody

9   who catches himself or herself thinking, well, if he wasn't

10   guilty, he would tell us, he or she would testify?

11           I see one hand.

12           Anybody else?

13           PROSPECTIVE JUROR NO. 58:  58.

14           THE COURT:  58?

15           PROSPECTIVE JUROR NO. 58:  Yes, ma'am.

16           THE COURT:  Yes, sir.

17           PROSPECTIVE JUROR NO. 53:  53.

18           THE COURT:  Thank you.

19           PROSPECTIVE JUROR NO. 54:  54.

20           THE COURT:  Thank you.

21           Anybody else?

22                     (No Response)

23           THE COURT:  Thank you very much, ladies and

24   gentlemen.

25           Is there anybody on the panel who at this

1  stage -- and again, you've heard nothing about even what the
2  case concerns -- who would have trouble, who would at any
3  point be looking at the defense and the defense counsel and
4  saying, you have to prove your innocence to me, when the law
5  requires and my instructions would make clear the government
6  has the burden of proving guilt throughout the prosecution.
7  The defense has no obligation at all to prove innocence.  Is
8  there anybody who would have difficulty applying that?
9                    (No Response)
10        THE COURT:  Thank you very much, ladies and
11  gentlemen.  I see no hands.
12             I am going to go now give you a brief summary
13  of what the case involves.  It's only a summary; it's not
14  evidence; it's not instruction on the law at all; but this is
15  your handshake introduction to who the case involves and what
16  it's about.
17             This case presents allegations that the
18  defendant, Mr. Jason Daniel Gandy -- Mr. Gandy, would you
19  please rise.  Mr. Gandy is standing up before you, ladies and
20  gentlemen.  Is there any member of the panel who believes
21  they know Mr. Gandy or recognize him in any way?
22                    (No Response)
23        THE COURT:  I see no hands.  Thank you.  You may be
24  seated, sir.
25             Mr. Gandy is represented in this case by two

```
 1  attorneys, Mr. Sean Buckley.  Mr. Buckley is standing.
 2  Anybody recognize him?
 3                      (No Response)
 4           THE COURT:  And Mr. Dunstan -- Dustan -- I'm sorry.
 5  I'm added an "n." -- Neyland
 6                  Anybody believe they recognize Mr. Neyland?
 7                      (No Response)
 8           THE COURT:  Thank you.
 9                  The prosecution in this case is represented by
10  lawyers in the United States attorneys office.  They are Ms.
11  Sherri Zack, who is standing before you, and Ms. Kimberly
12  Leo, who is standing before you.
13                  Does anybody recognize either of these two
14  individuals?
15                      (No Response)
16           THE COURT:  Again, I see no hands.
17                  Would you introduce the members of your team
18  who are at counsel table with you.
19           MS. ZACK:  Yes, Your Honor.  This is Special Agent
20  Juanae Johnson and paralegal Patrice Warren.
21           THE COURT:  Thank you.
22                  And Ms. Johnson is with, Agent Johnson is with?
23           MS. ZACK:  Homeland Security Investigations, Your
24  Honor.
25           THE COURT:  All right.  Thank you.
```

1                   Anybody believe they recognize or know the

2      individuals who are standing?

3                        (No Response)

4             THE COURT:  You may be seated.  Thank you.

5                   As I have said, Ms. Zack and Ms. Leo are

6      Assistant United States attorneys in the Southern District of

7      Texas.

8                   Our U.S. Attorney is Mr. Ryan Patrick.  Is

9      there anybody who knows Mr. Patrick?

10                       (No Response)

11            THE COURT:  Is there anybody who knows anyone who is

12     a member of the United States attorney's office in the

13     Southern District of Texas, anybody in the panel?

14                  I see one hand.

15            PROSPECTIVE JUROR NO. 52:  52.

16            THE COURT:  52.  Thank you, sir.

17                  Is there any member of the panel -- I'm sorry.

18     A couple of others raising.

19            PROSPECTIVE JUROR NO. 25:  25.

20            THE COURT:  Thank you 25.

21                  Is there any member of the panel who themselves

22     has ever been a part of any agency, department, firm that

23     does prosecution work?  That can be a U.S. attorney's office,

24     it can be a district attorney's office, it can be a county

25     attorney's office, it can be a state attorney general, it can

```
 1  be the Department of Justice.
 2                        (No Response)
 3          THE COURT:  Is there any member of the panel who
 4  themselves has ever been a part of any prosecution office?
 5                        (No Response)
 6          THE COURT:  I see no hands.
 7              Is there any member of the panel who has
 8  members of your immediate family or your very close personal
 9  friends who are or in the past have been part of any
10  prosecution office or agency, state or federal, local, any?
11              I see several hands.  Let me start with the
12  first row.
13          PROSPECTIVE JUROR NO. 9:  Juror No. 9.
14          PROSPECTIVE JUROR NO. 6:  No. 6.
15          THE COURT:  6, 9.  Anybody else on the first row?
16                        (No Response)
17          THE COURT:  Second row?
18                        (No Response)
19          THE COURT:  Third row?
20          PROSPECTIVE JUROR NO. 35:  35.
21          THE COURT:  Thank you.
22          PROSPECTIVE JUROR NO. 37:  37.
23          THE COURT:  Thank you.
24          PROSPECTIVE JUROR NO. 44:  44.
25          THE COURT:  Thank you.
```

```
 1              Next rows?
 2              PROSPECTIVE JUROR NO. 46:  46, ma'am.
 3              THE COURT:  Thank you.
 4              PROSPECTIVE JUROR NO. 55:  55.
 5              THE COURT:  Thank you.
 6              Anybody else?
 7                        (No Response)
 8              THE COURT:  Thank you very much.
 9              Is there any member of the panel who yourselves
10  have done in the past or are now working for any law firm,
11  agency, department that does any kind of criminal work,
12  investigation, defense work, any kind of criminal law work?
13  I see a couple hands.  And this is a question about
14  yourselves.
15              PROSPECTIVE JUROR NO. 33:  33.
16              THE COURT:  Thank you.
17              PROSPECTIVE JUROR NO. 54:  54.
18              THE COURT:  Thank you.
19              PROSPECTIVE JUROR NO. 44:  44.
20              THE COURT:  Anybody else?
21              PROSPECTIVE JUROR NO. 59:  59, ma'am.
22              THE COURT:  Yes, sir.
23              PROSPECTIVE JUROR NO. 34:  34.
24              THE COURT:  Thank you.
25              Anybody else?
```

1                     (No Response)

2          THE COURT:  Are there any members of the panel who

3   have members of your immediate family or very close personal

4   friends who are now or who have in the past done any kind of

5   criminal law work?

6              I see several hands.  Starting with the second

7   row because I don't see any in the first.  Yes.

8          PROSPECTIVE JUROR NO. 19:  19.

9          THE COURT:  Thank you.

10             Anybody else in that row?  Yes, ma'am.

11         PROSPECTIVE JUROR NO. 39:  39.

12         THE COURT:  Thank you.

13             I see a hand back there.

14         PROSPECTIVE JUROR NO. 46:  46, ma'am.

15         THE COURT:  Thank you.

16         PROSPECTIVE JUROR NO. 43:  43.

17         THE COURT:  Thank you.

18         PROSPECTIVE JUROR NO. 44:  44.

19         THE COURT:  Thank you.

20             Anybody else?

21         PROSPECTIVE JUROR NO. 59:  59, ma'am.

22         THE COURT:  59.

23         PROSPECTIVE JUROR NO. 57:  57.

24         THE COURT:  Thank you.

25         PROSPECTIVE JUROR NO. 55:  55.

```
1              THE COURT:  Thank you.
2              PROSPECTIVE JUROR NO. 54:  54.
3              THE COURT:  Thank you.
4                  Anyone else?
5                       (No Response)
6              THE COURT:  Thank you.
7                  Is there any member of the panel who has done
8    themselves now or in the past any kind of law enforcement
9    work?
10                 Yes, sir.
11             PROSPECTIVE JUROR NO. 34:  34, ma'am.
12             THE COURT:  Thank you.
13             PROSPECTIVE JUROR NO. 33:  33.
14             THE COURT:  Thank you.
15                 Anyone else?
16                      (No Response)
17             THE COURT:  I am going to expand this question to
18   friends and family members.  Remember, immediate family,
19   close personal friends.  Anybody who members of your
20   immediate family or very close personal friend is now or has
21   in the past worked in law enforcement?
22                 Yes, sir.
23             PROSPECTIVE JUROR NO. 1:  No. 1.
24             THE COURT:  Thank you.
25                 Yes, ma'am.
```

```
1         PROSPECTIVE JUROR NO. 10:  No. 10.
2         THE COURT:  Okay.  Remember to stand up.
3         PROSPECTIVE JUROR NO. 10:  No. 10.
4         THE COURT:  That's even better.  Thank you, ma'am.
5              Second row.
6         PROSPECTIVE JUROR NO. 18:  No. 18.
7         THE COURT:  Thank you, sir.
8              Yes.  Go ahead.
9         PROSPECTIVE JUROR NO. 23:  No. 23.
10        THE COURT:  Thank you.
11             Yes, sir.
12        PROSPECTIVE JUROR NO. 34:  34, ma'am.
13        THE COURT:  34?
14        PROSPECTIVE JUROR NO. 34:  Yes, ma'am.
15        THE COURT:  Thank you.
16        PROSPECTIVE JUROR NO. 35:  35.
17        THE COURT:  Yes, ma'am.  Thank you.
18        PROSPECTIVE JUROR NO. 40:  No. 40.
19        PROSPECTIVE JUROR NO. 44:  No. 44.
20        THE COURT:  Thank you.
21        PROSPECTIVE JUROR NO. 59:  59, ma'am.
22        THE COURT:  All right.  Thank you.
23             Anybody else?
24        PROSPECTIVE JUROR NO. 54:  54.
25        THE COURT:  Anyone else?
```

1          Thank you.

2          Let me now get to a couple other questions

3    general and then I'll introduce you to what the case is

4    about.

5          Is there any member of the family -- family --

6    any member of the panel -- and this is an unusual question,

7    so listen carefully, not that you haven't been.  Is there any

8    member of the panel who themselves or whose members of your

9    immediate family or very close personal friends, any one of

10   those categories, has had a personal interest in the outcome

11   of a criminal case?

12         That's a broad question.  A personal interest

13   in the outcome of a criminal case.  That doesn't mean, boy,

14   this is interesting when you see it in the newspaper.  It

15   means you or a member of your family or close personal friend

16   was a victim of a crime.  It means you were a witness.  It

17   means you were accused.  Those are three of the categories,

18   yourselves, members of your immediate family, very close

19   personal friends, anyone who has had or has a personal

20   interest in the outcome of a criminal case?

21         First row.

22         PROSPECTIVE JUROR NO. 2:  No. 2.

23         THE COURT:  2.

24         PROSPECTIVE JUROR NO. 3:  3.

25         THE COURT:  Thank you.  Anybody else on the first

```
 1  row?
 2                    (No Response)
 3        THE COURT:  2 and 3.
 4             All right.  Second row.  Yes, ma'am.
 5        PROSPECTIVE JUROR NO. 20:  No. 20.
 6        THE COURT:  Thank you.
 7             Anybody else on that row?
 8                    (No Response)
 9        THE COURT:  Third row?  Yes, sir.
10        PROSPECTIVE JUROR NO. 40:  No. 40.
11        THE COURT:  Thank you, sir.
12             Anybody else in that row?
13                    (No Response)
14        THE COURT:  Last rows?
15        PROSPECTIVE JUROR NO. 65:  65.
16        THE COURT:  Thank you, ma'am.
17             Anybody else?
18                    (No Response)
19        THE COURT:  Thank you.
20             Lots of us have encounters with law
21  enforcement, and they can be, they can run the gamut; and I
22  am going to ask you about two types.  Is there any member of
23  the panel who yourselves or members of your immediate family
24  or very close personal friends has had such an unpleasant
25  encounter with law enforcement that it would tend to affect
```

```
 1   the way you look at any member of any law enforcement agency
 2   in a negative way?
 3                Is the question clear?
 4                All right.  Anybody on the first row believe
 5   that they fall into this category?
 6                        (No Response)
 7        THE COURT:  Second row?
 8        PROSPECTIVE JUROR NO. 21:  No. 21.
 9        THE COURT:  21.  Thank you, ma'am.
10           Anybody else?
11        PROSPECTIVE JUROR NO. 58:  58.
12        THE COURT:  58.  Thank you.
13           Yes, sir.
14        PROSPECTIVE JUROR NO. 45:  45.
15        THE COURT:  Thank you.
16           Anybody else?
17                        (No Response)
18        THE COURT:  Let me ask the flip side.  Is there any
19   member of the panel who themselves, members of your immediate
20   family or very close personal friends who has had such a
21   great experience or formed such a positive impression of any
22   law enforcement agent, officer or representative that it
23   would tend to make you give an extra kind of presumption of
24   credibility to any witness who was a law enforcement agent or
25   officer without listening to the individual testimony of that
```

1  person?  Is there anybody who would fall into that category?

2                    (No Response)

3        THE COURT:  I see no hands.  Thank you very much.

4            Is there anybody who would have difficulty

5  treating the testimony of a law enforcement officer the same

6  way you would the testimony of anyone else; that you would

7  listen very carefully and make the judgment on the

8  credibility of that testimony and witness based on what you

9  hear from the witness stand?  Can everybody approach the

10 witnesses in the same fashion as I've just described?

11 Anybody believe they would have difficulty doing that?

12            I see one hand.

13        PROSPECTIVE JUROR NO. 34:  34.

14        THE COURT:  Anybody else?

15        PROSPECTIVE JUROR NO. 31:  31.

16        THE COURT:  Thank you, sir.

17            Anybody else?

18                    (No Response)

19        THE COURT:  Thank you.

20            All right.  I am going to now ask you about one

21 other area that's general.  Is there any member of the panel

22 who, or your immediate family or very close personal friends,

23 who is now or in the past has had a dispute with or been

24 involved in experiences with federal government agencies that

25 are difficult or unpleasant in a way that would make you lean

1  against the government or witnesses from any agency of the

2  government, federal government if you were selected as a

3  juror in this case?  And these are unpleasant experiences or

4  just views by you, members of your immediate family or very

5  close personal friends.

6             Anybody in the first row?

7                   (No Response)

8        THE COURT:  Second row?

9                   (No Response)

10       THE COURT:  Last rows?

11                  (No Response)

12       THE COURT:  I see no hands.

13            The particular agents in this case are from

14  Homeland Security, correct?

15       MS. ZACK:  Yes, Your Honor.

16       THE COURT:  Is there anybody in particular who is

17  themselves, members of your immediate family or very close

18  personal friends has had an encounter with or dispute with or

19  experience with the Department of Homeland Security that

20  would make it difficult for you to be fair or impartial in

21  this case if you were selected as a juror, anybody at all?  I

22  see one hand.

23       PROSPECTIVE JUROR NO. 47:  47.

24       THE COURT:  I'm sorry.  What's your number?

25       PROSPECTIVE JUROR NO. 47:  47.

1          THE COURT:  Thank you, sir.

2               Anybody else?

3               (No Response)

4          THE COURT:  All right.  Ladies and gentlemen, the

5    subject matter of this case.  This case presents allegations

6    that the defendant, Mr. Jason Daniel Gandy, committed acts

7    that would cause or result in minors, individuals under the

8    age of 18, engaging in sexually explicit conduct.  These are

9    only allegations; they're not evidence.

10              And as I said, this summary is an introduction

11   for the limited but important purpose to let you as jurors

12   see what the case is about and tell us if you have any

13   concerns about your ability to be fair and impartial in this

14   case.

15              We are not asking if you approve of any of the

16   acts that the allegations in the indictment describe.  That's

17   not the issue.  The issue is whether you can fairly and

18   impartially judge the evidence, apply the law and without

19   bias or prejudice or sympathy deliberate to a verdict based

20   on the evidence and the law.  That's the issue.  And at

21   trial, of course, it is the burden of the United States, the

22   prosecution, to prove every element of every allegation

23   beyond a reasonable doubt.

24              So here are the allegations, and they are only

25   allegations.  Count 1 alleges that on or about July 19, 2012,

Mr. Gandy knowingly transported an individual I will refer to as Minor Victim 1 from Texas to the United Kingdom with the intent that the minor engage in prostitution and other activity, sexual activity that could be the basis for a criminal charge.

Count 2 alleges that on or between April 1 and July 18, 2012, Mr. Gandy knowingly did or attempted to persuade, induce, entice or coerce Minor Victim 1 to engage in sexually explicit conduct in order to produce visual depictions of it.

Count 2 alleges that Mr. Gandy produced the visual depictions using materials mailed or transported in interstate or foreign commerce and that he transmitted those depictions using a means and facility of interstate or foreign commerce.

Count 3 alleges that on or about July 19, 2012 Mr. Gandy knowingly transported child pornography using a means or facility of interstate or foreign commerce.

Counts 4, 5, 6 and 7 allege that on or about April 1 to July 19, 2012 as to Minor Victim 1, on or about November 1 to December 27, 2005 as to Minor Victim 2, on or about June 1 to August 31, 2005 as to Minor Victim 3 and on or about August 1 to November 30, 2007 as to Minor Victim 4, Mr. Gandy attempted to knowingly recruit, harbor, transport, obtain, advertise, maintain, patronize and solicit by any

1  means Minor Victim 1, 2, 3 and 4, males who were at least 14
2  but under 18 years old.

3          Count 6 -- 4, 5, 6 and 7 allege that Mr. Gandy
4  did so knowing and in reckless disregard that Minor Victims
5  1, 2, 3 and 4 were not 18 years old and that they would be
6  caused to engage in a commercial sex act.

7          Counts 4, 5, 6 and 7 also allege that Mr. Gandy
8  attempted to benefit either financially or by receiving
9  anything of value from participating in a venture involving
10 Minor Victims 1, 2, 3 and 4.

11         Mr. Gandy has pleaded not guilty as to all of
12 the counts.  You have heard no evidence.  The case depends on
13 the government's ability to prove guilt, prove each of the
14 elements of each count beyond a reasonable doubt.  You've
15 heard nothing along those lines.

16         But just based on what the case is about -- and
17 many of the cases that come into court involve issues that
18 none of us would prefer to think about.  This is no
19 exception, but we need those cases tried -- is there anyone
20 on the panel who, merely because of the subject matter of the
21 allegations, does not believe or has a serious question about
22 your ability to be the kind of fair and impartial juror that
23 I described?

24         Anyone on the first row?  I see a couple hands.
25         PROSPECTIVE JUROR NO. 11:  11.

```
 1          THE COURT:  11.  Thank you, sir.
 2          PROSPECTIVE JUROR NO. 3:  3.
 3          PROSPECTIVE JUROR NO. 1:  1.
 4          THE COURT:  Thank you.
 5          PROSPECTIVE JUROR NO. 4:  4.
 6          THE COURT:  Thank you.  3, 1, 11, 4.
 7               Anyone else on the first row?
 8          PROSPECTIVE JUROR NO. 10:  No. 10.
 9          THE COURT:  Thank you.
10          PROSPECTIVE JUROR NO. 8:  No. 8.
11          THE COURT:  8.  Thank you.
12               Anybody on the second row?  Yes, ma'am.
13          PROSPECTIVE JUROR NO. 17:  17.
14          THE COURT:  17.  Thank you.
15          PROSPECTIVE JUROR NO. 16:  16.
16          PROSPECTIVE JUROR NO. 19:  19.
17          THE COURT:  Thank you.
18          PROSPECTIVE JUROR NO. 25:  25.
19          THE COURT:  Thank you.
20          PROSPECTIVE JUROR NO. 27:  27.
21          THE COURT:  Thank you.
22               Next row.
23          PROSPECTIVE JUROR NO. 34:  34.
24          THE COURT:  Thank you, sir.
25          PROSPECTIVE JUROR NO. 35:  35.
```

```
 1           PROSPECTIVE JUROR NO. 37:  37.
 2           THE COURT:  Thank you.
 3           PROSPECTIVE JUROR NO. 44:  44.
 4           THE COURT:  Thank you.
 5               Last rows.  Yes, sir.
 6           PROSPECTIVE JUROR NO. 48:  48.
 7           THE COURT:  Thank you.
 8           PROSPECTIVE JUROR NO. 50:  50.
 9           THE COURT:  Thank you.
10           PROSPECTIVE JUROR NO. 52:  52.
11           THE COURT:  Thank you.
12           PROSPECTIVE JUROR NO. 53:  53.
13           THE COURT:  Thank you.
14           PROSPECTIVE JUROR NO. 54:  54.
15           THE COURT:  Thank you.
16           PROSPECTIVE JUROR NO. 58:  58.
17           THE COURT:  Thank you.
18           MR. BUCKLEY:  Pardon me, Your Honor.  We have one
19 more.
20           THE COURT:  I'm sorry.  I missed you.  Thank you.
21           PROSPECTIVE JUROR NO. 64:  No. 64.
22           THE COURT:  64 or 54?
23           PROSPECTIVE JUROR NO. 64.  64.
24           THE COURT:  Thank you, ma'am.
25               Is there any member of the panel, either
```

1  yourselves or members of your immediate family or very close
2  personal friends, who as a minor ran away from home?
3                    (No Response)
4          THE COURT:  I see no hands.
5              Is there any member of the panel who yourselves
6  or any member of your immediate family or very close personal
7  friends spent any period as a child, again, under the age of
8  18, 18 or under, living on the street?
9                    (No Response)
10         THE COURT:  And you all know what that means, I
11 think?
12                   (No Response)
13         THE COURT:  I see no hands.
14             Is there any member of the panel who yourselves
15 or any member of your immediate family or your close personal
16 friends has had sexually explicit images or videos of them
17 taken when they were a minor, either with or without the
18 permission of the person who was being, whose images were
19 being filmed or recorded or taken?  Anybody been filmed in a
20 sexually explicit way, yourselves, members of your
21 immediately family or very close personal friends?
22             I see one hand.
23         PROSPECTIVE JUROR NO. 53:  53.
24         THE COURT:  Thank you.
25             I am going to expand on that question:  Beyond

1 | 18 and under.

2 | Is there anybody who has had, who, and let's

3 | put the age limit at say 30, anybody who yourselves, members

4 | of your immediate family or very close personal friends who

5 | up to the age of 30 spent time living on the street?

6 | (No Response)

7 | THE COURT:  Is there anybody who, when you or a

8 | close family member or close personal friend were 30 or

9 | younger, had pictures, movies, selfies, whatever, taken in

10 | sexually explicit images?

11 | (No Response)

12 | THE COURT:  I see no hands.

13 | Some of the law that I will give you -- and I

14 | am not giving you the law now -- are laws that make it

15 | illegal to traffic in minors for commercial sex even if the

16 | minor is a willing participant.  Is there anybody on the

17 | panel who would find it difficult to follow that law?

18 | I see one hand.

19 | PROSPECTIVE JUROR NO. 45:  45.

20 | THE COURT:  Thank you.

21 | Anybody else?

22 | (No Response)

23 | THE COURT:  And you may receive an instruction on

24 | the law, you may -- I am not giving it to you now -- that the

25 | government need not prove that the defendant had actual

```
 1   knowledge that a particular victim was under the age of 18,
 2   but that it is enough if the government proves beyond a
 3   reasonable doubt that the defendant had a reasonable
 4   opportunity to observe that person's age.  Is there anyone
 5   who would have difficulty applying that law?
 6                        (No Response)
 7            THE COURT:  I see no hands.  Thank you.
 8                A few other points.  This case involves a
 9   defendant who is a member of the gay community.  There are
10   people who have very strong beliefs, that are offended by any
11   person who is not heterosexual and only heterosexual.  I
12   don't care.  Everyone is entitled to their beliefs.  And I
13   don't care if it is a religious, a moral or other-based
14   belief.  I just need to know if there is anyone who feels so
15   strongly about it that they would find it difficult not to
16   hold that fact against the defendant?
17                Anybody on the first row?
18                        (No Response)
19            THE COURT:  Second row?
20                        (No Response)
21            THE COURT:  Third row?
22                        (No Response)
23            THE COURT:  Last rows?
24                        (No Response)
25            THE COURT:  Thank you.
```

1          Is there anyone who believes that people, young

2   people -- and I am not talking about minors only.  Of course,

3   from my vantage point, "young" covers a lot of territory --

4   is there anyone who feels that young people who are gay are

5   probably gay because they were at some point victimized?

6   Anybody who feels that way?

7                   (No Response)

8         THE COURT:  Is there any member of the panel who for

9   whatever reason believes that homosexual acts themselves

10  deserve punishment or that they should be criminalized and as

11  a result of those beliefs would find it difficult to apply

12  the law as I give it to you, which is not fact?  Anybody on

13  the first row or any of the other rows?

14                 (No Response)

15        THE COURT:  I see no hands.

16         Lots of cases present to you a challenge for

17  the issue that crimes require proof of both a certain mental

18  state and action.  But if you have just a thought, a desire

19  and you don't try to act out on it, you don't try or

20  accomplish an action based on that thought or desire, all you

21  have is what one of our former presidents described as

22  certain kinds of thought, desires.  In our country we don't

23  prosecute people for what they're thinking; they got to do

24  something.

25         Is there anybody who would tend to convict a

1  defendant if there is evidence of certain thoughts or desires
2  that that individual had that you might find offensive, but
3  there were only thoughts and desires?
4                          (No Response)
5          THE COURT:  Would that make it difficult for you to
6  be a fair and impartial juror and apply rules that say you
7  can't be convicted for bad thoughts?  Even if I don't like
8  those thoughts, even if I might not like the person thinking
9  them, that person, that doesn't make that person a criminal.
10          Is there anybody who has difficulty applying
11  that law?
12                          (No Response)
13          THE COURT:  I see no hands.
14          Is there anybody who, if there was that kind of
15  evidence, might tend to reduce the proof required to convict,
16  that is, convict even if you were convinced beyond a
17  reasonable doubt?  Anybody think that that might affect them?
18          I see one hand.
19          PROSPECTIVE JUROR NO. 19:  19.
20          THE COURT:  Thank you.
21          Anybody else?
22                          (No Response)
23          THE COURT:  Thank you.
24          So let me ask kind of a broad version of some
25  of these questions.  What I am basically asking is that if

1  there are those among you who are morally offended by any
2  aspect of what you learn through the evidence of the
3  defendant's lifestyle, beliefs, what he said, what he
4  thought -- and I will give you instructions that say it
5  doesn't matter if you find them reprehensible or admirable,
6  that's not the issue.  The issue is whether the prosecution
7  proved the elements of guilt.  And I will describe to you
8  what the elements of each alleged offense are.  I will give
9  you the law.  Did the prosecution present evidence of guilt
10 beyond a reasonable doubt?  That's the issue.
11          Is there any member of the panel who would find
12 it difficult to follow my instructions if they conflicted
13 with your own moral or religious beliefs about sexual
14 orientation or thoughts or words?  Anybody think they would
15 have that difficulty?
16                     (No Response)
17          THE COURT:  I see no hands.
18          I'm going to read to you -- well, I am going to
19 ask one more general question first.  I've asked questions
20 about friends or family members and your own past experience
21 in anything like the allegations in this case.  I am going to
22 ask that broad a question.
23          Is there any member of the panel who yourselves
24 or who have had individuals who are members of your immediate
25 family or very close personal friends involved in any kind of

1    issue related to the issues that this case involves who
2    hasn't already raised their hand in response to earlier
3    questions?
4                          (No Response)
5              THE COURT:  Thank you.  I see no hands.
6                    All right.  I am going to give you a list of
7    potential witnesses in the case, and I want you to tell me in
8    response if you believe you recognize any of the names or you
9    know any of these people.  And if I mispronounce names,
10   somebody tell me if you can.
11                   "Juanae."
12             MS. ZACK:  It's "Juanae," Your Honor.
13             THE COURT:  "Juanae."  All right.  Thank you.
14   Johnson.  The Johnson I got.  You've already met Agent
15   Johnson.
16                   Another agent from Homeland Security, Jeff
17   "Chappell."
18             MS. ZACK:  It's Chappell, Your Honor.
19             THE COURT:  All right.  I am two for two.  Sorry.
20   Jeff Chappell.
21                   Minor Victim 1, Minor Victim No. 2, Minor
22   Victim 3.  You are not going to know those names.
23                   Steve Reeves, who is with the United Kingdom
24   Border Agency.
25                   Joan O'Donovan, also with United Kingdom Border

1  Agency.

2            Sonia Elizabeth Nolasco, Bert Diaz, Clarence

3  Thomas and Julie Gandy.

4            Does anybody believe they know any of those

5  individuals or recognize any of those names?

6                    (No Response)

7            THE COURT:  Is there any member of the panel who,

8  when you walked in today, recognized somebody else on the

9  panel who you already knew?  And if anybody answers this

10 question, there ought to be two people who answer this

11 question.  Anybody at all?  Houston is one of the biggest

12 small towns I've ever encountered.

13            I'm sorry.  You believe you recognize another

14 person?

15            PROSPECTIVE JUROR NO. 64:  In this --

16            THE COURT:  In this panel?

17            PROSPECTIVE JUROR NO. 64:  Oh, I thought you were

18 saying within the jury.

19            THE COURT:  No.  Within this panel, the people

20 seated where you are.

21            PROSPECTIVE JUROR NO. 64:  No, no.

22            THE COURT:  Is there anybody on the panel who thinks

23 they know me?

24                    (No Response)

25            THE COURT:  I didn't recognize any of you either.

```
 1              Is there any member of the panel who, even if
 2   you have not worked in law enforcement, you have law
 3   enforcement training?
 4                        (No Response)
 5         THE COURT:  I see no hands.
 6              Is there any member of the panel who has done
 7   any kind of work or had training with, involving individuals
 8   who are charged with, have been identified as or who are
 9   victims of sexual exploitation or abuse?
10              I see one hand.
11         PROSPECTIVE JUROR NO. 46:  46, Your Honor.
12         THE COURT:  Thank you.
13              Anybody else?
14                        (No Response)
15         THE COURT:  Anybody who has members of your
16   immediate family or very close personal friends who are now
17   or have been involved in that kind of work?
18                        (No Response)
19         THE COURT:  I see no hands.  Thank you.
20              Some of the allegations that you have heard
21   about in the summary I gave you -- and again, it's only a
22   summary of the issues -- you could tell from the dates that
23   they occurred sometime ago.  It's not unusual for cases to
24   take a while to get to court for a variety of reasons; but
25   that is not something that, unless I instruct you on it to
```

1    the contrary, the time span involved does not and may not

2    influence your deliberations.

3              Is there anybody who would find it difficult to

4    apply that instruction?  It doesn't matter how long ago it

5    occurred.  I see one hand.  Yes, ma'am.

6              PROSPECTIVE JUROR NO. 33:  Can I ask a question?

7              THE COURT:  No.  You can do that when you want to

8    come up.

9              PROSPECTIVE JUROR NO. 33:  Okay.  33, ma'am.

10             THE COURT:  All right.  Thank you.

11             Anybody else have any question about what

12   apparently was not as clear a question as I hoped?

13                       (No Response)

14             THE COURT:  Can you disregard the fact that these

15   events happened a long time ago, excepting so far as the

16   passage of time might bear on the witness's memory and

17   credibility that you may consider?

18                       (No Response)

19             THE COURT:  I see no hands.  Thank you.

20             PROSPECTIVE JUROR NO. 45:  45.

21             THE COURT:  45.  Thank you, sir.

22             Anybody else?

23                       (No Response)

24             THE COURT:  Is there anyone -- and here's a question

25   again I need you to listen carefully to -- who for any

1  physical reason or any other reason -- remember, I told you
2  this case would likely take a week or less to finish, a very
3  short case for cases tried in federal court.  Is there
4  anyone, whether for physical, medical or other reasons would
5  find being in court today, Thursday, Friday, Monday, maybe
6  Tuesday, maybe Wednesday, maybe a -- and listen to the
7  words -- significant hardship, okay.  I didn't say
8  inconvenient.  I didn't say I'd rather not be here.
9  Significant hardship.
10             First row.
11        PROSPECTIVE JUROR NO. 10:  No. 10.
12        THE COURT:  10.  Thank you.
13        PROSPECTIVE JUROR NO. 3:  3.
14        THE COURT:  Thank you.
15        PROSPECTIVE JUROR NO. 12:  No. 12.
16        PROSPECTIVE JUROR NO.  14:  No. 14.
17        THE COURT:  Thank you.
18             Next row.
19        PROSPECTIVE JUROR NO. 28:  28.
20        THE COURT:  28.
21        PROSPECTIVE JUROR NO. 19:  19.
22        PROSPECTIVE JUROR NO. 55:  55.
23        THE COURT:  28, 19, 55.
24             Anyone else?
25        PROSPECTIVE JUROR NO. 54:  54.

1     THE COURT:  Thank you.

2     PROSPECTIVE JUROR NO. 41:  41.

3     THE COURT:  41.

4          Anybody else.

5     PROSPECTIVE JUROR NO. 52:  52.

6     PROSPECTIVE JUROR NO. 62:  62.

7     THE COURT:  Anybody else, significant hardship?

8     MS. ZACK:  I apologize, Your Honor.  Did 65 indicate

9  yes?

10    THE COURT:  Not that I had noted, thank you, not on

11 that question.

12         All right.  Thank you very much.

13         May I see counsel up here?

14         65?  I'm sorry.  I wrote you down as 55.  All

15 right.  I have got you.  Thank you.

16         Come on up, please.

17         (Conference before the bench)

18    THE COURT:  I have asked the general questions, I

19 have asked the boilerplate question and I've asked the

20 specific questions that both sides had submitted with the

21 exception of me, too questions that we talked about earlier,

22 and I indicated I was not going to ask.

23         What else do I need to ask at this point before

24 we bring them up for individual questioning?

25    MS. ZACK:  Two things.  This garnered a great deal

```
 1  of media attention.
 2          THE COURT:  Fine.
 3          MS. ZACK:  And if Your Honor wants -- I don't see
 4  any press in the courtroom.  Everyone we recognize is our
 5  interns or court interns -- I can read the names or you can
 6  read the names of the minor victims because they're adults
 7  now.
 8          THE COURT:  So what are their names?
 9          MS. ZACK:  It's Kevin Vasquez.
10          THE COURT:  Vasquez?
11          MS. ZACK:  Vasquez, David Villa Gomez, Karl Chris
12  Durrett.
13          THE COURT:  Karl?
14          MS. ZACK:  Chris Durrett.  He goes by Chris Durrett.
15          THE COURT:  D-u-r-r?
16          MS. ZACK:  R-r, yeah, that's good enough.
17               And Jose Alfaro.
18          THE COURT:  Okay.
19          MR. BUCKLEY:  Nothing further from us, Your Honor.
20          MS. ZACK:  Thank you, Your Honor.
21                       (In open court)
22          THE COURT:  Two more questions, ladies and
23  gentlemen.
24               Is there anybody who believes they heard
25  anything about this case or read anything about this case,
```

1  this particular case?
2                    (No Response)
3            THE COURT:  I see no hands.
4                There are stories in the paper that you may
5  have seen or newscasts that may involve accusations or events
6  similar in some way maybe, at least they sound that way, to
7  what I have described as the subject matter of the
8  allegations in this case.  Would you be able to set those out
9  of your mind and not allow them to influence you in any way
10  as you limited your attention to the evidence you heard in
11  this courtroom?  Anyone have difficulty doing that?
12                    (No Response)
13            THE COURT:  I see no hands.
14                And I need to give you a little bit more
15  information about the names of the alleged victims in this
16  case.  We don't give names of minors to protect privacy, but
17  they are now all adults.
18                Kevin Vasquez, David Villa Gomez, Karl Chris
19  Durrett and Jose Alfaro.
20                Anybody believe that they know or recognize any
21  of these individuals?
22                    (No Response)
23            THE COURT:  I see no hands.  Thank you.
24                All right.  We are going to take a very brief
25  break, about 10 minutes.  During that time, right before I

1    come back I want the first row, everybody who raised your
2    hand on the first row to line up in front of the jury box.
3    So you can use this opportunity to dash out and use the
4    restroom and come back in.
5            Those of you in the remaining rows, we are
6    going to get to you very fast.  So if you, too, want to use
7    the restroom and then come back in and wait, that would be
8    the best thing.  Take the seat you currently occupy until I
9    call on your row to line up in front of the jury box, and we
10   will have those of you who raised your hand up here one at a
11   time as I described earlier.
12           So we will resume in about 10 minutes.  Thank
13   you.
14                       (Recess taken)
15       THE COURT:  Thank you.  Row No. 1.  Lawyers please
16   come up.
17           Come on up, please, sir.  You are No. 14.  All
18   right.  Let me find where you raised your hand.  If anybody
19   remembers, please jump in.
20       MR. BUCKLEY:  I believe it's a hardship.
21       THE COURT:  Was that the only time?
22       PROSPECTIVE JUROR NO. 14:  Right.
23       THE COURT:  And what is your problem, sir?
24       PROSPECTIVE JUROR NO. 14:  Me and my family are
25   traveling to Colorado on Tuesday early morning.  We have

1  scheduled with a friend to come with us, some of the--

2          THE COURT:  Are your driving or are you flying?

3          PROSPECTIVE JUROR NO. 14:  We are flying.  We have

4  got the tickets.

5          THE COURT:  All prepaid?

6          PROSPECTIVE JUROR NO. 14:  All prepaid and some

7  nonrefundable.

8          THE COURT:  I'm sorry?

9          PROSPECTIVE JUROR NO. 14:  Some of the hotels are

10  nonrefundable, the car rental.

11          THE COURT:  That's what I needed, okay.  Very good.

12              Thank you for sharing that.

13              Is there anything else that the lawyers want to

14  ask?

15          MR. BUCKLEY:  Nothing, Your Honor.

16          THE COURT:  Sir, if you could just take the seat

17  that you currently occupy.

18              Next, please.  No. 11.  Let me find where you

19  raised your hand.

20          MR. BUCKLEY:  It was an issue about fair and

21  impartial related to the subject matter.

22          PROSPECTIVE JUROR NO. 11:  I don't remember the

23  exact question.

24          THE COURT:  I do.  And that was the question.

25          PROSPECTIVE JUROR NO. 11:  The subject matter.

1          THE COURT:  Go ahead, please.

2          PROSPECTIVE JUROR NO. 11:  It was nearly 10 years

3   ago, a babysitter we used to use, some explicit venture got

4   out about her when she was 15 years old, then she committed

5   suicide later that year; and we lost her as a babysitter and

6   lost her as well.  If some of that came up, I thought, that

7   came to my mind.  I'm like, man, if --

8          THE COURT:  Would that make it difficult for you to

9   set that out of your mind?

10          PROSPECTIVE JUROR NO. 11:  It might.  That's why I

11   said something.

12          THE COURT:  And I appreciate that.

13              Any follow-ups?

14          MR. BUCKLEY:  No follow-up on that, Your Honor.

15          MS. ZACK:  No.

16          THE COURT:  All right.  Thank you, sir.

17              We will take challenges at the end of the

18   process.

19          MR. BUCKLEY:  Yes, Judge.

20          THE COURT:  Come on up, please, No. 2.

21              You had a personal interest in an outcome of a

22   criminal case or a family member did?

23          PROSPECTIVE JUROR NO. 2:  Yes.

24          THE COURT:  Tell me about that.

25          PROSPECTIVE JUROR NO. 2:  My brother was convicted

1    of possession and distribution of drugs.

2              THE COURT:  What were the drugs?

3              PROSPECTIVE JUROR NO. 2:  Heroin.

4              THE COURT:  State or federal court?

5              PROSPECTIVE JUROR NO. 2:  It was state.

6              THE COURT:  How long ago, if you remember?

7              PROSPECTIVE JUROR NO. 2:  I don't really remember.

8              THE COURT:  Is your brother -- was he sentenced to a

9    prison term?

10              PROSPECTIVE JUROR NO. 2:  No.  He's been to jail

11    twice.  He was just put on probation.

12              THE COURT:  Did you believe that he was treated

13    fairly?

14              PROSPECTIVE JUROR NO. 2:  Yes.

15              THE COURT:  Did you have any involvement in the

16    events leading up to that charge?

17              PROSPECTIVE JUROR NO. 2:  No, ma'am.

18              THE COURT:  Is there anything about that experience

19    within your family that would affect your judgment if you

20    were to be on this jury?

21              PROSPECTIVE JUROR NO. 2:  No, ma'am.

22                   I do feel like it's worth mentioning, though,

23    that I feel like I've seen this case before or something.  It

24    looks very, very familiar to me.  So I don't know if that's

25    worth mentioning.

1        THE COURT:  It may be just a vague resemblance to
2   any case that involves these kinds of issues.  Is that
3   possible?
4        PROSPECTIVE JUROR NO. 2:  I feel I've seen this
5   particular -- specifically you.  I feel like I have seen
6   pictures or --
7        THE COURT:  Ms. Zack is involved in similar cases.
8   This is the area she practices.
9        PROSPECTIVE JUROR NO. 2:  Okay.  I don't know if
10  that's worth mentioning or not.
11       THE COURT:  Is there anything about that that would
12  affect your judgment one way or the other?
13       PROSPECTIVE JUROR NO. 2:  No.
14       THE COURT:  Anything else?
15       MR. BUCKLEY:  Nothing from us, Your Honor.
16       THE COURT:  Thank you, sir.  Take the seat you
17  currently occupy.
18            Juror No. 1.  How are you, No. 1?
19       PROSPECTIVE JUROR NO. 1:  Good.  And you?
20       THE COURT:  You have a friend or family member who
21  was involved in law enforcement?
22       PROSPECTIVE JUROR NO. 1:  My past family best
23  friend.
24       THE COURT:  And what kind of work did they do?
25       PROSPECTIVE JUROR NO. 1:  One of them is a HPD

1  officer, and my best friend is with the Conroe police
2  department.

3           THE COURT:  I'm sorry.  Conroe police department?

4           PROSPECTIVE JUROR NO. 1:  Yes.

5           THE COURT:  Any of them involved in work similar to
6  the kind of things we have describe here?

7           PROSPECTIVE JUROR NO. 1:  Not that I know of.

8           THE COURT:  Is the fact that they are involved in
9  law enforcement, is that going to affect your judgment one
10 way or the other?

11          PROSPECTIVE JUROR NO. 1:  No.

12          THE COURT:  You also raised your hand with a concern
13 about being fair because of the subject matter.

14          PROSPECTIVE JUROR NO. 1:  Yeah.  I was exposed to
15 pornography when I was a kid, and so the thought of someone
16 doing that to a minor --

17          THE COURT:  When you say "exposed to?"

18          PROSPECTIVE JUROR NO. 1:  I was scrolling through
19 the channels once and it piqued my interest, and then I
20 stopped looking for a few years.  The thought of someone
21 doing that to a child makes me very emotional.

22          THE COURT:  Would that make it difficult for you to
23 be fair and impartial if you were selected as a juror in this
24 case?

25          PROSPECTIVE JUROR NO. 1:  I want to say it wouldn't,

1    but I can't tell you with 100 percent confidence.

2         THE COURT:  Would it make you lean in any particular

3    direction?

4         PROSPECTIVE JUROR NO. 1:  It would probably lead me

5    to judge the person harshly just emotionally.  I would try my

6    best not to, but I can't guarantee it.

7         THE COURT:  So you might take it out on the

8    defendant in this case.  Is that what you are saying?

9         PROSPECTIVE JUROR NO. 1:  Yeah.

10         THE COURT:  And having recognized that risk, can you

11    discipline your own thinking so that you would not be

12    affected by that kind of potential from bias or prejudice?

13         PROSPECTIVE JUROR NO. 1:  Yes, ma'am.  I am saying,

14    again, the emotion.  It was the child's innocence that was

15    brought up.

16         THE COURT:  And would you be able to put it out of

17    your mind and not allow it to affect your judgment one way or

18    the other?

19         PROSPECTIVE JUROR NO. 1:  Yes.

20         THE COURT:  You are confident that you could put it

21    out of your mind and not allow it to affect you?

22         PROSPECTIVE JUROR NO. 1:  Not 100 percent confident.

23         THE COURT:  All right.  Thank you, sir.  And I just

24    need an honest answer, and I appreciate you giving it.

25              Any questions, counsel?

1          MR. BUCKLEY:  Nothing from us.

2          MS. ZACK:  No, Your Honor.

3          THE COURT:  All right.

4               Thank you, sir.  Just take a seat.

5               Next, No. 3.  Let me see why you raised your

6     hand.

7               First of all, you had a personal interest in

8     the outcome of a criminal case or a friend or family member

9     did?

10         PROSPECTIVE JUROR NO. 3:  Which question was that?

11    I'm sorry?

12         THE COURT:  Personal interest in the outcome of a

13    criminal case?

14         PROSPECTIVE JUROR NO. 3:  Oh, my brother had a -- he

15    was charged with misdemeanor and bodily assault.

16         THE COURT:  Did you think he was treated fairly?

17         PROSPECTIVE JUROR NO. 3:  Yes.

18         THE COURT:  Is there anything about that that would

19    affect your judgment if you were going to be on this jury?

20         PROSPECTIVE JUROR NO. 3:  No.

21         THE COURT:  You indicated a concern about being fair

22    and impartial just because of the subject matter.

23         PROSPECTIVE JUROR NO. 3:  I have three small

24    children, nine, six and a two-year-old.  So I know this case

25    would be beyond a reasonable doubt, and I think it would

1  probably for me be a reasonable doubt.  I wouldn't be able to
2  because I have three small children, I think.
3          THE COURT:  Lots of people have children.
4          PROSPECTIVE JUROR NO. 3:  I know, but --
5          THE COURT:  That's not disqualifying as a juror, but
6  I understand your concern.
7              Having identified that concern, we all care
8  about children.
9          PROSPECTIVE JUROR NO. 3:  Uh-huh.
10         THE COURT:  I have four daughters.
11         PROSPECTIVE JUROR NO. 3:  Yeah, of course.
12         THE COURT:  Having identified that concern --
13         PROSPECTIVE JUROR NO. 3:  Uh-huh.
14         THE COURT:  -- can you set it out of your mind and
15  not allow it to affect your judgment one way or the other?
16         PROSPECTIVE JUROR NO. 3:  Perhaps.
17         THE COURT:  And that would require you to say, I
18  would not want this person perhaps in the room with my child,
19  but that doesn't mean he's guilty of what he's alleged to
20  have done.
21         PROSPECTIVE JUROR NO. 3:  Okay.
22         THE COURT:  The government still has to prove guilt
23  beyond a reasonable doubt.  Would you make the government do
24  that?
25         PROSPECTIVE JUROR NO. 3:  Yes.

1          THE COURT:  Would you be tempted -- let's assume
2     just for the purpose of this discussion that the prosecution
3     introduced some evidence of guilt but not beyond a reasonable
4     doubt, some evidence, though.  Would you be tempted to say,
5     you know what, it's not beyond a reasonable doubt, but I
6     don't like this guy, and convict him.  Would you reach to
7     convict him, in other words?
8          PROSPECTIVE JUROR NO. 3:  Because I don't like the
9     person, no.
10         THE COURT:  Or you in general think if there is any
11    risk at all, I want to protect all of the children in the
12    world?
13         PROSPECTIVE JUROR NO. 3:  No.  I wouldn't do that.
14         THE COURT:  Would you listen to the Court's
15    instructions, here's what the government must prove in order
16    for the jury to return a unanimous verdict of guilty on this
17    particular --
18         PROSPECTIVE JUROR NO. 3:  Right.
19         THE COURT:  -- count, this particular count, this
20    particular count?
21         PROSPECTIVE JUROR NO. 3:  Yes.
22         THE COURT:  Would you listen carefully, and setting
23    aside your worries about your children in general --
24         PROSPECTIVE JUROR NO. 3:  Uh-huh.  I realize.
25         THE COURT:  -- would you be able to say, you know,

1  the government just hasn't shown me enough?

2          PROSPECTIVE JUROR NO. 3:  Yes.

3          THE COURT:  All right.

4              Question?

5          MR. BUCKLEY:  Yes, Your Honor.

6              Good morning.  I can see that this discussion

7  is affecting you because I would imagine you have got these

8  feelings for your own children.

9          PROSPECTIVE JUROR NO. 3:  Right.

10         MR. BUCKLEY:  And it's understandable, I am not

11  criticizing; but I am wanting to ensure that if you sit on

12  the jury and if the evidence in this case had an emotional

13  effect on you that you can assure us a hundred percent that

14  you can follow the Court's instructions even if they cause

15  you emotional discomfort.

16             Are you able to tell us that at this point in

17  time, are you able to commit a hundred percent that your

18  emotional response, no matter how strong it may be, that you

19  can set that aside?

20         PROSPECTIVE JUROR NO. 3:  It would be hard.  I

21  wouldn't like it, but I would have to do it.

22         MR. BUCKLEY:  Understood.

23         THE COURT:  You also indicated a concerned about a

24  significant hardship.

25         PROSPECTIVE JUROR NO. 3:  Yes.  I know that the

1  trial can go all the way to Tuesday.  Tuesday my kids, my

2  two-year-old has at-home care, and the babysitter has for

3  weeks set aside that.  On Tuesday I will have my

4  two-year-old.  I wouldn't be able to leave her with anyone.

5             THE COURT:  That day would you be able to arrange

6  child care?

7             PROSPECTIVE JUROR NO. 3:  I could try.  I could try

8  and see, but I just -- I can try and figure out.

9             THE COURT:  Okay.  There are lots of people with

10  young children who have sort of child care swapping

11  arrangements made with friends and neighbors.

12             PROSPECTIVE JUROR NO. 3:  Yeah, that could happen.

13  Yeah, I could see if I can work that out.

14             THE COURT:  You might have a debt to pay to

15  somebody.  You might have to take care of their kid one day.

16             PROSPECTIVE JUROR NO. 3:  Oh, yeah.

17             THE COURT:  That's pretty normal, isn't it?

18             PROSPECTIVE JUROR NO. 3:  Yeah.  I don't have a lot

19  of friends or family to take care of my kids.  It's only that

20  one person.  So I can probably -- I am off that day that she

21  took off work to take care of my child, so that's the only

22  day.  So I can see.  I can probably make it work.

23             THE COURT:  And we appreciate that very much.  Thank

24  you.  Just take the seat you currently occupy.

25             PROSPECTIVE JUROR NO. 3:  Sure.

```
 1              THE COURT:  Next, please.  No. 8, how are you?
 2              PROSPECTIVE JUROR NO. 8:  I'm good.
 3              THE COURT:  Come on up.  So let me find where you
 4     raised your hand.
 5              MR. BUCKLEY:  Subject matter.
 6              THE COURT:  You indicated that you were concerned
 7     about the subject matter and your ability to be fair.
 8              PROSPECTIVE JUROR NO. 8:  Uh-huh.  Yes, ma'am.
 9              THE COURT:  You need to answer yes or no.  The court
10     reporter has to take it down.
11                  Tell me about your concerns.
12              PROSPECTIVE JUROR NO. 8:  Just morally, I don't
13     believe, I don't feel like it's right.
14              THE COURT:  What's "it," because the only allegation
15     in question is whether there is evidence of guilt beyond a
16     reasonable doubt?
17              PROSPECTIVE JUROR NO. 8:  Just the whole.  I'm
18     sorry.
19              THE COURT:  That's okay.
20              PROSPECTIVE JUROR NO. 8:  The underage sex and
21     everything like that.
22              THE COURT:  Are you able to -- do you think that
23     that makes you lean against the defendant from the outset?
24              PROSPECTIVE JUROR NO. 8:  Against, yes.
25              THE COURT:  Would you be able to overcome that and
```

```
 1  not allow it to affect your judgment and follow the Court's
 2  instructions?
 3              PROSPECTIVE JUROR NO. 8:  Yes.
 4              THE COURT:  You would be able to set it aside?
 5              PROSPECTIVE JUROR NO. 8:  Yes.
 6              THE COURT:  Nobody likes the subject matter.  That's
 7  not the issue here.  But what is the issue is whether your
 8  dislike of it is so strong --
 9              PROSPECTIVE JUROR NO. 8:  Okay.
10              THE COURT:  -- that you would not be able to set it
11  aside and reach a verdict based on the evidence and my
12  instructions, which say you cannot be influenced by bias.
13              PROSPECTIVE JUROR NO. 8:  Okay.
14              THE COURT:  By prejudice, by emotion, by sympathy.
15  Can you do that?
16              PROSPECTIVE JUROR NO. 8:  Yes.
17              THE COURT:  Okay.  You understand how important that
18  is?
19              PROSPECTIVE JUROR NO. 8:  Yes.
20              THE COURT:  Let me ask you this.  Let's assume for
21  the purpose of just this discussion that at the trial the
22  government presented proof, some proof of guilt but not proof
23  beyond a reasonable doubt.  They fall short.
24              PROSPECTIVE JUROR NO. 8:  Uh-huh.
25              THE COURT:  Would you be able, nonetheless, to look
```

1  at the government -- would you be tempted to say, you know,
2  it wasn't proof beyond a reasonable doubt, but I don't like
3  this guy so much --
4          PROSPECTIVE JUROR NO. 8:  Uh-huh.
5          THE COURT:  -- that I'm going to convict him anyway?
6  Would you be able to refrain from doing that and instead look
7  at your fellow jurors and the prosecutors and say, you had
8  some guilt evidence, but you didn't show me beyond a
9  reasonable doubt, not guilty?
10          PROSPECTIVE JUROR NO. 8:  Yes.  I could refrain.
11          THE COURT:  You could do you that?
12          PROSPECTIVE JUROR NO. 8:  Yes.
13          THE COURT:  You wouldn't be tempted to reach for a
14  verdict of guilty because of dislike of the allegations?
15          PROSPECTIVE JUROR NO. 8:  No.
16          THE COURT:  All right.
17          MR. BUCKLEY:  If I may, Your Honor.
18          THE COURT:  Of course.
19          MR. BUCKLEY:  Good morning.
20              What if at trial you hear evidence that in your
21  view is so horrible that it should be against the law, but
22  when you hear the Court's instructions, as it turns out, it's
23  not against the law.  Would your feelings about how horrible
24  something might be influence your willingness or your ability
25  to follow the Court's instructions if you feel that something

1  should be illegal but isn't.  Could that affect it?

2           PROSPECTIVE JUROR NO. 8:  No.

3           MR. BUCKLEY:  Okay.  So, in other words, that you

4  can ensure us here a hundred percent that even if you have

5  very intense personal feelings that upset you about this case

6  that you can follow the Court's instructions even if you

7  might not agree with them?

8           PROSPECTIVE JUROR NO. 8:  Yes.

9           MR. BUCKLEY:  Thank you.  Nothing further from us.

10           THE COURT:  Thank you very much.

11               Any other issues?

12           MS. ZACK:  No.

13           THE COURT:  Take the seat you currently occupy.

14  Thank you.

15               Next, please, No. 4.  And thank you for being

16  here today.

17           PROSPECTIVE JUROR NO. 4:  Thank you.

18           THE COURT:  You raised your hand in response to the

19  questions about whether the subject matter itself presented

20  difficulty for your ability to be fair and impartial.

21               Can you go further?

22           PROSPECTIVE JUROR NO. 4:  And the reason why I

23  raised my hand, because the things that happened to me when I

24  was younger, not per se what he's done, but --

25           THE COURT:  He hadn't done anything.  There is no

1  proof.

2          PROSPECTIVE JUROR NO. 4:  What was said.  I just

3  feel like I would be partial to being fair.

4          THE COURT:  We want you to be fair.

5          PROSPECTIVE JUROR NO. 4:  Okay, okay.

6          THE COURT:  But that means that you have to start

7  out not favoring the other side and not opposed to either

8  side.  You can't have a preconceived idea of how the case

9  ought to end up.

10          PROSPECTIVE JUROR NO. 4:  Right.

11          THE COURT:  Do you have one?

12          PROSPECTIVE JUROR NO. 4:  No, I don't have.

13          THE COURT:  I don't know what kind of past

14  experiences you are talking about, No. 4, and I don't mean to

15  get personal, but you are No. 4.  Nobody is going to know who

16  you are.

17          PROSPECTIVE JUROR NO. 4:  Okay.

18          THE COURT:  Are you talking about yourself being

19  subject to sexual acts as a child?

20          PROSPECTIVE JUROR NO. 4:  Yeah.  I was raped when I

21  was younger, so...

22          THE COURT:  Below 18?

23          PROSPECTIVE JUROR NO. 4:  Uh-huh.

24          THE COURT:  Okay.  Would you be able to -- and I am

25  sure that left emotional and other kind of marks?

1          PROSPECTIVE JUROR NO. 4:  Uh-huh.

2          THE COURT:  I don't need to know what they are, but

3   I do need to know this.  Has the effect been -- I see how old

4   you are.

5          PROSPECTIVE JUROR NO. 4:  Right.

6          THE COURT:  Has the effect been muted or diminished

7   enough by time --

8          PROSPECTIVE JUROR NO. 4:  Yeah, it has.

9          THE COURT:  -- so that you would not allow it to

10  affect you, you could prevent it from affecting you?

11         PROSPECTIVE JUROR NO. 4:  I can prevent it, yes.

12         THE COURT:  You can put it out of your mind.

13  Essentially you can forget it happened?

14         PROSPECTIVE JUROR NO. 4:  Uh-huh.

15         THE COURT:  And look only at what happened in this

16  case based on the evidence?

17         PROSPECTIVE JUROR NO. 4:  Yes.

18         THE COURT:  Let's assume from this discussion that

19  the prosecution produced some evidence of the defendant's

20  case but did not prove beyond a reasonable doubt that he did

21  what he is charged with doing.  Would you be tempted

22  nonetheless to convict him, to return a verdict of guilty

23  because there was some evidence of his guilt?

24         PROSPECTIVE JUROR NO. 4:  Not -- no.

25         THE COURT:  Would you hold the government to the

 1  burden of proof that I instruct you it has to meet in order

 2  for any of the jurors, much less all of the jurors, to return

 3  a verdict of guilty?

 4         PROSPECTIVE JUROR NO. 4:  No.

 5         THE COURT:  You would not have any difficulty doing

 6  that?

 7         PROSPECTIVE JUROR NO. 4:  No.

 8         THE COURT:  All right.

 9             Questions?

10         MR. BUCKLEY:  Thank you, Your Honor.

11             Good morning.

12         PROSPECTIVE JUROR NO. 4:  Good morning.

13         MR. BUCKLEY:  I guess if I were to phrase the

14  question this way:  If the evidence in this case led you to

15  conclude that the defendant, Mr. Gandy, should be punished

16  for something that's been in evidence, was proven by the

17  government, and yet when you hear the Court's instructions

18  you learn that it doesn't meet the legal definition, that

19  it's not actually against the law.  If you were to have an

20  emotional response based on your own life experiences to what

21  you have heard in evidence, do you have any concern that that

22  might prevent you or interfere with your ability to follow

23  the Court's instructions even if you didn't agree with them?

24         PROSPECTIVE JUROR NO. 4:  A little bit.

25         MR. BUCKLEY:  And with that understanding,

1 understanding your own personal history and your own

2 experiences and understanding the type of evidence that one

3 might hear in a case like this, are you able to commit to all

4 of us with a hundred percent certainty that your own feelings

5 would not prevent you from following exactly what the Judge

6 instructed you to do?

7          PROSPECTIVE JUROR NO. 4:  Yeah, I am.

8          MR. BUCKLEY:  Are you absolutely sure?

9          PROSPECTIVE JUROR NO. 4:  Yeah, I'm sure.

10          MR. BUCKLEY:  Thank you, ma'am.

11          THE COURT:  Questions?

12          MS. ZACK:  Your Honor, if we have other questions or

13 concerns about anything on these juror's forms, is now the

14 time?

15          THE COURT:  Yes, absolutely.

16          MS. ZACK:  Ma'am, you indicated on your form that

17 you were charged with welfare fraud, but when the Judge asked

18 the question if you ever had --

19          PROSPECTIVE JUROR NO. 4:  You know what?  I didn't

20 really understand, so that's --

21          THE COURT:  So tell us about that.

22          PROSPECTIVE JUROR NO. 4:  I had gone so far in the

23 State of California, it seems like in '91, I went to court

24 and I end up getting probation, five-year probation; and I

25 had to do community service.

1          THE COURT:  Is it a misdemeanor or a felony, do you

2     remember?

3          PROSPECTIVE JUROR NO. 4:  It might have -- I don't

4     know.

5          THE COURT:  Was it expunged from your record after

6     you did your community service?  Did you still have a record

7     of a criminal conviction?

8          PROSPECTIVE JUROR NO. 4:  I still had a record,

9     yeah.

10         THE COURT:  Do you know was the conviction, was it a

11     potential jail sentences of more than a year?

12         PROSPECTIVE JUROR NO. 4:  No.  I didn't have to go

13     to jail.

14         THE COURT:  I know you didn't, but could you have?

15         PROSPECTIVE JUROR NO. 4:  Yeah.

16         THE COURT:  For how long, do you know?

17         PROSPECTIVE JUROR NO. 4:  I think five years.

18         THE COURT:  Okay.  As far as you know, that's still

19     a conviction that's on the books?

20         PROSPECTIVE JUROR NO. 4:  As far as I know.  I

21     mean --

22         THE COURT:  How long ago was that?

23         PROSPECTIVE JUROR NO. 4:  It's back in '91.

24         THE COURT:  Thank you for letting us know.

25              Any follow-up?

1           MR. BUCKLEY:  Nothing further.

2           THE COURT:  Thank you.

3               Yes, by all means, any questions at all at this

4   point.

5           MS. ZACK:  Okay.  Thank you, Your Honor.

6           MR. BUCKLEY:  Yes, Your Honor.

7           THE COURT:  Next, please.  And let's have Row No. 2,

8   those of you who raised your hands, line up.

9               No. 12, how are you, sir?

10          MR. BUCKLEY:  Your Honor, the matter was hardship.

11          THE COURT:  What is the issue?

12          PROSPECTIVE JUROR NO. 12:  If I don't go to work --

13          THE COURT:  I'm sorry.  I'm sorry.  I'm having

14   trouble hearing you.

15          PROSPECTIVE JUROR NO. 12:  If I don't go to work,

16   somebody has to cover my work.  I have to work, otherwise

17   somebody have to cover me.

18          THE COURT:  That's okay.  You work for?

19          PROSPECTIVE JUROR NO. 12:  I am a physician.

20          THE COURT:  You know what.  Physicians take calls

21   for each other all the time.

22          PROSPECTIVE JUROR NO. 12:  I know.

23          THE COURT:  You go on vacation, right, right?  You

24   get sick, right?

25          PROSPECTIVE JUROR NO. 12:  Kind of.

```
 1            THE COURT:  Okay.  So somebody takes a call for you;
 2   is that it?
 3            PROSPECTIVE JUROR NO. 12:  Yeah.
 4            THE COURT:  Is that okay?
 5            PROSPECTIVE JUROR NO. 12:  Yeah.
 6            THE COURT:  Okay.  You have people who take calls
 7   for you, right?
 8            PROSPECTIVE JUROR NO. 12:  I have, yeah.
 9            THE COURT:  Okay.  Does take care of your hardship
10   issue?
11            PROSPECTIVE JUROR NO. 12:  Kind of.
12            THE COURT:  Is there anything else?
13            PROSPECTIVE JUROR NO. 12:  No.
14            THE COURT:  Thank you, sir.  Anything else that you
15   would ask?
16            MR. BUCKLEY:  No.
17            MS. ZACK:  No.
18            PROSPECTIVE JUROR NO. 12:  May I be seated?
19            THE COURT:  Back in your seat, sir.  Thank you.
20               No. 9, please.  How are you, sir?
21            PROSPECTIVE JUROR NO. 9:  I'm okay.
22            THE COURT:  You raised your hand in response to a
23   question about friends or family members who worked for
24   prosecutors?
25            PROSPECTIVE JUROR NO. 9:  My cousin used to be a
```

```
 1   supervisor for the deputy clerk office for the City of
 2   Houston.
 3          THE COURT:  Is there anything about that that about
 4   affect your judgment if you were to be on this jury?
 5          PROSPECTIVE JUROR NO. 9:  No.
 6          THE COURT:  Let me see what else you raised your
 7   hand on.
 8          PROSPECTIVE JUROR NO. 9:  That's it.
 9          THE COURT:  Any questions, counsel?
10          MR. BUCKLEY:  Nothing from us, Your Honor.
11          THE COURT:  Thank you, sir.  If you could just take
12   the seat you currently occupy, that would be great.
13             Next, No. 6.  How are you?
14          PROSPECTIVE JUROR NO. 6:  Good.
15          THE COURT:  You had friends or family members who
16   worked in the prosecutors offices?
17          PROSPECTIVE JUROR NO. 6:  Yeah.  My father-in-law,
18   now-deceased, was a former prosecutor and state district
19   judge.
20          THE COURT:  And what was the name?
21          PROSPECTIVE JUROR NO. 6:  W.G. Woods.
22          THE COURT:  Oh, of course, Dub.
23          PROSPECTIVE JUROR NO. 6:  Yeah, Dub.
24          THE COURT:  I tried a case before Dub years ago.
25          PROSPECTIVE JUROR NO. 6:  We miss him.
```

1          THE COURT:  I'm sure you do.

2               Is there anything about his work that would

3     affect your judgment if you were to be a juror on this case?

4          PROSPECTIVE JUROR NO. 6:  No.

5          THE COURT:  It is a small world.

6          PROSPECTIVE JUROR NO. 6:  It is.

7          THE COURT:  Was that the only time you raised your

8     hand?

9          PROSPECTIVE JUROR NO. 9:  Yes.

10         THE COURT:  Questions, counsel?

11         MR. BUCKLEY:  Nothing from us, Your Honor.

12         MS. ZACK:  Nothing from us.

13         THE COURT:  Thank you.

14               That was a blast from the past.

15               Next, please.  No. 10, how are you today?

16         PROSPECTIVE JUROR NO. 10:  Okay.

17         THE COURT:  Are you okay?

18         PROSPECTIVE JUROR NO. 10:  Yeah.  I am here.

19         THE COURT:  You indicated that you or someone in

20    your family or close personal friend had done law

21    enforcement.

22         PROSPECTIVE JUROR NO. 10:  Yes.  They currently are,

23    yes.

24         THE COURT:  And who is that?

25         PROSPECTIVE JUROR NO. 10:  Owen Birdsall.

1          THE COURT:  And what is his relationship to you?

2          PROSPECTIVE JUROR NO. 10:  He's my cousin.

3          THE COURT:  And where is he?  Where does he work?

4          PROSPECTIVE JUROR NO. 10:  The city -- the Houston

5    police department.

6          THE COURT:  And what, is he a --

7          PROSPECTIVE JUROR NO. 10:  Forensic.  He is out

8    there on the scenes where the crime scenes are.

9          THE COURT:  Is he involved in any cases that are

10   similar to the allegation in this case?

11         PROSPECTIVE JUROR NO. 10:  Not that I know of.

12         THE COURT:  Has he shared many of the details of his

13   work with you?

14         PROSPECTIVE JUROR NO. 10:  Very little.

15         THE COURT:  Is there anything about his work and the

16   fact that he is your cousin that would affect your judgment

17   if you were to be on the jury?

18         PROSPECTIVE JUROR NO. 10:  No.  But there was one

19   thing I didn't mention.  I think when you asked the question,

20   I kind of missed it.

21              You asked -- I had a relative who had been

22   molesting; and I did, and it was a nephew.  And, of course, I

23   happened to be her teacher.

24         THE COURT:  So it was the nephew who allegedly did

25   the molesting?

1     PROSPECTIVE JUROR NO. 10:  Absolutely.  And then she
2  committed suicide.
3     THE COURT:  Okay.  And how old was this person that
4  was molested?
5     PROSPECTIVE JUROR NO. 10:  She was in the ninth
6  grade when I taught her.
7     THE COURT:  So she was a student of yours?
8     PROSPECTIVE JUROR NO. 10:  Yeah.  Actually happened
9  to be in my class.
10     THE COURT:  How long ago was that?
11     PROSPECTIVE JUROR NO. 10:  Oh, it's been a long time
12  ago because I have been a counselor, too.  I have been a
13  counselor in marriage and family things because I have dealt
14  with some cases but not --
15     THE COURT:  Anything involving something like this?
16     PROSPECTIVE JUROR NO. 10:  You know, I want to tell
17  you maybe with the counseling, but, you know, it's always
18  passed on to someone else.  We never really handled it.
19     THE COURT:  All right.
20     PROSPECTIVE JUROR NO. 10:  Okay.
21     THE COURT:  So let's focus on the one that did occur
22  in your bailiwick.
23     PROSPECTIVE JUROR NO. 10:  Sure, sure, sure.
24     THE COURT:  Is this part of the reason why you
25  raised your hand?

1    PROSPECTIVE JUROR NO. 10:  No, no.  I have nerve
2  damage in my right foot.
3    THE COURT:  I think you raised your hand and said
4  that this was the subject matter.
5    PROSPECTIVE JUROR NO. 10:  Yeah.  I will tell you
6  this.  My first cousin was bisexual, and he ended up passing
7  away.  There was a lot of domestic things going on with
8  violence, with nudity; and so he ended up with AIDS and
9  passed away, and so that stayed in my head.  That's why I --
10  I may be talking too loud.  He just recently passed away a
11  couple of years ago.
12    THE COURT:  All right.
13    PROSPECTIVE JUROR NO. 10:  And we were about the
14  same age.
15    THE COURT:  Let's start with the student who
16  committed suicide.  You told me it was a long time ago?
17    PROSPECTIVE JUROR NO. 10:  It was.
18    THE COURT:  And this was not -- teachers care about
19  their students.
20    PROSPECTIVE JUROR NO. 10:  Yes.  And then the
21  counselor -- I was a counselor for a long time, too.
22    THE COURT:  The combination of these things, would
23  any of them, either in themselves or together, make it so
24  difficult -- affect your judgment or be likely to affect your
25  judgment that you would find it difficult to be the kind of

1  fair and impartial juror that I described?

2          PROSPECTIVE JUROR NO. 10:  In all honesty --

3          THE COURT:  Please.

4          PROSPECTIVE JUROR NO. 10:  -- yes.

5          THE COURT:  And would that be really hard for you to

6  set aside?

7          PROSPECTIVE JUROR NO. 10:  I think so, yes.

8          THE COURT:  And all I need is an honest answer.

9          PROSPECTIVE JUROR NO. 10:  Yes.

10         THE COURT:  Questions?

11         MR. BUCKLEY:  Nothing from us, Your Honor.

12         MS. ZACK:  No, Your Honor.

13         THE COURT:  Thank you.

14             Next, please.  No. 28, you raised your hand.

15         MR. BUCKLEY:  Hardship, Your Honor.

16         THE COURT:  Significant hardship?

17         PROSPECTIVE JUROR NO. 28:  There's a funeral that I

18  plan on attending this morning.

19         THE COURT:  I'm sorry.  You're No. 28?

20         PROSPECTIVE JUROR NO. 28:  Yes.

21         THE COURT:  Last-minute revelations are tough to

22  adjust.  So, we'll be done as soon as we can.  I don't know

23  if the timing or how far away it is or how close this person

24  was to you.  I would urge you to go visit the family this

25  evening.

1          PROSPECTIVE JUROR NO. 28:  I don't have any problems
2     other than that.

3          THE COURT:  I'm sorry?

4          PROSPECTIVE JUROR NO. 28:  I said I don't have any
5     problems being here other than that.

6          THE COURT:  And had you notified us in advance, we
7     would have rescheduled you.

8          PROSPECTIVE JUROR NO. 28:  I was only notified last
9     night that I had to be here today.

10         THE COURT:  It doesn't matter.  Notify us in advance
11    next time that you have specific days within which you are
12    subject to being called and we will know you can't make it,
13    and we will try to adjust in advance; just can't do it after
14    the fact with any ease.

15              So if you can be patient right now, take your
16    seat, and we will get done as fast as we can and you will be
17    able to go visit with the family.

18         PROSPECTIVE JUROR NO. 28:  Okay.

19         MS. ZACK:  I have a question, Your Honor.  You
20    indicated on your form that you had an unlawful carry charge.
21    Can you tell us anything about that?

22         PROSPECTIVE JUROR NO. 28:  Yeah.  It was probably, I
23    think, 18, 20 years ago.

24         THE COURT:  Was it a felony or a misdemeanor?

25         PROSPECTIVE JUROR NO. 28:  No, no, misdemeanor.

```
 1          MS. ZACK:  Anything about that, are you going to
 2   hold that against the government or law enforcement in any
 3   way?
 4          PROSPECTIVE JUROR NO. 28:  No, ma'am.
 5          MS. ZACK:  Okay.
 6          THE COURT:  Thank you, sir.
 7               Good morning, No. 16.  How are you?
 8          PROSPECTIVE JUROR NO. 16:  Morning.
 9          THE COURT:  You raised your hand indicating you had
10   a concern about your ability to be fair because of the
11   subject matter.
12          PROSPECTIVE JUROR NO. 16:  Yes.
13          THE COURT:  Tell me what was on your mind.
14          PROSPECTIVE JUROR NO. 16:  When you started saying
15   up to four children --
16          THE COURT:  But these are only allegations, you
17   understand?
18          PROSPECTIVE JUROR NO. 16:  I understand.  I just, I
19   don't know if I have any preconceived feelings that would
20   prevent me from or keep me from being objective.  I don't
21   know.  I am nervous about --
22          THE COURT:  Nobody likes the subject area that this
23   case concerns, nobody.  And I don't -- I am not asking you to
24   like it.  The issue is not whether you can find it in your --
25   end up liking it or not.
```

```
 1              PROSPECTIVE JUROR NO. 16:  Right.
 2              THE COURT:  But the government doesn't matter.
 3    That's not the issue.
 4              PROSPECTIVE JUROR NO. 16:  Right.
 5              THE COURT:  The issue is whether there is any
 6    specific reason or general reason that you would be unable to
 7    follow the Court's instructions.  My instructions are this:
 8    You cannot base your verdict and your judgment on bias, on
 9    prejudice, on revulsion, on emotion or sympathy.
10              You must instead limit your consideration to
11    the evidence produced in this courtroom, not what you read in
12    the paper, not movies you've seen, not books, not TV, the
13    evidence in this courtroom and my instructions on what the
14    law is.
15              One of those instructions, besides, you can't
16    be affected by bias or sympathy or emotion, is the government
17    has the burden of proving guilt beyond a reasonable doubt.
18    You cannot help the government prove its case.  You have to
19    be satisfied that before you can vote guilty on any count
20    that the government has proven guilt as to every element of
21    that count beyond a reasonable doubt.  Can you do that?
22              PROSPECTIVE JUROR NO. 16:  I think so.
23              But I have one other concern.  I'm afraid I am
24    not going to -- my short-term memory is not that great.
25              THE COURT:  You can take notes.
```

1          PROSPECTIVE JUROR NO. 16:  Oh, you can?

2          THE COURT:  Yes, ma'am.

3          PROSPECTIVE JUROR NO. 16:  I am so afraid I am not

4   going to remember everything that everybody says.

5          THE COURT:  You and I are not quite the same age but

6   pretty close.  I write it down.

7          PROSPECTIVE JUROR NO. 16:  Okay.

8          THE COURT:  We take notes, okay?

9          PROSPECTIVE JUROR NO. 16:  All right.  Thank you.

10          THE COURT:  We are allowed to take notes.  And I

11   will give you instructions on the appropriate limits on using

12   those notes.

13          PROSPECTIVE JUROR NO. 16:  Can you ask, if somebody

14   says something and you don't quite remember, can you ask, can

15   a juror ask questions?

16          THE COURT:  You can tell me if you need something

17   repeated because you haven't heard it.

18          PROSPECTIVE JUROR NO. 16:  Or I don't understand it

19   or I don't remember it?

20          THE COURT:  Well, write it down.

21          PROSPECTIVE JUROR NO. 16:  Okay, okay.

22          THE COURT:  So take notes if you're concerned.

23          PROSPECTIVE JUROR NO. 16:  Okay.  All right.  Thank

24   you.

25          THE COURT:  Literally with those, are you able to

1   follow my instructions?

2            PROSPECTIVE JUROR NO. 16:  I think so.  I think so.

3            THE COURT:  You understand how important it is?

4            PROSPECTIVE JUROR NO. 16:  Yes, I do, I do.

5            THE COURT:  Wold you be tempted -- let's assume for

6   the purpose of discussion that there was some evidence of

7   guilt presented by the prosecution but not guilt beyond a

8   reasonable doubt.  Would you be tempted to sort of reach for

9   a conviction because of the nature of the subject matter even

10  if you knew that the government had not proven guilt beyond a

11  reasonable doubt?

12           PROSPECTIVE JUROR NO. 16:  Possibly.

13           THE COURT:  Could you discipline yourself so you

14  wouldn't do that?

15           PROSPECTIVE JUROR NO. 16:  I would try very hard to

16  be objective.

17           THE COURT:  You would have to ask yourself, has the

18  government proven this, not by some evidence, but by evidence

19  beyond a reasonable doubt?  And the standard is evidence that

20  would satisfy you in making a decision in the most important

21  of your own affairs.

22           PROSPECTIVE JUROR NO. 16:  I think so.  I'd like to

23  think so.

24           THE COURT:  We don't give A's for effort, we really

25  don't, okay?

1          PROSPECTIVE JUROR NO. 16:  Okay.

2          THE COURT:  You have to spell the words right; you

3  got to give the right answers on the arithmetic, okay.  The

4  fact that you tried really hard is not going to make it.

5          PROSPECTIVE JUROR NO. 16:  Okay.

6          THE COURT:  I am not asking if you can try.  I'm

7  asking, are you confident that you will be able to do that,

8  recognizing how important it is?

9          PROSPECTIVE JUROR NO. 16:  I'd like to think so.

10          THE COURT:  I understand, but that's not the

11  standard.  If you are not --

12          PROSPECTIVE JUROR NO. 16:  I'm pretty sure.  I am

13  pretty sure.

14          THE COURT:  Are you confident?

15          PROSPECTIVE JUROR NO. 16:  Almost.

16          THE COURT:  Beyond a reasonable doubt?

17          PROSPECTIVE JUROR NO. 16:  Oh, gosh.

18          THE COURT:  Would you want you on this jury?  If you

19  were the defendant, would you want you on this jury?

20          PROSPECTIVE JUROR NO. 16:  Probably not.  I'm sorry.

21          THE COURT:  Any questions?

22          MS. ZACK:  No, Your Honor.

23          MR. BUCKLEY:  Nothing from us, Your Honor.

24          THE COURT:  Thank you.  Take the seat you currently

25  occupy.

1            Next, Juror No. 17, how are you, ma'am?

2            PROSPECTIVE JUROR NO. 17:  Good.  Thank you.

3            MR. BUCKLEY:  The same issues, Your Honor.

4            THE COURT:  You raised your hand in response to the

5    question is there anything about this subject matter that

6    raises a concern on your part.  Tell me what was on your

7    mind.

8            PROSPECTIVE JUROR NO. 17:  I just, the subject

9    matter made me feel kind of uncomfortable, and I'd really

10   like --

11           THE COURT:  Nobody likes it.  It makes us all feel

12   uncomfortable.

13                Would you be able to put that aside and not

14   allow it to affect your judgment?

15           PROSPECTIVE JUROR NO. 17:  I think so.

16           THE COURT:  Are you confident?

17           PROSPECTIVE JUROR NO. 17:  No, I am not.

18           THE COURT:  If you were the defendant, would you

19   want you to be on this jury?

20           PROSPECTIVE JUROR NO. 17:  I'm not sure.  I am not

21   very -- it takes me a while to weigh the pros and cons.

22           THE COURT:  That's okay.

23           PROSPECTIVE JUROR NO. 17:  I am not sure if I can

24   make decisions very fast.

25           THE COURT:  You don't have to be fast.  Nothing

1  about this process has to be fast.

2          I am not asking you if you can make a decision

3  quickly.  I am asking you if in making that decision you

4  would do so based on my instructions.  And my instructions

5  include -- listen to what they include.  You cannot allow

6  yourself to be affected by bias, by emotion, by fear, by

7  prejudice or by sympathy, including sympathy for victims.

8  You cannot be influenced by that.

9          You can only base your verdict on my

10  instructions on what the law is and on the evidence you hear

11  in this courtroom, not what you fear might happen in the

12  future, not what you have read about, not what you have heard

13  about on the news, whatever, read in movies, I mean, seen in

14  movies, read in books, evidence and my instructions, not

15  sympathy, not emotion.  Can you do that?

16          PROSPECTIVE JUROR NO. 17:  Yes, I can.

17          THE COURT:  And if you can do that, the defendant

18  would have no concern about having you on this jury; is that

19  correct?

20          PROSPECTIVE JUROR NO. 17:  That's correct.

21          THE COURT:  And neither would the government?

22          PROSPECTIVE JUROR NO. 17:  (Indicating in the

23  affirmative).

24          THE COURT:  Let's assume just for the purpose of

25  discussion that there was some evidence presented by the

1   prosecution of guilt but not beyond a reasonable doubt.
2   Would you be tempted to return a verdict of guilty because
3   there was some evidence, even if there was not evidence
4   beyond a reasonable doubt?  And the standard is evidence that
5   would satisfy you in making the most important of your own
6   affairs.  Think about the most important decisions you've had
7   to make, who to marry, house to buy, where to go to school,
8   what kind of job, the most important of your own affairs.
9   Would you make the government meet that standard?
10          PROSPECTIVE JUROR NO. 17:  I think so.
11          THE COURT:  Same question.  Are you confident that
12  you would do that, because those would be my instructions on
13  the law?
14          PROSPECTIVE JUROR NO. 17:  Yes, ma'am.
15          THE COURT:  Question?
16          MR. BUCKLEY:  Please, Your Honor.
17              Good morning, ma'am.  I can see that even this
18  discussion is affecting you emotionally.  And is that because
19  of your boys and your own family?
20          PROSPECTIVE JUROR NO. 17:  Yes, sir.
21          THE COURT:  That's okay.
22          PROSPECTIVE JUROR NO. 17:  I'm sorry.
23          MR. BUCKLEY:  And please understand none of us --
24          THE COURT:  Don't be nervous because of us.
25          MR. BUCKLEY:  Yeah.

1           But what I want to make sure and what we are
2    all here to make sure is that, of course, you don't know what
3    evidence is going to be presented in this case; but if you
4    hear evidence that produces a response that upsets you deeply
5    and makes you sick to your stomach and then may even make you
6    very angry, but you learn when you hear the Court's
7    instructions that it might not be against the law, maybe you
8    feel it should be and that the defendant should be punished
9    for what you have heard, are you still a hundred percent
10   confident, can you commit at a hundred percent to following
11   the Court's instructions even if it goes against every
12   emotion and opinion that you may be feeling at that time?
13          PROSPECTIVE JUROR NO. 17:  Yes, sir.
14          THE COURT:  And you can commit that to us?
15          PROSPECTIVE JUROR NO. 17:  Yes.
16          THE COURT:  Thank you very much.
17          MS. ZACK:  Nothing.
18          THE COURT:  Next, please.  How are you, sir?
19          PROSPECTIVE JUROR NO. 18:  Fine.  Thank you.
20          THE COURT:  No. 18?
21          PROSPECTIVE JUROR NO. 18, yes, ma'am.
22          THE COURT:  You raised your hand that you had law
23   enforcement knowledge?
24          PROSPECTIVE JUROR NO. 18:  I have a brother-in-law,
25   he's been out about three years now, but he was local in

1    county as a reserve deputy.

2          THE COURT:  Is there anything about his work that

3    would affect your judgment if you were to be on this jury?

4          PROSPECTIVE JUROR NO. 18:  No, Your Honor.

5          THE COURT:  Was he involved in any cases similar to

6    the kind of case you've heard about here?

7          PROSPECTIVE JUROR NO. 18:  No, Your Honor.

8          THE COURT:  Any questions?  I think that's the only

9    time you raised your hand.

10          PROSPECTIVE JUROR NO. 18:  Yes, Your Honor.

11          MR. BUCKLEY:  Good morning, sir.

12          PROSPECTIVE JUROR NO. 18:  Good morning.

13          MR. BUCKLEY:  Would your relationship with someone

14    in law enforcement cause you or lead you to -- say there is a

15    witness who testifies who is from law enforcement.  Would you

16    be inclined to give that witness's testimony more weight

17    automatically just because he or she works with law

18    enforcement?  Is there a possibility that you might feel that

19    way?

20          PROSPECTIVE JUROR NO. 18:  I wouldn't think so.  I

21    have never been put in the position, but I wouldn't think so.

22          MR. BUCKLEY:  If the Court, if the Judge instructs

23    you that you must consider every witness's testimony equal,

24    equally and assess their credibility independently, no matter

25    whether they're law enforcement or not, are you able to

1   commit to us that you can follow that instruction?

2           PROSPECTIVE JUROR NO. 18:  Yes.

3           MR. BUCKLEY:  Thank you, sir.  Nothing further from

4   us, Your Honor.

5           THE COURT:  Anything from the government?

6           MS. ZACK:  No, Your Honor.

7           PROSPECTIVE JUROR NO. 18:  So I'm done?

8           THE COURT:  You're done.  Take the seat you

9   currently occupy.

10              Next, No. 19.  Good morning.

11          PROSPECTIVE JUROR NO. 19:  Hi.

12          THE COURT:  You raised your hand in response to a

13  question about not being fair because of the subject matter.

14  Tell me more about that.

15          PROSPECTIVE JUROR NO. 19:  I don't know.  I guess

16  it's because I have kids of my own and I just worry about me

17  getting emotional or having some bias, even if I don't.

18          THE COURT:  We all have biases.  We all have kids.

19  Lots of us have kids.

20          PROSPECTIVE JUROR NO. 19:  Yes.

21          THE COURT:  The question is not whether we like the

22  subject area or whether we are free from fear for our

23  children.  We never are free from fear for our children,

24  right?

25          PROSPECTIVE JUROR NO. 19:  Right.

1            THE COURT:  The question is instead whether you are
2    able to follow the Court's instructions.  And what do my
3    instructions include?  You cannot allow yourself to be
4    affected in reaching a judgment by bias, sympathy for
5    victims, revulsion, by fear or emotion.  Instead you have to
6    limit yourself to the evidence you hear in this courtroom and
7    to my instructions on the law, not what you have read about
8    in headlines or seen in movies or heard about in newscasts.

9            And based on those two things you have to
10   follow the instructions on what the law is and decide if as
11   to every element, every count that the government alleges
12   they have presented evidence proving guilt beyond a
13   reasonable doubt.  And beyond a reasonable doubt means
14   evidence that would satisfy you in making the most important
15   decisions on your own affairs, who to marry, where to live,
16   what kind of career.

17           You're obviously a disciplined person by virtue
18   of academic scholarship.  Would you be able to apply that
19   discipline and follow my instructions in spite of any sort of
20   an emotional response to just the allegations, which is
21   pretty common?  Could you do that?

22           PROSPECTIVE JUROR NO. 19:  I think so.

23           THE COURT:  It's important that you be able to.  We
24   don't give A's for effort, sadly.

25           PROSPECTIVE JUROR NO. 19:  Yeah.  I mean, I think I

1  could do that.  I would just -- I think, because I'm a
2  scientist, I realize that people have lots of biases and
3  maybe I would, too.  I don't know.
4            THE COURT:  And having recognized that --
5            PROSPECTIVE JUROR NO. 19:  Yeah.
6            THE COURT:  -- would you be able to set them aside
7  and not allow them to affect your judgment?
8            PROSPECTIVE JUROR NO. 19:  Yeah.
9            THE COURT:  Let's assume just for the purpose of
10  discussion that the prosecution presented some evidence of
11  the defendant's guilt but not evidence beyond a reasonable
12  doubt.  Would you nonetheless want to convict the defendant
13  and return a verdict of guilty even though you knew it was
14  not evidence beyond a reasonable doubt?
15            PROSPECTIVE JUROR NO. 19:  No.
16            THE COURT:  Okay.  Final question.  Are you so
17  worried about your own ability to be objective and to follow
18  my instructions and to hold the government to their burden
19  that if you were the defendant you wouldn't want you on this
20  jury?
21            PROSPECTIVE JUROR NO. 19:  No.
22            THE COURT:  Okay.  Questions?
23            MR. BUCKLEY:  Briefly, Your Honor.
24                Hi.  Good morning.
25            PROSPECTIVE JUROR NO. 19:  Hi.

1          MR. BUCKLEY:  Understanding, I think, what you have

2     explained, which is that you have some potential biases, you

3     have expressed some concern that you could struggle with

4     those depending on what the evidence is.  I think what we are

5     asking is whether you can for certain -- I don't want to use

6     the word scientific certainty because I think that has a

7     meaning that I am probably mis-communicating it -- but are

8     you able to, with a hundred percent certainty, commit to all

9     of us that no matter how biased or upset that you may become

10    when you are hear the evidence, whatever it is and no matter

11    how you feel, that you can commit a hundred percent to

12    following the Court's instructions even if you passionately

13    disagree with them?

14          PROSPECTIVE JUROR NO. 19:  Yes.

15          MR. BUCKLEY:  You would do that?

16          PROSPECTIVE JUROR NO. 19:  Yes.

17          MR. BUCKLEY:  Thank you, ma'am.  Nothing further.

18          PROSPECTIVE JUROR NO. 19:  Thank you.

19          THE COURT:  All right.  That's all.

20          The other time you raised your hand it was

21    covered by I think a question we have already asked about

22    reducing the burden of proof.

23          MS. ZACK:  No.  She said she had family somehow

24    involved in criminal law.

25          THE COURT:  Okay.  Is that you?

1          PROSPECTIVE JUROR NO. 19:  I have a friend who is
2     involved in immigration.
3          THE COURT:  Is there anything about that that would
4     affect your judgment if you were to be on this jury?
5          PROSPECTIVE JUROR NO. 19:  I don't think so, no.
6          I mean, the final was the hardship one.  My
7     husband's just got called out of town for next week, and I
8     have a daughter who is seven and she will be in camp from
9     8:00 to 4:00, but we don't have family around, so --
10          THE COURT:  But you live pretty close?
11          PROSPECTIVE JUROR NO. 19:  Yeah.
12          THE COURT:  Is there somebody who would be able to
13     take care of her for an hour or so if we had to go, if we
14     were still going?
15          PROSPECTIVE JUROR NO. 19:  I mean, I could look, but
16     I --
17          THE COURT:  Lots of people with young children make
18     sort of "I'll take care of yours this time, but you got to
19     take care of mine next time because that's our deal."
20          PROSPECTIVE JUROR NO. 19:  Yeah.
21          THE COURT:  Would you be able to put something like
22     that into work?
23          PROSPECTIVE JUROR NO. 19:  I would do my best to
24     try.
25          THE COURT:  All right.  Thank you.

1        Do you think you'd be able to do it?  A lot of
2   people at Rice have young children.
3        PROSPECTIVE JUROR NO. 19:  Yeah.  I could probably,
4   yeah, probably.
5        THE COURT:  I appreciate that very much.  Thank you.
6        MR. BUCKLEY:  We have one more matter.  I believe
7   this is related to the first discussion that we had.
8        If I recall, you expressed concern that if
9   there was evidence that the defendant had certain thoughts or
10  desires that you found offensive or even repulsive that could
11  affect your ability to be fair in this case.  How do you feel
12  about that in light of the discussion that we had?
13       PROSPECTIVE JUROR NO. 19:  I think what I was
14  thinking was this.  If someone had thought about it, there is
15  evidence someone thought about committing a crime, that I
16  would have trouble putting that aside as not being evidence.
17       THE COURT:  It's evidence, but the point is that
18  it's not a crime.
19       PROSPECTIVE JUROR NO. 19:  It's not a crime.  I
20  agree with that.
21       THE COURT:  And if that's the only evidence, then
22  the government has not proven the elements of the offense.
23       PROSPECTIVE JUROR NO. 19:  Okay.
24       THE COURT:  Would you be able to follow that
25  instruction?

```
 1              PROSPECTIVE JUROR NO. 19:  Yes.
 2              THE COURT:  All right.
 3              MR. BUCKLEY:  Thank you, ma'am.
 4              PROSPECTIVE JUROR NO. 19:  I have one more thing.  I
 5    think nobody said that they were morally against
 6    homosexuality in the room, but I overheard a juror who said
 7    he was.  Do you want his number or --
 8              THE COURT:  Do you have the number?
 9              PROSPECTIVE JUROR NO. 19:  34.
10              MR. BUCKLEY:  Thank you very much.
11              THE COURT:  Please take your seat.
12                   Next, please.
13                   No. 20, how are you?
14              PROSPECTIVE JUROR NO. 20:  Good.
15              THE COURT:  You had a question.
16              PROSPECTIVE JUROR NO. 20:  Question of a criminal
17    case.
18              THE COURT:  You a personal interest in?
19              PROSPECTIVE JUROR NO. 20:  My son has been
20    charged -- my son has been charged with a felony, evading
21    arrest with a vehicle because he didn't pull over when the
22    cop tried to stop him for a traffic ticket, my 19-year-old
23    son.
24              THE COURT:  Is that a pending charge?
25              PROSPECTIVE JUROR NO. 20:  It's pending.  He doesn't
```

1  have a court date.  It's in Grimes County.  There is no court
2  date.
3              THE COURT:  State court?
4              PROSPECTIVE JUROR NO. 20:  I don't know.  It's in
5  Grimes county.
6              THE COURT:  Is there anything about what he is
7  looking at that would affect your judgment if you were to be
8  on the jury in this case?
9              PROSPECTIVE JUROR NO. 20:  No.
10             THE COURT:  So far do you think he has been treated
11  fairly?
12             PROSPECTIVE JUROR NO. 20:  Oh, yeah.
13             THE COURT:  I think that was the only time you
14  raised your hand.
15             PROSPECTIVE JUROR NO. 20:  That is.
16             THE COURT:  Thank you so much.
17                 Questions.
18             MR. BUCKLEY:  Nothing from us, Your Honor.
19             THE COURT:  Just take your seat, please ma'am.
20  Thank you.
21                 Next, please.  No. 21.
22             MR. BUCKLEY:  Negative experience with law
23  enforcement.
24             PROSPECTIVE JUROR NO. 21:  My husband's best friend,
25  Ray Hill --

1          THE COURT:  I'm sorry.  Say that again.

2          PROSPECTIVE JUROR NO. 21:  My husband's best friend

3   is Ray Hill, and he is like a hero in Houston, so I know that

4   he had many charges in the police department when he was

5   arrested for a couple hours, but he won.

6               After that they tell him that -- and also he

7   had another case from the state court.  He went to federal,

8   and actually they have to change it.  This is what I know.

9   But he, like I don't know, he had just negative experience as

10  well; but again, because he knows and he is very good writing

11  speech, so he had a, like he won.

12         THE COURT:  Is this a criminal case or a civil case?

13         PROSPECTIVE JUROR NO. 21:  It was a -- he's

14  homosexual, so this is on this case.  I don't know the

15  judges --

16         THE COURT:  Where was that?

17         PROSPECTIVE JUROR NO. 21:  In Houston.

18         THE COURT:  He was arrested?

19         PROSPECTIVE JUROR NO. 21:  Yeah, he was arrested.

20         THE COURT:  By the state, by the Houston police

21  department?

22         PROSPECTIVE JUROR NO. 21:  This is one case was

23  here.  He had like many cases.

24         THE COURT:  What was he arrested for?

25         PROSPECTIVE JUROR NO. 21:  I don't know details.

1  This is all I know.

2          THE COURT:  Any idea what he was arrested for?

3          PROSPECTIVE JUROR NO. 21:  You can Google it right

4  here and you can see it.

5          THE COURT:  No, actually we can't, not that easily.

6          PROSPECTIVE JUROR NO. 21:  Okay.

7          THE COURT:  How long ago was it?

8          PROSPECTIVE JUROR NO. 21:  Huh?

9          THE COURT:  How long ago was it?

10          PROSPECTIVE JUROR NO. 21:  It was many years ago.

11          THE COURT:  How many years ago?

12          PROSPECTIVE JUROR NO. 21:  Maybe 10, 15 years ago.

13          THE COURT:  Were you married then?

14          PROSPECTIVE JUROR NO. 21:  He was our minister at

15  our wedding 10 years ago.

16          THE COURT:  This is not your husband?

17          PROSPECTIVE JUROR NO. 21:  No, no, no.

18          THE COURT:  This is your minster?

19          PROSPECTIVE JUROR NO. 21:  Yeah.  My husband, he

20  is -- this is what I know and this is experience.

21          THE COURT:  And you know it because your husband has

22  told you about it or your minister has told you about it?

23          PROSPECTIVE JUROR NO. 21:  No, no, because he's my

24  friend as well, so then he told me.

25          THE COURT:  But you don't know what he was charged

1  with?

2         PROSPECTIVE JUROR NO. 21:  I don't know details

3  because --

4         THE COURT:  Did it have anything to do with his

5  being homosexual?

6         PROSPECTIVE JUROR NO. 21:  Yeah, it does.

7         THE COURT:  How do you know that?

8         PROSPECTIVE JUROR NO. 21:  Whatever he was charged

9  for.

10         THE COURT:  But you don't know what he was charged

11  for?

12         PROSPECTIVE JUROR NO. 21:  This is all details that

13  I don't know.

14         THE COURT:  So you don't know if that had anything

15  to do with it one way or the other?

16         PROSPECTIVE JUROR NO. 21:  I don't know details.

17         THE COURT:  Were you aware of these events when they

18  were occurring?  Were you aware of -- how long before you

19  knew this minister did all this happen?

20         PROSPECTIVE JUROR NO. 21:  But it was before, you

21  know, when they --

22         THE COURT:  Before you met him?

23         PROSPECTIVE JUROR NO. 21:  Yes, yes.  It was not

24  during that 10 years that I know him, yes, yes.

25         THE COURT:  Before that?

```
1              PROSPECTIVE JUROR NO. 21:  Yes, before that, yes.
2              THE COURT:  And you don't know any of the details?
3              PROSPECTIVE JUROR NO. 21:  No, not like --
4              THE COURT:  So, because you don't know anything
5    about the specifics --
6              PROSPECTIVE JUROR NO. 21:  Just only mine I know,
7    but it's case by case.
8              THE COURT:  Right.  And that's my point.  Is there
9    anything about --
10             PROSPECTIVE JUROR NO. 21:  This is on evidence and
11   this is --
12             THE COURT:  And is there anything about what
13   happened to your minister before you met him that would in
14   any way affect your judgment if you were to be a juror in
15   this case?
16             PROSPECTIVE JUROR NO. 21:  No, no at all, not at
17   all.
18             THE COURT:  It wouldn't have any impact at all?
19             PROSPECTIVE JUROR NO. 21:  No, because I know --
20             THE COURT:  Could you set it out of your mind and
21   not allow yourself even to think about it?
22             PROSPECTIVE JUROR NO. 21:  Oh, yes, yes.
23             THE COURT:  Okay.  Now I understand.
24             All right.  Hang on.  Let me make sure you
25   didn't raise your hand in response to any other question.
```

1          MR. BUCKLEY:  Just one more matter, Your Honor.

2          THE COURT:  Yes, sir.

3          MR. BUCKLEY:  Good morning, ma'am.  I can hear by

4  your accent that English may not be your first language?

5          PROSPECTIVE JUROR NO. 21:  No, no.

6          MR. BUCKLEY:  What is your first language?

7          PROSPECTIVE JUROR NO 21:  Russian.

8          THE COURT:  Russian, I assume.

9          PROSPECTIVE JUROR NO. 21:  Yes.

10          MR. BUCKLEY:  Thank you.

11               Do you have -- how long have you been speaking

12  English?

13          PROSPECTIVE JUROR NO. 21:  10 years.

14          MR. BUCKLEY:  Do you have any --

15          THE COURT:  Your English is very good.

16          MR. BUCKLEY:  It is very good.

17          PROSPECTIVE JUROR NO. 21:  Well, thank you.

18          MR. BUCKLEY:  Do you have any concern about your

19  ability to understand the testimony or statements of people

20  in English?

21          PROSPECTIVE JUROR NO. 21:  Just in case if I could

22  not understand, I can ask and they can rephrase it.

23          THE COURT:  Yes.

24          PROSPECTIVE JUROR NO. 21:  Just I want to make sure

25  that I understood it right.

1          THE COURT:  We would be open to any indication by a

2    member of the jury that they haven't heard or understood.

3          PROSPECTIVE JUROR NO. 21:  Because it's very

4    sensitive, and if it's something wrong, you are wrong, right?

5    Yeah, absolutely.

6          MR. BUCKLEY:  Thank you, ma'am.

7          THE COURT:  Thank you.

8          PROSPECTIVE JUROR NO. 21:  Thank you.

9          THE COURT:  Come on up, please, next.

10          And we will have to take a break for lunch

11    because I have a preexisting commitment, so you all will have

12    an opportunity to get something to eat.

13          No. 23.

14          PROSPECTIVE JUROR NO. 23:  Good morning.

15          THE COURT:  Tell me.

16          PROSPECTIVE JUROR NO. 23:  I guess it's a question

17    about knowing somebody in law enforcement.  I have a good

18    friend who's a U.S. Marshal and another one who's a

19    constable.

20          THE COURT:  And are either of them involved in any

21    cases similar to what you've heard about today?

22          PROSPECTIVE JUROR NO. 23:  I know for sure the

23    constable is not.  I don't even know what my U.S. Marshal

24    friend does.

25          THE COURT:  What about the other one?

1        PROSPECTIVE JUROR NO. 23:  The constable, I don't

2   know.  He wouldn't be.  He does, you know --

3        THE COURT:  Is there anything about the work that

4   they do and the relationship to you that would affect your

5   judgment one way or the other if you were on this jury?

6        PROSPECTIVE JUROR NO. 23:  No, ma'am.

7        THE COURT:  Was that the only time you raised your

8   hand?

9        PROSPECTIVE JUROR NO. 23:  There's another issue.

10  I don't think -- I did raise my hand, but I don't think it

11  would affect my judgment in this case.  I was arrested -- it

12  was a case of mistaken identity -- four years ago.

13        THE COURT:  You were?

14        PROSPECTIVE JUROR NO. 23:  Yes.  Somebody with my

15  same name spelled a little bit differently wrote a bad check

16  in Dalhart, and the yahoo clerks in Dalhart put my

17  information in.  So I was not --

18        THE COURT:  Yahoo was not a compliment, right?

19        PROSPECTIVE JUROR NO. 23:  No, it's not, ma'am, not

20  at all.  You're from Texas, right, and you know that word?

21        THE COURT:  Yes.  I know that word.

22        PROSPECTIVE JUROR NO. 23:  But I was arrested, just

23  a traffic violation and spent the night -- or not the night,

24  spent the day in Fort Bend County jail.  And I spent a lot of

25  almost, a thousand dollars to get my name, get my record

```
 1  expunged.
 2          THE COURT:  Was it identity theft or identify
 3  confusion?
 4          PROSPECTIVE JUROR NO. 23:  No.  It was confusion,
 5  total confusion.  And I have the document that still covers
 6  the mistaken identity.
 7          THE COURT:  That happened in Grimes County, right?
 8          PROSPECTIVE JUROR NO. 23:  No.  It was Dallam
 9  County.
10          THE COURT:  Dallam, fine.  It doesn't matter.  It
11  doesn't involve anything, any of the people who were involved
12  here?
13          PROSPECTIVE JUROR NO. 23:  No.  I'm just pissed at
14  the courts because I can't --
15          THE COURT:  Oh, you are pissed at those poor people?
16          PROSPECTIVE JUROR NO. 23:  Those people, the yahoos.
17          THE COURT:  My question is, can you limit your
18  "pissoffedness" to that?
19          PROSPECTIVE JUROR NO. 23:  I can't.  If there's a
20  defense of mistaken identity, I might have an issue.
21          THE COURT:  No.  It's not an issue in this case.
22          PROSPECTIVE JUROR NO. 23:  Then y'all would have to
23  really prove --
24          THE COURT:  That's not an issue in the case.
25          PROSPECTIVE JUROR NO. 23:  Okay.
```

1          THE COURT:  So with that clarification, would

2  anything you have just described affect your judgment if you

3  were a juror in this case?

4          PROSPECTIVE JUROR NO. 23:  No, ma'am.

5          THE COURT:  All right.  And I'm sorry for what

6  happened to you just as one citizen to another.

7          PROSPECTIVE JUROR NO. 23:  Thank you.

8          MS. ZACK:  You are not going to hold it against us?

9          PROSPECTIVE JUROR NO. 23:  No, no, no, no, no.

10          THE COURT:  All right.

11          PROSPECTIVE JUROR NO. 23:  Not unless you are from

12  Dalhart, Texas.

13          THE COURT:  Or yahoos.

14          PROSPECTIVE JUROR NO. 23:  Yeah.

15          THE COURT:  Anything else?

16          MR. BUCKLEY:  Nothing from us.

17          MS. ZACK:  No.

18          THE COURT:  Thank you.  Take your seat you currently

19  occupy.

20              Next, please.  No. 24, how are you this

21  morning?

22          PROSPECTIVE JUROR NO. 25:  25, ma'am.

23          THE COURT:  25.  I am looking for where you raised

24  your hand.

25              You know somebody in the U.S. attorney's

1  office?

2      PROSPECTIVE JUROR NO. 25:  Well, this regards Mr.
3  Patrick.  I got to know him quite well during the 2016
4  judicial campaign when he was running for the bench.  My
5  husband was running simultaneous and we campaigned together
6  quite frequently.

7          I also know, very close friends with two of the
8  other district criminal court judges, Denise Bradley and
9  Renee Magee.  I've known Renee since high school.

10     THE COURT:  Is there anything about your friendship
11 with them and the work they do that would cause you to --

12     PROSPECTIVE JUROR NO. 25:  No.  I would certainly do
13 my best to be fair.  I just wanted to make sure this was
14 disclosed.

15     THE COURT:  That's lovely music, but if you can shut
16 it down, that would be helpful.  Thank you.

17     PROSPECTIVE JUROR NO. 25:  More serious, to just
18 kind of save you time, one of the things that I wanted to
19 make sure was disclosed is that I have been the host of a
20 symposium through my church of faith-based human trafficking
21 groups in the Houston area.

22     THE COURT:  You know, a lot of people are worried
23 about the policies, and we all care.  That's not the issue.

24         The issue is, in this particular case, if you
25 are on the jury, can you follow my instructions and not be

affected by your general compassion or passion, not be
affected by emotion, by bias?

PROSPECTIVE JUROR NO. 25:  Absolutely.

THE COURT:  Can you set aside those emotions, any
emotion and limit your consideration to the evidence in the
case and my instructions on the law?

PROSPECTIVE JUROR NO. 25:  Yes.

THE COURT:  And my instructions will say, you, a
juror, cannot return a verdict of guilty, even if the
government presents some evidence of guilt --

PROSPECTIVE JUROR NO. 25:  Yes.

THE COURT:  -- unless they prove every element of
every count beyond a reasonable doubt.

PROSPECTIVE JUROR NO. 25:  Absolutely.

THE COURT:  That standard is enough evidence to
satisfy you in making a decision in the most important of
your own affairs.

PROSPECTIVE JUROR NO. 25:  Yes.

THE COURT:  Would you be able to follow that
instruction?

PROSPECTIVE JUROR NO. 25:  Absolutely, yes, Your
Honor.

THE COURT:  Questions?

MS. ZACK:  I do.

Based on the questionnaire before you, you are

1  an attorney?

2          PROSPECTIVE JUROR NO. 25:  Yes.

3          THE COURT:  Have you ever practiced criminal law?

4          PROSPECTIVE JUROR NO. 25:  Not if I could help it.

5          MS. ZACK:  Okay.  Are you going to hold it against

6  us that we do?

7          PROSPECTIVE JUROR NO. 25:  No.

8          MS. ZACK:  What does your husband do?

9          PROSPECTIVE JUROR NO. 25:  He is a civil litigator

10  and primarily focuses his practice in insurance coverage.

11          MS. ZACK:  Yeah.

12          THE COURT:  I have a related question.  You went to

13  law school how long ago?

14          PROSPECTIVE JUROR NO. 25:  I graduated in 1986.

15          THE COURT:  Okay, very helpful.

16              Have you had a long enough time since law

17  school to forget what you once knew about the rules of

18  evidence?

19          PROSPECTIVE JUROR NO. 25:  No, because I still

20  actively practice, but it's a little bit different for

21  criminal law.

22          THE COURT:  That is my point.

23          PROSPECTIVE JUROR NO. 25:  And, yes, anything in

24  criminal law is foreign territory.  If it doesn't have to do

25  with breaking and entering at night or something common law,

1  yeah.

2          THE COURT:  A related question, though.  When we get

3  someone who has specialized knowledge on the jury, you get a

4  little -- we get worried, frankly, that there's going to be a

5  secret expert witness in the jury room.  Wildly unfair.  But

6  with lawyers I get concerned that I am going to have somebody

7  in there saying, let me tell you what you didn't hear because

8  the rules of evidence kept it away.  You can't tell that.

9  And you can't allow it to affect your own thinking.  Can you

10  live up to those rules?

11          PROSPECTIVE JUROR NO. 25:  Yes, ma'am.

12          THE COURT:  Okay.  I may make evidentiary rulings

13  that you don't agree with.  Could you live by my rulings?

14          PROSPECTIVE JUROR NO. 25:  I couldn't imagine that

15  happening.

16          THE COURT:  I can easily.  Would you just ignore it?

17          PROSPECTIVE JUROR NO. 25:  Yes.

18          MR. BUCKLEY:  Nothing from us, Your Honor.

19          MS. ZACK:  Thank you so much, ma'am.

20          THE COURT:  Please come forward.  This is No. 27.

21  How are you?

22          You raised your hand in response to a question

23  about whether just the subject matter itself raised a concern

24  about your ability to be fair.  Tell me what was on your

25  mind, please.

1           PROSPECTIVE JUROR NO. 27:  I just felt something was
2      unsettling after hearing about the case.
3           THE COURT:  The subject matter is unsettling.
4      Everybody feels that way.
5           PROSPECTIVE JUROR NO. 27:  I feel as though the
6      defendant wouldn't be here if there weren't multiple victims
7      involved and -- well, he wouldn't be here.
8           THE COURT:  Have you already, at least to that
9      extent, decided that he is guilty?
10          PROSPECTIVE JUROR NO. 27:  I can't say for sure
11     because I have never been in this position to make that kind
12     of decision before, so I wouldn't be able to give you a
13     definitive answer on that.
14          THE COURT:  As part of my instructions going into
15     the case and again at the end, you cannot begin the case with
16     a preconceived idea or leaning to how the case ought to end.
17     You have to wait until you have heard all the evidence.
18          PROSPECTIVE JUROR NO. 27:  I understand.
19          THE COURT:  You heard my instructions on the law,
20     and then you have to apply the evidence and the law.
21          PROSPECTIVE JUROR NO.  27:  Uh-huh.
22          THE COURT:  And satisfy yourself that the government
23     has proven guilt beyond a reasonable doubt.
24               You cannot allow yourself to be influenced by
25     emotion, by sympathy, by bias or by prejudice.  Can you do

1  that, even given the subject matter?

2         PROSPECTIVE JUROR NO. 27:  That's hard to tell.

3         THE COURT:  Are you confident that you could do

4  that, follow my instructions?

5         PROSPECTIVE JUROR NO.  27:  Not a hundred percent

6  confident, no.

7         THE COURT:  All right.  If you were the defendant in

8  this case, would you be worried about you being on this jury?

9         PROSPECTIVE JUROR NO. 27:  Oh, no.

10        THE COURT:  Any questions?

11        MR. BUCKLEY:  Nothing from us.

12        MS. ZACK:  No, Your Honor.

13        THE COURT:  Thank you.

14           Next.  No. 31, how are you, sir?

15        PROSPECTIVE JUROR NO. 31:  Doing well.  How about

16  yourself?

17        THE COURT:  Doing fine.  Thank you.

18           So you raised your hand in response to a couple

19  of questions.

20        MS. ZACK:  Can't treat law enforcement officers the

21  same.

22        THE COURT:  I'm sorry.  Say that again.

23        MS. ZACK:  Can't treat law enforcement officers the

24  same.

25        THE COURT:  Oh, yes, the testimony of law

```
 1   enforcement.  You would have a problem treating them the way
 2   you treated other witnesses?
 3            PROSPECTIVE JUROR NO. 31:  I would tend to be more
 4   partial to them.
 5            THE COURT:  More partial?
 6                 Now, if you could consider the fact someone is
 7   a law enforcement agent, but you can't consider it as kind of
 8   a blanket enhancer of credibility.
 9            PROSPECTIVE JUROR NO. 31:  Correct.
10            THE COURT:  Do you agree that all law enforcement
11   officers are individuals?
12            PROSPECTIVE JUROR NO. 31:  Yes.
13            THE COURT:  Some of them are good people, truth
14   tellers and some may not be.  Do you agree with that?
15            PROSPECTIVE JUROR NO. 31:  Uh-huh.
16            THE COURT:  Is that a yes?
17            PROSPECTIVE JUROR NO. 31:  Yes, ma'am.
18            THE COURT:  You can consider the type of work
19   someone does, the kind of training they have in assessing
20   credibility, but only after you have heard all of the
21   evidence and judged them as an individual.
22            PROSPECTIVE JUROR NO. 31:  Correct.
23            THE COURT:  Not before you open your mouth, I think
24   you're credible.  Could you do that?
25            PROSPECTIVE JUROR NO. 31:  I would consider the
```

1  evidence, yes.

2          THE COURT:  Could you treat witnesses, including law

3  enforcement agents, the way I've described and make

4  individual judgments based on the testimony they give and not

5  do it before the fact?

6          PROSPECTIVE JUROR NO. 31:  Yes, ma'am.

7          THE COURT:  And could you do that the same way for

8  law enforcement as for other types of witnesses?

9          PROSPECTIVE JUROR NO. 31:  I could do that.

10          THE COURT:  You understand how important it is?

11          PROSPECTIVE JUROR NO. 31:  Yes, ma'am.

12          THE COURT:  That's part of the instructions the

13  Court would give you.  Can you follow the Court's

14  instructions?  Would you follow the instructions?

15          PROSPECTIVE JUROR NO. 31:  I would follow the

16  instructions, yes.

17          THE COURT:  You may think the instruction ought to

18  be we should give law enforcement officers a presumption of

19  credibility, but we don't.

20              Could you follow my instruction even if you

21  didn't like it?

22          PROSPECTIVE JUROR NO. 31:  Yes.  I could follow it.

23          THE COURT:  And you would?

24          PROSPECTIVE JUROR NO. 31:  Yes, ma'am.

25          THE COURT:  Any questions?

1          MR. BUCKLEY:  Nothing from us.  Thank you, sir.

2          MS. ZACK:  Nothing from us.

3          THE COURT:  Take your seat please, sir.

4               Next.  Hi, how are you?

5          PROSPECTIVE JUROR NO. 32:  I am well.  Thank you.

6          THE COURT:  You're No. 32?

7          PROSPECTIVE JUROR NO. 32:  Yes, ma'am.

8          THE COURT:  You raised your hand.  The subject

9     matter was that you thought that because the defendant had

10    been indicted that was some evidence of guilt.

11         PROSPECTIVE JUROR NO. 32:  So, you said it

12    perfectly.  If there's smoke, there's fire.

13              I will say, I am totally open minded; but any

14    time I hear about anything like this is just where I go

15    first, so...

16         THE COURT:  It may be your first reaction; but if I

17    tell you that's not law, the law is an indictment is not

18    smoke.

19         PROSPECTIVE JUROR NO. 32:  Right.

20         THE COURT:  It's no evidence of fire.

21         PROSPECTIVE JUROR NO. 32:  Right.

22         THE COURT:  Would you be able to follow that

23    instruction?

24         PROSPECTIVE JUROR NO. 32:  Yes, ma'am.

25         THE COURT:  Would you be able to set aside your

```
 1  initial inclination of thinking, well, if he hadn't done
 2  something wrong, he wouldn't be here?  Could you set that
 3  aside?
 4          PROSPECTIVE JUROR NO. 32:  Yes, ma'am.
 5          THE COURT:  And put the government in the position
 6  of having to prove to you beyond a reasonable doubt.  And
 7  that standard means evidence that would satisfy you in making
 8  the most important decisions in your own affairs.
 9          PROSPECTIVE JUROR NO. 32:  Yes, ma'am.
10          THE COURT:  Getting married.  That's a pretty high
11  standard.
12          PROSPECTIVE JUROR NO. 32:  Yeah.  No, I --
13          THE COURT:  Would you hold the government to that
14  burden?
15          PROSPECTIVE JUROR NO. 32:  Yes.  If it does make
16  sense, yes.  You have to remove the emotion out of it.
17          THE COURT:  Absolutely.
18          PROSPECTIVE JUROR NO. 32:  Yes, yes, ma'am.
19          THE COURT:  All right.  And would you be able to do
20  that?
21          PROSPECTIVE JUROR NO. 32:  Yes, ma'am.
22          THE COURT:  All right.
23              Any questions?
24          MR. BUCKLEY:  Nothing from us.
25          THE COURT:  As a good accountant --
```

1        PROSPECTIVE JUROR NO. 32:  Yes.

2        THE COURT:  -- you don't allow yourself to be -- you

3   may feel sorry for someone because their books are a mess,

4   but you don't apply a different accounting standard, do you?

5        PROSPECTIVE JUROR NO. 32:  It's black and white.

6   It is what it is; that's right.

7             So, we're all done?

8        THE COURT:  Any questions?

9        MS. ZACK:  No questions.

10       THE COURT:  Thank you, sir.  Please take your seat.

11   Just take the seat you currently occupy.

12            Next, please.  No. 33.

13       PROSPECTIVE JUROR NO. 33:  Yes.

14       THE COURT:  Let me find where you raised your hand.

15   You have friends or family members in law enforcement?

16       PROSPECTIVE JUROR NO. 33:  As well as myself.

17       THE COURT:  And what kind of work?

18       PROSPECTIVE JUROR NO. 33:  Correction.

19       THE COURT:  Where was that and how long ago?

20       PROSPECTIVE JUROR NO. 33:  North Carolina and the

21   State of Georgia, last served in 2014.

22       THE COURT:  What was your specific work?

23       PROSPECTIVE JUROR NO. 33:  Officer, Sergeant.

24       THE COURT:  In a penal, a prison?

25       PROSPECTIVE JUROR NO. 33:  Yes, oh, yes,

1  correctional institution.

2       THE COURT:  Was there anything about that work that

3  would affect your judgment if you were to be on this jury?

4       PROSPECTIVE JUROR NO. 33:  Not at all.

5       THE COURT:  Did you deal with inmates who had been

6  convicted of offenses similar to what you have heard

7  described?

8       PROSPECTIVE JUROR NO. 33:  Absolutely.

9       THE COURT:  Is there anything -- and I assume you

10 were mixed in with a bunch of other kinds of inmates?

11      PROSPECTIVE JUROR NO. 33:  Absolutely.

12      THE COURT:  And is there anything about that

13 exposure, if you will, that involvement that would affect

14 your judgment one way or the other?

15      PROSPECTIVE JUROR NO. 33:  None at all.

16      THE COURT:  Questions.

17      MR. BUCKLEY:  Your Honor, I believe that the lady

18 mentioned that she had a question.

19      THE COURT:  That's right.  You did.

20      PROSPECTIVE JUROR NO. 33:  That would have been

21 toward the end.  You can disregard that.

22      THE COURT:  It was clarified for you?

23      PROSPECTIVE JUROR NO. 33:  It was irrelevant.

24      THE COURT:  Okay.  I think that was the only time

25 you raised your hand.  Thank you.

1          PROSPECTIVE JUROR NO. 33:  Yes.  Thank you very

2  much.

3          MR. BUCKLEY:  Thank you, ma'am.

4          THE COURT:  Next, please.  No. 34, how are you, sir?

5          PROSPECTIVE JUROR NO. 34:  Excuse me?

6          THE COURT:  How are you?

7          PROSPECTIVE JUROR NO. 34:  I'm doing fine, ma'am.

8  And you, Your Honor?

9          THE COURT:  "Ma'am" is fine.  I don't care.  Just

10  don't call me "honey."

11          PROSPECTIVE JUROR NO. 34:  No thanks.

12          THE COURT:  All right.  You raised your hand in

13  response to the question about whether you would have

14  difficulty being fair because of the subject matter.  Tell me

15  about that.

16          PROSPECTIVE JUROR NO. 34:  Yes, ma'am.  I don't know

17  really how to say this, but I have a real problem with child

18  molesters, whether they're accused or whether they've

19  actually done it, and I probably have a hard time with a

20  dislike.  I just don't -- I will be honest with you.  I don't

21  have much sympathy for them.

22          THE COURT:  Let me ask you this, sir.  If you were

23  the defendant or his lawyer, would you be scared of having

24  you on this jury?

25          PROSPECTIVE JUROR NO. 34:  Me, yes, ma'am, I would.

```
 1           THE COURT:  Any questions?
 2           MR. BUCKLEY:  Nothing from us, Your Honor.
 3           THE COURT:  Thank you, sir.
 4                Take your seat, please, sir.
 5                Next, please.  How are you, No. 35?
 6           PROSPECTIVE JUROR NO. 35:  Good.
 7           THE COURT:  You raised your hand on this question
 8  about whether you could be fair.  You have a concern about
 9  being fair in response to the subject matter.  Would you
10  explain a little bit more about that.
11           PROSPECTIVE JUROR NO. 35:  Well, I just feel in the
12  beginning you mentioned all the allegations.  My heart sank
13  and my stomach knotted up.
14           THE COURT:  Nobody likes the subject area.
15           PROSPECTIVE JUROR NO. 35:  Yeah.  So I think, yes.
16           THE COURT:  Is your emotional reaction so
17  significant that it would prevent you from being able to
18  follow the Court's instructions?  And the Court's
19  instructions include that you cannot be influenced by
20  sympathy, anger, fear, bias or prejudice?
21           PROSPECTIVE JUROR NO. 35:  Yeah, I mean --
22           THE COURT:  Could you set those aside and not allow
23  them to --
24           PROSPECTIVE JUROR NO. 35:  Just look at the facts?
25           THE COURT:  Just looks at the facts, the evidence?
```

1    PROSPECTIVE JUROR NO. 35:  Yeah.

2    THE COURT:  Could you do that?

3    PROSPECTIVE JUROR NO. 35:  Yeah, yeah, I think so.

4    THE COURT:  Are you confident?

5    PROSPECTIVE JUROR NO. 35:  Yeah.

6    THE COURT:  The instructions I will give you and

7    every members of the jury would be, you have to decide this

8    case based on the evidence in this courtroom.

9    PROSPECTIVE JUROR NO. 35:  Sure.

10   THE COURT:  Not on what you read in the paper, not

11   on the headlines, not on what you hear on the news or read in

12   books or watch in movies.

13   PROSPECTIVE JUROR NO. 35:  Sure.

14   THE COURT:  The evidence in this courtroom about

15   these people, these events.

16   PROSPECTIVE JUROR NO. 35:  Sure.

17   THE COURT:  And my instructions on the law.  You may

18   not agree with the instructions, but you would have to follow

19   them.

20   PROSPECTIVE JUROR NO. 35:  Uh-huh.

21   THE COURT:  Can you do that?

22   PROSPECTIVE JUROR NO. 35:  Yeah.

23   THE COURT:  Those instructions would include, the

24   government must prove, before I can return a verdict of

25   guilty on any count, evidence that proves beyond a reasonable

1  doubt that the defendant is guilty of every element of every
2  count alleged.
3          PROSPECTIVE JUROR NO. 35:  Okay.
4          THE COURT:  Could you do that?
5          PROSPECTIVE JUROR NO. 35:  Yes.
6          THE COURT:  Let's assume for the purpose of
7  discussion that you hear and see some evidence of guilt but
8  not evidence beyond a reasonable doubt.  You remember that
9  standard is evidence that would satisfy you in making a
10 decision in the most important of your own affairs, who to
11 marry, where to go to school, where to live, the job you want
12 to take, that kind of decision.
13         PROSPECTIVE JUROR NO. 35:  Uh-huh.
14         THE COURT:  Would you be tempted, just because there
15 was some evidence of guilt, but not beyond a reasonable
16 doubt, to return a verdict of guilty even though there was
17 not evidence beyond a reasonable doubt?
18         PROSPECTIVE JUROR NO. 35:  No.  I am trying to just
19 process the question.
20         THE COURT:  Sure.  So this is some evidence of guilt
21 but not beyond a reasonable doubt.
22         PROSPECTIVE JUROR NO. 35:  Right.
23         THE COURT:  Government falls short.
24         PROSPECTIVE JUROR NO. 35:  Right.
25         THE COURT:  Would you sort of reach to find the

1  defendant guilty even if there was not evidence beyond a
2  reasonable doubt?
3          PROSPECTIVE JUROR NO. 35:  No.
4          THE COURT:  Because of the subject matter?
5          PROSPECTIVE JUROR NO. 35:  Right.
6          THE COURT:  And your own bias?
7          PROSPECTIVE JUROR NO. 35:  I know it would be hard
8  to say no, but no like -- does that make sense?
9          THE COURT:  Nobody says it's easy.
10         PROSPECTIVE JUROR NO. 35:  Yeah.
11         THE COURT:  Making a decision in the most important
12  of your own affairs is not easy, is it?
13         PROSPECTIVE JUROR NO. 35:  Right, right.
14         THE COURT:  Would you be able to do it?
15         PROSPECTIVE JUROR NO. 35:  I can do it.
16         THE COURT:  And would you do it?
17         PROSPECTIVE JUROR NO. 35:  Yes.
18         THE COURT:  Because it is so important.
19         PROSPECTIVE JUROR NO. 35:  Correct, yeah.
20         THE COURT:  We don't give A's for effort.  You can't
21  merely say I'm gonna try.  You have to be able to do it.
22         PROSPECTIVE JUROR NO. 35:  Yes, ma'am.
23         THE COURT:  You understand how important that is?
24         PROSPECTIVE JUROR NO. 35:  I do.
25         THE COURT:  Questions?

1          MR. BUCKLEY:  Thank you, Your Honor.

2              Good afternoon.  I guess it's afternoon now.

3          THE COURT:  Almost.  Yeah, it is now.

4          MR. BUCKLEY:  Are you certain that you can follow

5 the Court's instructions as you have discussed with the Judge

6 even if something about the evidence makes you personally

7 angry or even disgusted?  Even under those circumstances, are

8 you absolutely certain that you can follow the Judge's

9 instructions even if you don't like them?

10         PROSPECTIVE JUROR NO. 35:  Yeah.

11         MR. BUCKLEY:  Okay.  Thank you very much.

12         THE COURT:  Okay.

13         MS. ZACK:  You indicated on the jury questionnaire

14 that you had made a complaint of an aggravated assault.  Were

15 you a victim or a witness?

16         PROSPECTIVE JUROR NO. 35:  No, it was -- what's it

17 called?  It was road rage.  It was a car.

18         MS. ZACK:  Not a domestic issue?

19         PROSPECTIVE JUROR NO. 35:  No.

20         MS. ZACK:  Your husband works for the sheriff's

21 office?

22         PROSPECTIVE JUROR NO. 35:  Yes.

23         MS. ZACK:  At crime scenes?

24         PROSPECTIVE JUROR NO. 35:  Yes, ma'am.

25         MS. ZACK:  If you didn't think that Ms. Leo and I

1  proved this case, would you have trouble going back to your

2  husband and saying I found this guy not guilty?

3          PROSPECTIVE JUROR NO. 35:  No.

4          MS. ZACK:  Okay.

5          THE COURT:  Does your husband do any work similar to

6  the work here?

7          PROSPECTIVE JUROR NO. 35:  No.

8          THE COURT:  Is there anything about his work and his

9  relationship to you that would affect your judgment to be on

10  this jury?

11          PROSPECTIVE JUROR NO. 35:  No.

12          THE COURT:  Any other questions?

13          MR. BUCKLEY:  Thank you, Your Honor.

14              And understanding that your husband works in

15  law enforcement, you may hear in this case testimony from

16  other members of law enforcement.

17          PROSPECTIVE JUROR NO. 35:  Correct.

18          MR. BUCKLEY:  And the Judge is going to give you

19  instructions about how to weigh the credibility of each

20  witness, and those instructions are going to apply equally to

21  each witness.

22          PROSPECTIVE JUROR NO. 35:  Sure.

23          MR. BUCKLEY:  Do you have any concern about that you

24  might have a tendency to give more weight or more credibility

25  right away to the testimony of someone from law enforcement?

1          PROSPECTIVE JUROR NO. 35:  I mean, there's good

2     apples and bad apples in every profession.  So just because

3     they wear a badge doesn't mean they're --

4          MR. BUCKLEY:  Understood.

5               So what I hear you saying is that you will

6     evaluate each witness?

7          PROSPECTIVE JUROR NO. 35:  Uh-huh.

8          MR. BUCKLEY:  In the way that the Judge instructs

9     you to do?

10          PROSPECTIVE JUROR NO. 35:  Yes.

11          MR. BUCKLEY:  No matter whether they're from law

12     enforcement or not?

13          PROSPECTIVE JUROR NO. 35:  Correct.

14          MR. BUCKLEY:  Thank you, ma'am.

15          THE COURT:  Please take the seat you currently

16     occupy.

17               We are going to break for lunch now.

18                    (In open court)

19          THE COURT:  Ladies and gentlemen, I am going to give

20     you an opportunity to get your lunch.  It will be quick.  We

21     are going to take an hour.  There is a cafeteria in the

22     basement.  Don't talk about anything related to this case

23     with each other or anybody else.

24               There is also, if you cross the street and go

25     into the tunnel system, there is delis, there is Treebeards,

1    there's soup, sandwiches, cookies, ice cream.  I don't know
2    what you're having for lunch, but you may feel you've earned
3    some ice cream, I don't know.
4               But be back here in the seat you currently
5    occupy.  Those people who are standing up, remember who you
6    are and come back in; and when I come in, take those same
7    positions and we will start off right with you, and we'll
8    move as quickly as we can.
9               Thank you very much.  See you in one hour.
10   Yes, 1:20.  Lawyers, come back at 1:15.
11
12              (Recess taken for lunch)
13
14              THE COURT:  Counsel, come on up.  We will resume
15   where we left off.  Please come forward.
16              No. 37.  All right.  You raised your hand
17   earlier in response to a question.  Does the fact that the
18   defendant has been indicted, is that enough to kind of where
19   there's smoke, there's fire for you to already start thinking
20   that he might be guilty, that he is guilty?
21              PROSPECTIVE JUROR NO. 37:  I think it kind of does,
22   but --
23              THE COURT:  Sometimes we think that.  But if I give
24   you an instruction that says an indictment is no smoke, it's
25   not evidence of anything, and I told you that during the --

1  in the instructions that I give all the jurors I say that the
2  fact of an indictment, the fact that a defendant is in court
3  is no evidence of guilt at all, and you can't take it that
4  way.
5              PROSPECTIVE JUROR NO. 37:  Okay.
6              THE COURT:  There has been no evidence, and you
7  cannot start the trial tending to believe that the defendant
8  is guilty.
9              PROSPECTIVE JUROR NO. 37:  Uh-huh.
10             THE COURT:  You have to have an open mind.  Can you
11 do that?
12             PROSPECTIVE JUROR NO. 37:  Yeah.  I think I can do
13 that.
14             THE COURT:  Can you set aside your initial reaction
15 and not allow it to affect your judgment in any way?
16             PROSPECTIVE JUROR NO. 37:  Yeah.
17             THE COURT:  And if I instruct you at the trial that
18 you have to keep an open mind throughout and that at the end
19 of the case you have to make a decision not based on initial
20 feelings, not based on bias or sympathy or prejudice but
21 based just on the evidence you heard in court and my
22 instructions on the law, and one of those instructions would
23 be the government has to prove guilt, if it can, beyond a
24 reasonable doubt, could you apply those rules?
25             PROSPECTIVE JUROR NO. 37:  I think I could.

1        THE COURT:  We don't give A's for effort.

2            You also raised your hand in response to the

3   question do you have concerns about your ability to be fair

4   just because of the subject matter.

5        PROSPECTIVE JUROR NO. 37:  Uh-huh.

6        THE COURT:  Tell me why you raised your hand on that

7   one.

8        PROSPECTIVE JUROR NO. 37:  Just because of the fact

9   that it involves children.

10       THE COURT:  We all agree about our children.  And

11  the fact that they grow up and become adults doesn't mean you

12  quit worrying.

13       PROSPECTIVE JUROR NO. 37:  Uh-huh.

14       THE COURT:  But that sort generalized concern,

15  nobody likes the subject matter.

16       PROSPECTIVE JUROR NO. 37:  Right.

17       THE COURT:  That's not the issue.  The issue is

18  whether you can be the kind of juror that I described, start

19  out on a level playing field.  The burden's on the

20  government; defense doesn't have to prove anything.

21       PROSPECTIVE JUROR NO. 37:  Uh-huh.

22       THE COURT:  The defendant is innocent until and

23  unless the government proves guilt beyond a reasonable doubt.

24  And that standard is evidence that would convince you if you

25  were making a personal decision on the most important of your

own affairs.  It's a high standard.  It's not beyond all

possible doubt, but it's a high standard.

Would you be able to look at the government and

say, you didn't make that, you didn't convince me beyond a

reasonable doubt.  Even if there is some evidence of guilt,

it wasn't enough, and I am voting not guilty because that's

what the Judge's instruction require.  Could you do that?  I

just need an honest answer.

PROSPECTIVE JUROR NO. 37:  Yeah.

THE COURT:  You could, or you would?  Both have to

be true.

PROSPECTIVE JUROR NO. 37:  Yeah.  I could and I

would.

THE COURT:  You understand how important that is?

PROSPECTIVE JUROR NO. 37:  Yeah.

THE COURT:  It's not just A for effort.  You have to

be able to look at Mr. Buckley and say, you represent the

defendant and you don't need to be scared of having me on

this jury.

PROSPECTIVE JUROR NO:  37:  Uh-huh.

THE COURT:  I am going to listen to the evidence and

follow the Judge's instructions.

PROSPECTIVE JUROR NO. 37:  Uh-huh.

THE COURT:  Could you do that?

PROSPECTIVE JUROR NO. 37:  Yes, I could do that.  I

1  would do it.

2       THE COURT:  You can make that commitment to Mr.

3  Buckley as the defendant's lawyer?

4       PROSPECTIVE JUROR NO. 37:  Yes.

5       THE COURT:  And to me as the Judge who's --

6       PROSPECTIVE JUROR NO. 37:  Yeah, yes.

7       THE COURT:  -- got to ensure a fair trial?

8       PROSPECTIVE JUROR NO. 37:  Uh-huh.

9       THE COURT:  That's my job.

10      PROSPECTIVE JUROR NO. 37:  Yes.

11      THE COURT:  Would you deliver a fair trial?

12      PROSPECTIVE JUROR NO. 37:  Yes, I would.

13      THE COURT:  All right.  Any questions?

14      MR. BUCKLEY:  Thank you, Your Honor.

15           Good afternoon, ma'am.

16      PROSPECTIVE JUROR NO. 37:  Hey.

17      THE COURT:  I do have another one.

18           You also raised your hand in response to a

19  question of having friends or family in law enforcement.

20      PROSPECTIVE JUROR NO. 37:  No.  I have some friends

21  that are lawyers, but they're like civil rights and

22  constitution, so I don't know if that's the same.

23      THE COURT:  Is there anything about their work and

24  their relationship to you that would affect your judgment if

25  you were to be on this jury?

1    PROSPECTIVE JUROR NO. 37:  No, hu-huh.

2    THE COURT:  I think that was it.

3    MR. BUCKLEY:  Thank you, Your Honor.

4            Following up on your discussion with the Judge

5    about your commitment to be fair and impartial, let's assume

6    for a moment that the prosecution puts on some evidence of

7    guilt and it's evidence that offends you deeply on a personal

8    level that makes you angry and upset and gives you the strong

9    opinion that the defendant deserves to be punished; but when

10   you read the Court's instructions, if you follow the

11   instructions, you cannot convict the defendant beyond a

12   reasonable doubt.

13           Would you have a concern in a situation like

14   that about your ability to follow the Court's instructions

15   even though you might be very emotionally affected?

16   PROSPECTIVE JUROR NO. 37:  That I am not really

17   sure.

18   MR. BUCKLEY:  And so, understanding that, and you're

19   human and none of us are asking you to be anything but human,

20   understanding that you may be very affected by what you hear

21   in this case, we need to know now whether you can absolutely

22   commit and take an oath that no matter how upset you might be

23   at the evidence that you can follow the Court's instructions

24   no matter how that makes you feel.  Are you able to make that

25   commitment here today?

```
 1          PROSPECTIVE JUROR NO. 37:  I would like to say yes,
 2  but, you know --
 3          THE COURT:  Doesn't matter what you like.
 4          PROSPECTIVE JUROR NO. 37:  Yeah, I mean --
 5          THE COURT:  I need to know what you are able to do.
 6          PROSPECTIVE JUROR NO. 37:  Yeah, uh-huh.
 7          THE COURT:  And will do, not what you wish to do.
 8          PROSPECTIVE JUROR NO. 37:  I think it would be
 9  difficult, but I think I can definitely do it.
10          MR. BUCKLEY:  Are you able to commit to us and give
11  us your word now that you will do it no matter what?
12          PROSPECTIVE JUROR NO. 37:  Yeah, I would do it.
13          MR. BUCKLEY:  Thank you, ma'am.  Nothing further.
14          THE COURT:  You understand how important this is?
15          PROSPECTIVE JUROR NO. 37:  Oh, yeah.  I know how it
16  can really affect someone's life.
17          THE COURT:  Have we got a question from the
18  government?
19          MS. ZACK:  No, Your Honor.
20          THE COURT:  Thank you very much for your time.  I
21  hope you got lunch.
22              Come on up No. 40.
23          PROSPECTIVE JUROR NO. 40:  ███████.
24          THE COURT:  I don't want to know your name.
25          PROSPECTIVE JUROR NO. 40:  I know yours.
```

1          THE COURT:  I am protecting your privacy.  We do not
2     want names.  You are No. 40.
3          PROSPECTIVE JUROR NO. 40:  Okay.
4          THE COURT:  You raised your hand in response to a
5     question about having family members or friends in law
6     enforcement.  And who is that?
7          PROSPECTIVE JUROR NO. 40:  Can I give you a name?
8          THE COURT:  Yes.
9          PROSPECTIVE JUROR NO. 40:  Tommy Goodfellow.  He's a
10    Sergeant on the Virginia Beach Police Department.
11         THE COURT:  Does he share with you many of the
12    details of his work?
13         PROSPECTIVE JUROR NO. 40:  He was a deacon in our
14    church, and so I had a very close relationship with him.
15         THE COURT:  Is that a yes?
16         PROSPECTIVE JUROR NO. 40:  Yes.
17         THE COURT:  Did he share with you any details of the
18    kind of work on cases that might present issues similar to
19    what we have here?
20         PROSPECTIVE JUROR NO. 40:  I don't think so.
21         THE COURT:  Is there anything about his relationship
22    and friendship with you and the kind of work he does that
23    would any way affect your judgment if you were to be on this
24    jury?
25              I asked that series of questions about how you

1   would view the credibility of the people who worked in law
2   enforcement.  And the bottom line standard is that you have
3   to view the testimony of every individual --
4           PROSPECTIVE JUROR NO. 40:  Right.
5           THE COURT:  -- on-on-one as an individual.
6           PROSPECTIVE JUROR NO. 40:  I understand.
7           THE COURT:  I think you would probably agree that
8   law enforcement officers are like the rest of us human
9   beings.  Some are better than others, some are honest and
10  some are not.
11          PROSPECTIVE JUROR NO. 40:  For sure.
12          THE COURT:  You can consider the fact of someone's
13  work and type of work and training they do and have but only
14  on a case-by-case, a person-by-person basis after they
15  testify.  You can't sort of presume that every law
16  enforcement officer is more truthful than other witnesses, or
17  less.
18          PROSPECTIVE JUROR NO. 40:  I understand that.
19          THE COURT:  Would you be able to make that kind of
20  individualized assessment?
21          PROSPECTIVE JUROR NO. 40:  Absolutely.
22          THE COURT:  Even though you have a close
23  relationship with somebody that's in law enforcement?
24          PROSPECTIVE JUROR NO. 40:  Absolutely.
25          THE COURT:  Anywhere else you raised your hand?

1              MS. ZACK:  Criminal case.

2              THE COURT:  Oh, personal interest in the outcome of

3  a criminal case.  Thank you.  Can you tell us about that?

4              PROSPECTIVE JUROR NO. 40:  I had a man breaking in

5  and took him to court.

6              THE COURT:  So you were a victim and a witness?

7              PROSPECTIVE JUROR NO. 40:  Certainly.  Our church

8  was the victim, and I was the witness.

9              THE COURT:  Were you satisfied that the process was

10 a fair process?

11             PROSPECTIVE JUROR NO. 40:  Oh, yes, yes, ma'am.

12             THE COURT:  Was there anything about that

13 experience, which is very different from anything we are

14 going to be talking about in this case, that experience, in

15 any way is it likely to affect your judgment if you were to

16 be on this jury?

17             PROSPECTIVE JUROR NO. 40: No.

18             THE COURT:  You have mentioned several times that

19 you are very active in your church.

20             PROSPECTIVE JUROR NO. 40:  I'm the pastor.

21             THE COURT:  I don't know anything about the position

22 of your church or you as an individual as a religious man --

23             PROSPECTIVE JUROR NO. 40:  Right.

24             THE COURT:  -- towards some of the issues in the

25 case.  I assume that nobody likes the subject matter of this,

1   but I need to be sure that neither sexual orientation or

2   sexual preference is going to create a possible bias or

3   prejudice on your part, a religious or any other reason?

4           PROSPECTIVE JUROR NO. 40:  I certainly don't think

5   it would.

6           THE COURT:  And would you be -- sometimes if we are

7   aware that we might be prone to certain kind of positions or

8   biases, we can say "I am not going to."

9           PROSPECTIVE JUROR NO. 40:  I'm not going to.

10           THE COURT:  I am not going to let it affect me.  I

11   am going to put it out of my mind.  Would you be able to do

12   that?

13           PROSPECTIVE JUROR NO. 40:  I think I would.

14           THE COURT:  Do you understand how important it is?

15           PROSPECTIVE JUROR NO. 40:  Sure.  I certainly do.

16           THE COURT:  Maybe I can ask the question this way.

17   One of the instructions I give every jury, in deliberating to

18   a verdict you may not be influenced by bias, by prejudice, by

19   anger, by fear, by sympathy.

20           PROSPECTIVE JUROR NO. 40:  Right.

21           THE COURT:  You must be objective.  You must ask

22   yourself, is the evidence presented, evidence in this

23   courtroom, not what I hear in the news, not what I read in

24   the paper, in this courtroom, has that, based on the Court's

25   instructions, convinced me beyond a reasonable doubt that the

1  defendant is guilty of every element, of every offense
2  charged?  That's the standard.  Can you follow that?
3  　　　　　PROSPECTIVE JUROR NO. 40:  Yes, ma'am.
4  　　　　　THE COURT:  Not an A for effort.
5  　　　　　PROSPECTIVE JUROR NO. 40:  I understand.
6  　　　　　THE COURT:  Not I am really going to try.  I can do
7  this.  I will do this.
8  　　　　　PROSPECTIVE JUROR NO. 40:  I understand.
9  　　　　　THE COURT:  You understand how important it is?
10 　　　　　PROSPECTIVE JUROR NO. 40:  I do.
11 　　　　　MR. BUCKLEY:  Nothing from us, Your Honor.  Thank
12 you, sir.
13 　　　　　MS. ZACK:  I have a question.
14 　　　　　　　Do you have any concern that you may bring the
15 idea of forgiveness into your ability to evaluate the facts
16 and circumstances?  You may at some point feel sorry for
17 someone, whether it's the defendant or a witness or someone
18 else?  Will you be able to able to separate --
19 　　　　　PROSPECTIVE JUROR NO. 40:  Bring out the perfect
20 balance, whether it needs to be judged, whether I think it
21 should be tenderness.
22 　　　　　MS. ZACK:  No issue sitting and judging the facts in
23 this case?
24 　　　　　PROSPECTIVE JUROR NO. 40:  I do not.
25 　　　　　MS. ZACK:  Okay.  Thank you.

1          THE COURT:  Thank you, sir.  Just take the seat you
2     currently occupy.

3               Next, please.  No. 41, how are you, sir?

4          PROSPECTIVE JUROR NO. 41:  Okay.

5          MR. BUCKLEY:  I believe it's a hardship.

6          THE COURT:  You raised your hand about a significant
7     hardship in jury duty.

8          PROSPECTIVE JUROR NO. 41:  Yeah.  I had a problem.
9     I am out of work right now, so I am looking for a job.  So on
10    a daily basis I am applying for positions.  Being away for a
11    long time would be very difficult.

12         THE COURT:  Oh, it's not a long time.  It's
13    basically today, tomorrow, Friday, Monday, maybe Tuesday.

14              Would you be able to make yourself available
15    for this?

16         PROSPECTIVE JUROR NO. 41:  One or two days, that's
17    okay.

18         THE COURT:  Listen to my question.  If someone says
19    we want an interview with you, could you say, I have got
20    federal jury duty and I can't come Monday but I can come
21    Wednesday?

22         PROSPECTIVE JUROR NO. 41:  I don't know about that.

23         THE COURT:  How difficult is it?

24         PROSPECTIVE JUROR NO. 41:  Can I be excused one day
25    and --

```
 1            THE COURT:  No, no.  But we will proceed with the
 2   case efficiently.
 3            PROSPECTIVE JUROR NO. 41:  Okay.  Yeah.  That was my
 4   concern, like if I can come.
 5            THE COURT:  And if you had to leave early one day to
 6   go for an interview, we could probably accommodate an hour
 7   early or something like that.
 8            PROSPECTIVE JUROR NO. 41:  Okay.
 9            I wanted to mention that according to -- and I
10   feel strongly about sex trafficking and --
11            THE COURT:  Nobody likes it.  But that's not the
12   point.
13            PROSPECTIVE JUROR NO. 41:  -- exploitation of
14   minors.
15            THE COURT:  Sure.  Have you already --
16            PROSPECTIVE JUROR NO. 41:  If I can put the bias
17   away, that will be fine.
18            THE COURT:  One of my instructions to all members of
19   the jury is that you cannot allow yourself to be influenced
20   by bias or prejudice or sympathy.
21            PROSPECTIVE JUROR NO. 41:  Yeah.
22            THE COURT:  Can you follow that instruction?
23            PROSPECTIVE JUROR NO. 41:  I have not done this
24   before so --
25            THE COURT:  Very few people have.
```

1          PROSPECTIVE JUROR NO. 41:  This will be the first
2     time.
3          THE COURT:  Not A for effort.  Can you follow that
4     instruction and not allow any bias or prejudice --
5          PROSPECTIVE JUROR NO. 41:  Yes.
6          THE COURT:  -- to affect your judgment?  Just give
7     me an honest answer.
8          PROSPECTIVE JUROR NO. 41:  I hope so.
9          THE COURT:  That's not enough.  You have to be able
10    to give us more than "I hope" or "I'll try."
11         PROSPECTIVE JUROR NO. 41:  Yes.  I feel strongly
12    about those things.
13         THE COURT:  Everybody feels strongly about it.
14              You're an engineer?
15         PROSPECTIVE JUROR NO. 41:  Yeah.  That is right.
16         THE COURT:  You understand evidence.  You understand
17    facts?
18         PROSPECTIVE JUROR NO. 41:  Yeah, sure.
19         THE COURT:  Can you base your decision in this case
20    on the evidence the government presents and my instructions
21    on the law, which include, you have to be satisfied that the
22    government's proof establishes the defendant's guilt beyond a
23    reasonable doubt?  Can you do that and not be influenced by
24    your dislike of the allegations or the issues so that you
25    would want to convict even if the government didn't prove

1  what it needed to prove?

2          PROSPECTIVE JUROR NO. 41:  I will try my best.

3          THE COURT:  I understand you are going to try, sir.

4  Would you be able to do that?

5          PROSPECTIVE JUROR NO. 41:  Yeah, sure.

6          THE COURT:  You understand how important it is?

7          PROSPECTIVE JUROR NO. 41:  Yeah, I do.

8          THE COURT:  You have to do more than try.

9          PROSPECTIVE JUROR NO. 41:  Okay.

10          THE COURT:  Let me put it this way:  If you were the

11  defense lawyer, would you be frightened of having you on the

12  jury, worried about you because you would start out leaning

13  against the defendant?

14          PROSPECTIVE JUROR NO. 41:  As I mentioned, the two

15  things I feel strongly about.

16          THE COURT:  We all do.  But that's not my question.

17              Would you be able to follow the Court's

18  instructions and not start out leaning in favor of conviction

19  and against the defendant?  Would you be able to set that

20  aside --

21          PROSPECTIVE JUROR NO. 41:  Yes.

22          THE COURT:  -- and start out with an even playing

23  field?

24          PROSPECTIVE JUROR NO. 41:  Yes.

25          THE COURT:  So you can look at Mr. Buckley and say,

1  I am a good, fair and impartial juror.  I don't start out
2  leaning against your client?
3              PROSPECTIVE JUROR NO. 41:  Yeah, sure.
4              THE COURT:  Go ahead, Mr. Buckley.
5              MR. BUCKLEY:  Thank you, Your Honor.
6                  Good afternoon, sir.  Thank you for your
7  honesty, first of all.
8                  If you're on this jury and the prosecution puts
9  on evidence about sex trafficking and the evidence makes you
10 very upset and very angry, not only because of the evidence
11 itself but because of your own personal feelings and then you
12 hear the Judge's instructions, and even though you feel very
13 strongly that the defendant deserves to be punished, the
14 Judge's instructions don't allow you to do that, would that
15 be a problem for you?
16             PROSPECTIVE JUROR NO. 41:  I mean, I will listen to
17 the evidence, what is presented, yeah.
18             MR. BUCKLEY:  Let me try to ask it maybe a slightly
19 different way.
20                 If the evidence in this case made you very
21 upset and very angry, could that cause you difficulty in
22 following the Judge's instructions?
23             PROSPECTIVE JUROR NO. 41:  I don't think so.
24             MR. BUCKLEY:  And understanding your feelings about
25 that, are you able to promise all of us now in advance,

1    without having heard any evidence, are you able to promise
2    us, guarantee us that when the time comes to hear the Judge's
3    instructions that you can absolutely follow them?
4            PROSPECTIVE JUROR NO. 41:  Yes.
5            MR. BUCKLEY:  Thank you, sir.
6            THE COURT:  Questions?
7            MS. ZACK:  No, Your Honor.
8            THE COURT:  Thank you, sir.  Please be seated.  Take
9    the seat you currently occupy.
10               Next, 43.  How are you today?
11           PROSPECTIVE JUROR NO. 43:  I'm good.  Thank you.
12           THE COURT:  You had friends or family members in law
13   enforcement?
14           PROSPECTIVE JUROR NO. 43:  Not law enforcement, but
15   the attorney.  I know a criminal attorney.  That's what I
16   raised my hand on.  Do you need the name?  It's a friend, I
17   mean, pretty close.
18           THE COURT:  Does this person share with you many of
19   the details of her work?
20           PROSPECTIVE JUROR NO. 43:  No.
21           THE COURT:  Is there any information you have that
22   they're involved in cases similar to the issues raised here?
23           PROSPECTIVE JUROR NO. 43:  Not that I'm aware of.
24           THE COURT:  Is there anything about your friendship
25   with that person that would in any way affect your judgment

1  if you were to be on this jury?

2  PROSPECTIVE JUROR NO. 43:  No, it would not.

3  I do want to share with you, though, a question

4  I had that wouldn't affect my judgment, but I thought I'd

5  share it any way.

6  THE COURT:  Please keep your voice down.

7  PROSPECTIVE JUROR NO. 43:  I'm a geriatric social

8  worker, and some of my case management clients, not

9  counseling clients, were abused sexually.

10  THE COURT:  In nursing homes?

11  PROSPECTIVE JUROR NO. 43:  Well, when they were

12  younger.

13  THE COURT:  But you weren't involved in that?

14  PROSPECTIVE JUROR NO. 43:  I was not involved, yeah;

15  but I did want to just to make sure you were aware of that.

16  THE COURT:  And is there anything about that

17  exposure that you've had, very different setting --

18  PROSPECTIVE JUROR NO. 43:  Yes.

19  THE COURT:  -- that would in any way affect your

20  judgment if you were to be on this jury?

21  PROSPECTIVE JUROR NO. 43:  No.

22  THE COURT:  Questions?  I think those are the only

23  questions you raised your hand on.

24  PROSPECTIVE JUROR NO. 43:  No.  It was only that

25  one, and then I brought up the other.

1          MR. BUCKLEY:  Nothing from us, Your Honor.

2          MS. ZACK:  Nothing.

3          THE COURT:  Just be seated, please, ma'am.  Thank

4     you.

5                    Next, No. 44.  How are you?

6          PROSPECTIVE JUROR NO. 44:  I'm doing great.

7          THE COURT:  I hope you got lunch.

8                    You raised your hand in response to the

9     question about having, being part of a prosecution office,

10    friends or family members, and also law enforcement.

11         PROSPECTIVE JUROR NO. 44:  Well, my husband is a

12    criminal attorney, defense.  I have siblings that are law

13    enforcement, I have friend that are judges, I have FBI.

14         THE COURT:  Is there anything -- have any of these

15    people shared with you details of their work in areas that

16    were similar to what we are dealing with in this case?

17         PROSPECTIVE JUROR NO. 44:  No.

18         THE COURT:  Is there anything about the

19    relationships that you have with these individuals and their

20    jobs that would in any way affect your judgment if you were

21    to be on this jury?

22         PROSPECTIVE JUROR NO. 44:  No.

23         THE COURT:  Let me make sure this is the only time

24    you raised your hand.  You were worried about being fair and

25    given the subject area.

```
1           PROSPECTIVE JUROR NO. 44:  Yes, because you said
2    minors.  So I just want to be truthful and say that I know my
3    friends, my friends have heard me say that whenever I hear
4    anything about a sexual abuse with a minor, I have said that
5    jail is not good enough.
6           THE COURT:  But the jury aren't involved in
7    punishment.
8           PROSPECTIVE JUROR NO. 44:  Okay.
9           THE COURT:  That's not your issue.  Your issue is
10   whether the prosecution has proven guilt beyond a reasonable
11   doubt.  And that standard doesn't shift or get lighter
12   because the allegation involves minors.  It's the same.
13          PROSPECTIVE JUROR NO. 44:  Okay.
14          THE COURT:  Okay.  And that means beyond a
15   reasonable doubt.  It's not beyond all possibility doubt.
16   But it means that the government's proof would satisfy you in
17   making decisions in the most important of your own affairs.
18   It has to be that high.  So it would have to be the kind of
19   evidence you would rely on in deciding where to live, who to
20   marry, what kind of work, where you would go to school,
21   whether to have children, when to have children, the most
22   important of your own affairs.
23          PROSPECTIVE JUROR NO. 44:  Yes.
24          THE COURT:  Would you be able to require the
25   government to come forward with that level of proof before
```

1    you returned a verdict of guilty?

2             PROSPECTIVE JUROR NO. 44:  Yes.

3             THE COURT:  Would you be tempted to find the

4    defendant guilty if the government produced -- and this is

5    just, let's say, for the sake of discussion -- produced some

6    evidence of guilt but not beyond a reasonable doubt?  Would

7    you be willing at that point and able --

8             PROSPECTIVE JUROR NO. 44:  Uh-huh.

9             THE COURT:  -- to say to the government, you didn't

10   prove enough, not guilty?

11            PROSPECTIVE JUROR NO. 44:  Regardless of the

12   evidence?

13            THE COURT:  No.

14            PROSPECTIVE JUROR NO. 44:  If the government does

15   not prove it?

16            THE COURT:  Some evidence but not beyond a

17   reasonable doubt.

18            PROSPECTIVE JUROR NO. 44:  To me, and could I come

19   back in and --

20            THE COURT:  Would you come back in and say not

21   guilty?

22            PROSPECTIVE JUROR NO. 44:  Then yes.

23            THE COURT:  Would you be tempted to kind of reach to

24   convict the defendant even if there wasn't enough evidence to

25   meet my instructions on the law?

1          PROSPECTIVE JUROR NO. 44:  No.  I think I can follow
2     your instructions.
3          THE COURT:  Well, you have to do more than you think
4     you could.  This is not the little -- this doesn't have an A
5     for effort.
6          PROSPECTIVE JUROR NO. 44:  Right.
7          THE COURT:  This is the little engine that did, not
8     the little engine that was hoping it could.
9              Could you be the engine that did?
10         PROSPECTIVE JUROR NO. 44:  Yes.
11         MR. BUCKLEY:  Briefly, Your Honor.
12             Good afternoon, ma'am.
13         PROSPECTIVE JUROR NO. 44:  Good afternoon.
14         MR. BUCKLEY:  A slight variation on this discussion.
15    If you serve on the jury and the prosecution puts on some
16    evidence of guilt and other evidence that convinces you on a
17    personal level regarding your feelings about the sexual abuse
18    of minors, evidence that convinces you the defendant deserves
19    to be punished, but then when you see the Court's
20    instructions, if you follow the instructions, you cannot
21    convict the defendant, would that be a -- would you be able
22    to follow instructions under those circumstances even if you
23    felt that it committed a grave offense?
24         PROSPECTIVE JUROR NO. 44:  Yes.
25         MR. BUCKLEY:  And you can promise all of us here

1  that no matter what your personal feelings are, including

2  anger or frustration, that you will follow your oath to

3  follow the Court's instructions no matter what the result is?

4  Are you able to make that commitment to us now?

5           PROSPECTIVE JUROR NO. 44:  Yes.

6           MR. BUCKLEY:  Thank you, ma'am.

7           THE COURT:  Ms. Zack.

8           MS. ZACK:  Yes, ma'am.

9               I understand you say you have strong feelings

10  about the subject matter, but I want to go back to your

11  husband's a criminal defense attorney, and he goes up against

12  the prosecution day in and day out.  Are you going to have

13  trouble, if you believe Ms. Leo and I proved our case, going

14  home and telling your husband "I convicted somebody?"

15           PROSPECTIVE JUROR NO. 44:  Would I have to tell him?

16           THE COURT:  Good question, Ms. Zack.  Ask it again.

17           MS. ZACK:  Let me rephrase it.

18               Would it make you -- would you be

19  uncomfortable, knowing what your husband does, finding

20  someone guilty if you believed the government proved the

21  elements beyond a reasonable doubt?

22           PROSPECTIVE JUROR NO. 44:  Okay.  Can you just

23  repeat it one more time so I am sure I understand.

24           THE COURT:  Let me try.

25               Your husband is in business defending people

1    against criminal charges.

2              PROSPECTIVE JUROR NO. 44:  Yes.

3              THE COURT:  If you found that the government had met

4    its burden of proving guilt beyond a reasonable doubt --

5              PROSPECTIVE JUROR NO. 44:  Okay.

6              THE COURT:  -- would you vote to convict knowing

7    that you would have to go home and say to your husband:  I

8    know what you do for a living, and I voted against it.  If

9    you were the defense lawyer, you wouldn't like what I did.

10             PROSPECTIVE JUROR NO. 44:  Oh, I see what you mean.

11   Yes, I could do that.

12             MS. ZACK:  You're okay with that?

13             PROSPECTIVE JUROR NO. 44:  Yes.  I could do that.

14             THE COURT:  Okay.

15             MS. ZACK:  Sorry for my inartful question.

16             THE COURT:  You weren't articulate.  It's a funny

17   concept.

18             But thank you very much for your honest answers

19   to us.

20             Any other questions, counsel?

21             MR. BUCKLEY:  Nothing from us, ma'am.  Thank you.

22             MS. ZACK:  Thank you so much, ma'am.

23             THE COURT:  Just take the seat you currently occupy,

24   and thank you.

25             Next please, 45.

1          PROSPECTIVE JUROR NO. 45:  Good afternoon.

2          THE COURT:  How are you, sir?

3          PROSPECTIVE JUROR NO. 45:  Pretty good.  Thank you.

4          THE COURT:  Hope you got some lunch.  So let me see

5    where you raised your hand.

6          PROSPECTIVE JUROR NO. 45:  I do have like two

7    questions.  I know there is always somewhat -- you were

8    talking about fire and smoke.

9          THE COURT:  Yes.  Do you start out thinking just

10   because the defendant is here because there has been an

11   indictment, which is, as I explained, not evidence of

12   anything, just accusations, do you start out thinking, well,

13   if he hadn't done something criminal he wouldn't be here?

14         PROSPECTIVE JUROR NO. 45:  Hu-huh, no, ma'am.

15         THE COURT:  You understand that an indictment is not

16   smoke?

17         PROSPECTIVE JUROR NO. 45:  Okay.

18         THE COURT:  You understand that?

19         PROSPECTIVE JUROR NO. 45:  Yeah.

20         THE COURT:  So you don't think that the defendant is

21   anything but innocent standing here today?

22         PROSPECTIVE JUROR NO. 45:  Yes.

23         THE COURT:  And if he is guilty, it's because the

24   government has proven beyond a reasonable doubt that he's

25   guilty?

1          PROSPECTIVE JUROR NO. 45:  If they have enough
2     evidence to persuade me, then yes.
3          THE COURT:  And it has to be beyond a reasonable
4     doubt.
5          PROSPECTIVE JUROR NO. 45:  Uh-huh.
6          THE COURT:  Not beyond all possible doubt.  But it
7     has to be enough evidence, the type of evidence, the amount
8     of amount of evidence that would convince you in making a
9     decision in the most important of your own affairs.
10          PROSPECTIVE JUROR NO. 45:  Uh-huh.
11          THE COURT:  Where to live, what kind of job to take,
12     that level of proof.  Would you make the government prove
13     that before you returned a verdict of guilty?
14          PROSPECTIVE JUROR NO. 45:  Yeah, of course.
15          THE COURT:  So that even if there was some evidence
16     of guilt but not enough to meet that standard, would you --
17          PROSPECTIVE JUROR NO. 45:  Collective amount of
18     evidence, not just one because if it's just one, it's just --
19          THE COURT:  Listening to the whole case with an open
20     mind, but considering only the evidence in this courtroom,
21     not considering what you read in the paper?
22          PROSPECTIVE JUROR NO. 45:  Yes.
23          THE COURT:  Would you be able to say to the
24     government, there was some evidence but not enough.  I'm not
25     returning a verdict of guilty.  Not guilty?

1          PROSPECTIVE JUROR NO. 45:  I think so, yeah.

2          THE COURT:  Well --

3          PROSPECTIVE JUROR NO. 45:  I know so, yeah.

4          THE COURT:  You understand how important it is to be

5     able to make that commitment?

6          PROSPECTIVE JUROR NO. 45:  Yes, uh-huh.

7          THE COURT:  And do you make it?

8          PROSPECTIVE JUROR NO. 45:  Uh-huh, yeah.

9          THE COURT:  Yes?

10         PROSPECTIVE JUROR NO. 45:  Yes, yes.

11         THE COURT:  The court reporter can't get "uh-huh."

12         PROSPECTIVE JUROR NO. 45:  Sorry.

13         MR. BUCKLEY:  Nothing from us.  Thank you, sir.

14         MS. ZACK:  Your Honor, I had down that he mentioned

15    an unpleasant encounter with law enforcement.

16         PROSPECTIVE JUROR NO. 45:  Yeah.  I think it was

17    like if they're willing to, something like that.

18         THE COURT:  This was a minor.  Even if a minor is

19    willing to engage in sexual encounters, if they are minors,

20    the law says we don't trust you to make a judgment.

21         PROSPECTIVE JUROR NO. 45:  Okay.

22         THE COURT:  Like a minor can't sign a contract.

23         PROSPECTIVE JUROR NO. 45:  Okay.

24         THE COURT:  A minor can't say --

25         PROSPECTIVE JUROR NO. 45:  They're still kids.

1  Okay.  Gotcha.

2         THE COURT:  Exactly.

3              So even if a minor says, you know what?  I'm on

4  the street, I need money.  If you want to sell my time for a

5  sexual purposes, it's okay with me, you still can't do it.

6         PROSPECTIVE JUROR NO. 45:  Okay, because it's the

7  law, right?

8         THE COURT:  Because it's the law.

9              Can you apply that?

10         PROSPECTIVE JUROR NO. 45:  Yeah.  So, on emotional

11  attachments, I can do that in this trial.

12         THE COURT:  And by the same token, I don't know if

13  you have a particular feeling about people who are gay or if

14  you have a particular feeling about people who have thoughts

15  that you wouldn't have, that you don't like but who don't act

16  out on those thoughts.

17         PROSPECTIVE JUROR NO. 45:  I was still like, it's

18  like --

19         THE COURT:  Can you say to the guy who you may not

20  want to have as a friend, you have been charged with these

21  offenses, and I don't really care what you thought, if that's

22  all you did, and I don't really care what your sexual

23  preference is.  I care whether the government has proven your

24  guilt of these actions, these offenses beyond a reasonable

25  doubt.  Can you set aside any bias or prejudice you might

1  have?

2         PROSPECTIVE JUROR NO. 45:  Not just -- I guess say

3  open minded and just --

4         THE COURT:  And open minded and closed minded at the

5  same time.  So you're open minded that you consider the

6  evidence, but you're deaf to the possible impact or influence

7  of any bias or prejudice.

8         PROSPECTIVE JUROR NO. 45:  Yes.

9         THE COURT:  And you don't let it affect you.

10        PROSPECTIVE JUROR NO. 45:  Consider both sides of

11  the same coin is what I'm hearing.  Yeah, I can do it.

12        THE COURT:  And you will do it?

13        PROSPECTIVE JUROR NO. 45:  Yeah, definitely, yeah,

14  yeah.

15               Anything?

16        MR. BUCKLEY:  Nothing from us, Your Honor.

17        THE COURT:  Ms. Zack?

18        MS. ZACK:  No.

19        THE COURT:  Thank you.  Just take the seat you

20  currently occupy.

21               Next, please, 46.

22        PROSPECTIVE JUROR NO. 46:  Good afternoon, Your

23  Honor.  Good afternoon, ladies and gentlemen.  How are you?

24        MR. BUCKLEY:  Good afternoon.

25        THE COURT:  You raised your hand that you have done

1   some counseling?

2          PROSPECTIVE JUROR NO. 46:  I beg your pardon?  No, I

3   must have misunderstood the question.  I answered for one of

4   being associated with an individual who's worked for a

5   district attorney.

6          THE COURT:  And who is that individual?

7          PROSPECTIVE JUROR NO. 46:  My girlfriend.

8          THE COURT:  What kind of work does she do?

9          PROSPECTIVE JUROR NO. 46:  She actually pulls files.

10  She was a filing assistant.

11         THE COURT:  Is there anything about her job and the

12  fact she's your girlfriend that would affect your judgment if

13  you were elected on this jury?

14         PROSPECTIVE JUROR NO. 46:  No, absolutely not.

15         THE COURT:  And I think that's the only time you

16  raised your hand; is that right?

17         PROSPECTIVE JUROR NO. 46:  I believe I misunderstood

18  the very last, one of the very last questions.  I just want

19  to clarify on it.

20         THE COURT:  I think I asked if you had been involved

21  in any kind of counseling.

22         PROSPECTIVE JUROR NO. 46:  Oh, yes.  That would be

23  on that.

24         THE COURT:  Have you been?

25         PROSPECTIVE JUROR NO. 46:  No, no.  Sorry.  I

1  misunderstood the question.

2        THE COURT:  Any questions, counsel?

3        MR. BUCKLEY:  Nothing from us, Your Honor.

4        THE COURT:  Ms. Zack?

5        MS. ZACK:  No, Your Honor.

6        THE COURT:  Thank you, sir.

7        PROSPECTIVE JUROR NO. 46:  Thank you very much.

8        THE COURT:  What kind of stuff do you cook?

9        PROSPECTIVE JUROR NO. 46:  At the school we do a

10 wide variety of different preparations, from Asian, Italian,

11 American.  We go all around.  I primarily worked cold foods,

12 so I did a lot of salads and stuff, but I recently got

13 promoted to sous-chef.

14        THE COURT:  Oh, congratulations.

15        PROSPECTIVE JUROR NO. 46:  They are training me on a

16 lot more of the other managerial aspects such as ordering and

17 all that, so I am really looking forward to getting to do

18 that.

19        THE COURT:  Good luck to you.

20        PROSPECTIVE JUROR NO. 46:  Thank you very much, Your

21 Honor.

22        THE COURT:  Next, please.  Just take the seat you

23 currently occupy, please, sir.

24              No. 47, how are, sir?

25        PROSPECTIVE JUROR NO. 47:  Good.  How are you?

1          THE COURT:  Good.  I hope you were able to get some
2     lunch.
3               You raised your hand early on in response to a
4     question if there is smoke there is fire, and I need to be
5     sure you understand there is no smoke.
6          PROSPECTIVE JUROR NO. 47:  Okay.
7          THE COURT:  The fact that the defendant has an
8     indictment against him is just the mechanism used to get a
9     case into court.
10          PROSPECTIVE JUROR NO. 47:  Okay.
11          THE COURT:  Not evidence of guilt in any way.
12          PROSPECTIVE JUROR NO. 47:  Okay.
13          THE COURT:  So with that information, do you still
14     find yourself thinking that if the defendant hadn't done
15     something wrong, he wouldn't be here today?
16          PROSPECTIVE JUROR NO. 47:  Yeah.  The reason I
17     raised my hand is because when you asked the question, I was
18     exactly thinking the same thing, the question came to my
19     mind; but, I mean, I still can be impartial.
20          THE COURT:  Can you put aside that initial reaction,
21     completely forget about it and not allow it to affect you at
22     all?
23          PROSPECTIVE JUROR NO. 47:  I think so.
24          THE COURT:  That's not good enough.  We don't give A
25     for effort.

1          PROSPECTIVE JUROR NO. 47:  Okay.  Yeah, I can.
2          THE COURT:  These are serious rights we are talking
3  about.
4          PROSPECTIVE JUROR NO. 47:  Okay.
5          THE COURT:  Will you put that aside and not allow it
6  to affect your judgment?
7          PROSPECTIVE JUROR NO. 47:  I will.
8          THE COURT:  So that both sides are going to start
9  out, you don't start out thinking he's probably guilty --
10          PROSPECTIVE JUROR NO. 47:  Okay.
11          THE COURT:  -- at all.
12          PROSPECTIVE JUROR NO. 47:  Okay.
13          THE COURT:  In fact, it's just the opposite.  You
14  start out thinking he's as innocent as I am unless and until
15  the government proves that he's guilty of these offenses and
16  proves it beyond a reasonable doubt.  Can you make the
17  government do that before you can think that the defendant is
18  guilty?
19          PROSPECTIVE JUROR NO. 47:  I will.
20          THE COURT:  You understand how important it is?
21          PROSPECTIVE JUROR NO. 47:  Yes.
22          THE COURT:  And you indicated you knew somebody that
23  worked for Homeland Security?
24          PROSPECTIVE JUROR NO. 47:  Yeah.  When I got my
25  green card processed, I went to the immigration office, and

they lost my file.  So it's kind of a strike during the
period the period of time, but that's not really how the
duration except --

THE COURT:  And I understand.  How long ago was
that?

PROSPECTIVE JUROR NO. 47:  At least 10 years ago.

THE COURT:  And obviously it involved totally
different people than this case involves?

PROSPECTIVE JUROR NO. 47:  Yes.

THE COURT:  Does that experience, is that likely to
affect your judgment in any way given that some of the agents
are from the same department even though they in all
likelihood were not involved in anything relating to you?

PROSPECTIVE JUROR NO. 47:  Understood.  I should be
able to make a judgment.

THE COURT:  Would you hold it against the government
that this agency was -- my guess is that you believe them to
have been less than competent --

PROSPECTIVE JUROR NO. 47:  Yes.

THE COURT:  -- during the handling of your file?

PROSPECTIVE JUROR NO. 47:  Yes.

THE COURT:  Is that a fair statement?

PROSPECTIVE JUROR NO. 47:  Yes.

THE COURT:  And you were pretty frustrated?

PROSPECTIVE JUROR NO. 47:  I was frustrated, yes.

1      THE COURT:  Would you be able to set aside those
2  understandable feelings and not allow them to in any way
3  influence you if you were a juror in this case?
4      PROSPECTIVE JUROR NO. 47:  I can, yeah.
5      THE COURT:  And you will?
6      PROSPECTIVE JUROR NO. 47:  Yeah, I will.
7      THE COURT:  Questions.
8      MR. BUCKLEY:  Quickly, Your Honor.
9          Good afternoon, sir.  Going back to the
10 discussion about being fair and impartial and also
11 understanding that you have no idea now what the evidence in
12 this case will actually be, do you have -- in your
13 conversation with the Judge you made a commitment that you
14 will follow her instructions.  No matter what her
15 instructions are, you will follow them, right?
16     PROSPECTIVE JUROR NO. 47:  Uh-huh.
17     MR. BUCKLEY:  If you hear evidence in this case that
18 makes you very upset and angry and you feel that following
19 the Judge's instructions would produce an unfair result or
20 result that makes you angry, would you still be able to
21 follow the instructions?
22     THE COURT:  The question is basically asking, I may
23 not like it, but the Judge has instructions that tell me
24 that's what I need to do.
25     PROSPECTIVE JUROR NO. 47:  I will follow your

1   instructions.

2          THE COURT:  Even if you were writing the law, you'd

3   write it differently?

4          PROSPECTIVE JUROR NO.  47:  Uh-huh.

5          THE COURT:  Even if you disagreed with my

6   instructions on what the law is, would you follow them?

7          PROSPECTIVE JUROR NO. 47:  I will.

8          THE COURT:  Even if you were thinking, I'd really

9   like to convict this guy, but there's just not enough

10  evidence there, could you do that, not guilty?

11         PROSPECTIVE JUROR NO. 47:  I don't know.

12         THE COURT:  No.  Could you do that?  The government

13  didn't prove guilt beyond a reasonable doubt -- you remember

14  the standard -- would you look at them and say, I don't enjoy

15  this verdict, but this is what the instructions on the law

16  and the evidence you presented, this is what I need to do?

17         PROSPECTIVE JUROR NO. 47:  I can, yeah.

18         THE COURT:  And will you?

19         PROSPECTIVE JUROR NO. 47:  I will, yeah.

20         THE COURT:  Even if you don't like it, you'll do it?

21         PROSPECTIVE JUROR NO. 47:  I guess, yeah.

22         THE COURT:  No.  Can't guess.

23         PROSPECTIVE JUROR NO. 47:  Okay.  Yeah, I can.

24         THE COURT:  You understand how important this is?

25         PROSPECTIVE JUROR NO. 47:  Yeah.  I do.

1          THE COURT:  You work for a company that manufactures
2     stuff that are used under conditions of heat and pressure,
3     right?
4          PROSPECTIVE JUROR NO. 47:  Yes.
5          THE COURT:  You can't guess, well, maybe it's right?
6          PROSPECTIVE JUROR NO. 47:  Okay.
7          THE COURT:  It's dangerous to people, right?
8          PROSPECTIVE JUROR NO. 47:  Yeah, yeah.
9          THE COURT:  You have to be sure.  Can you be sure?
10          PROSPECTIVE JUROR NO. 47:  Yes.  I will definitely
11     be sure, definitely I will be for sure, yes.
12          THE COURT:  The same standard here.
13          PROSPECTIVE JUROR NO. 47:  Okay.
14          THE COURT:  You don't guess that you did it right.
15     You are sure you did it right?
16          PROSPECTIVE JUROR NO. 47:  I will follow the
17     instruction, yes.
18          MR. BUCKLEY:  Can you commit that you will follow
19     the instructions even if you believe that following the
20     instructions will let someone get away with something that
21     they should be punished for?  Are you able to do that even
22     if --
23          THE COURT:  You would like to have them punished
24     for, not that they should be.
25          MR. BUCKLEY:  That's a good point, Your Honor.

1           That you would want them, like someone to be
2   punished, but following the Judge's instructions --
3           THE COURT:  Convicted for it because the jurors
4   don't have anything to do with punishment.
5           MR. BUCKLEY:  That's right, Your Honor.
6           Could you let someone walk free with a not
7   guilty following the Judge's instructions if you believe
8   strongly that they deserve to be punished?
9           PROSPECTIVE JUROR NO. 47:  I don't think so.
10          MR. BUCKLEY:  That would cause a problem for you
11  personally?
12          THE COURT:  And deserved -- nobody deserves
13  punishment unless they are guilty beyond a reasonable doubt.
14  That's what the law says, so it's the same question.
15          If your honest answer is at the end of the day
16  I don't think I can do it, then I need to know that.
17          If the honest answer is, I will, I can do it
18  and I will, I need to know that.  I just need to know your
19  honest answer.
20          PROSPECTIVE JUROR NO. 47:  Honest, I don't think so.
21          THE COURT:  All right.  Thank you, sir.
22          Any other questions?
23          MR. BUCKLEY:  Nothing from us, sir.  Thank you.
24          THE COURT:  Take a seat.
25          Next, please.  No. 48, you raised your hand

1    indicating that you were concerned about your ability to be

2    fair given the nature of the subject matter?

3            PROSPECTIVE JUROR NO. 48:  Yes, ma'am.

4            THE COURT:  Tell me more.

5            PROSPECTIVE JUROR NO. 48:  I was on a jury years ago

6    with the sexual assault of a child.  It was not a pleasant

7    experience.

8            THE COURT:  These are not meant to be entertaining,

9    although we do move pretty quickly.

10           Would that experience, did that experience

11   leave you with such strong feelings that you would find it

12   difficult to set them aside and follow my instructions

13   without being influence by bias or prejudice or sympathy?

14           PROSPECTIVE JUROR NO. 48:  I think it would be hard

15   not to have sympathy for the victim.

16           THE COURT:  Hard for everybody.

17           If I instructed you that you could not allow

18   that to influence your verdict, would you be able to follow

19   that instruction?  I need your honest answer.

20           PROSPECTIVE JUROR NO. 48:  I don't know if I could

21   or not.

22           THE COURT:  Do you doubt your ability to do that?

23           PROSPECTIVE JUROR NO. 48:  Yes, ma'am.

24           THE COURT:  Any questions?

25           MR. BUCKLEY:  Nothing from us, Your Honor.  Thank

1  you, sir.

2          THE COURT:  Just take the seat you currently occupy,

3  please, sir.

4              Next, please.  No. 50, how are you today?

5          PROSPECTIVE JUROR NO. 50:  Okay.

6          THE COURT:  You raised your hand in response to the

7  question about being concerned that you couldn't be fair

8  given the subject matter.

9          PROSPECTIVE JUROR NO. 50:  Yes.  I was okay until I

10  heard the subject matter.

11          THE COURT:  Nobody likes it.

12          PROSPECTIVE JUROR NO. 50:  And I was kind of

13  surprised myself with my reaction to it.

14          THE COURT:  Was your reaction that you already think

15  that defendant is guilty?

16          PROSPECTIVE JUROR NO. 50:  Well, it wasn't so much

17  that I think he's guilty.  It was more to would I be able to

18  require, you know -- well, I suppose I was.

19          THE COURT:  If I instructed you that it doesn't

20  matter what the subject matter is, the government has to

21  prove guilt beyond a reasonable doubt.

22          PROSPECTIVE JUROR NO. 50:  I understand that.

23          THE COURT:  And that standard is enough proof to

24  convince you if you were making a decision on the most

25  important of your own affairs.  So think about what those

1  decisions are.  Should I marry this guy?  Should I take this
2  job?  Should I buy this house?  Where should I live?
3          You have to be satisfied that the government
4  has met that burden of proof.  It doesn't matter what the
5  allegations or the subject is.  Could you do that?  Would you
6  do that?
7          PROSPECTIVE JUROR NO. 50:  I would try.
8          THE COURT:  Not A for effort in this context, sorry.
9  You have to be able to be committed to do it because it's
10  important.
11          PROSPECTIVE JUROR NO. 50:  I understand.  That's why
12  I raised my hand.
13          THE COURT:  And I appreciate that.
14          PROSPECTIVE JUROR NO. 50:  To be very honest with
15  you, I really don't know that I could.
16          THE COURT:  All right.  Thank you.
17          Any questions?
18          MR. BUCKLEY:  Nothing from us, Your Honor.
19          THE COURT:  Thank you.  Just take the seat you
20  occupied, please.
21          Next please.  No. 52.
22          PROSPECTIVE JUROR NO. 52:  Yes, ma'am.
23          THE COURT:  How are you, sir?
24          You raised your hand in response to the
25  question that just given the subject matter you didn't

1  think -- you had a question about your ability to be fair and
2  impartial.

3        PROSPECTIVE JUROR NO. 52:  Yes, ma'am.

4        THE COURT:  Can you explain that a little bit.

5        PROSPECTIVE JUROR NO. 52:  Sure.  My revulsion to
6  pornography and --

7        THE COURT:  Even involving adults?

8        PROSPECTIVE JUROR NO. 52:  I do, yeah.  I mean, I
9  think it has a deep impact on our culture.  I have been a
10 pastor and worked with individuals in my church whose
11 marriages were falling apart because of pornography, and I've
12 worked with -- I have friends who are involved in sex
13 trafficking organizations.

14       THE COURT:  Let me get to the bottom line.  Would
15 these feelings and the work you've done be likely to affect
16 your judgment if you were to be on this jury?

17       PROSPECTIVE JUROR NO. 52:  You asked us to raise our
18 hands if we thought there was a possibility, and I couldn't
19 say that it wouldn't.

20       THE COURT:  Would you have a difficult time setting
21 them aside, these concerns, and not allowing them to enter
22 into the picture one way or the other?

23       PROSPECTIVE JUROR NO. 52:  I would do my best if I
24 were chosen.

25       THE COURT:  No A for effort.  Would it be hard for

1  you?

2          PROSPECTIVE JUROR NO. 52:  I'm sorry?

3          THE COURT:  Would it be harder for you?

4          PROSPECTIVE JUROR NO. 52:  Yes, it would be harder

5  for me.

6          THE COURT:  And would you -- do you have concerns

7  that at the end of the day you would not be able to set aside

8  those sympathies and those biases?

9          PROSPECTIVE JUROR NO. 52:  I have some concerns

10  about that, yes.

11          THE COURT:  Are those significant concerns?  I know

12  I am pressing, but I have to.

13          PROSPECTIVE JUROR NO. 52:  I know.  Yes.

14          THE COURT:  Questions?

15          MR. BUCKLEY:  Nothing from us, Your Honor.  Thank

16  you, sir.

17          THE COURT:  Just take your seat, please, the seat

18  you currently occupy.  Thank you.

19          PROSPECTIVE JUROR NO. 52:  Okay.  Thank you.  That's

20  fine.  I did raise my hand on the last question also.

21          THE COURT:  Significant hardship?

22          PROSPECTIVE JUROR NO. 52:  Yes, ma'am.

23          THE COURT:  And what is that, please, sir?

24          PROSPECTIVE JUROR NO. 52:  I'm self-employed.  I was

25  a pastor.  I'm a consultant now.  And so I had set aside the

 1  rest of this week.  Once it gets into next week it starts
 2  costing me a lot of money.
 3          THE COURT:  It won't go far into next week if it
 4  does.
 5          PROSPECTIVE JUROR NO. 52:  I have meetings on
 6  Tuesday and I'm out of town on Wednesday, and it starts to
 7  hit me hard.
 8          THE COURT:  Thank you for letting me know.
 9          PROSPECTIVE JUROR NO. 52: Thank you.
10          THE COURT:  Next.  No. 53, you raised your hand that
11  you had concerns about being fair given the subject matter
12  involved in the case.
13          PROSPECTIVE JUROR NO. 53:  That was the first one?
14          THE COURT:  No.  It wasn't the first time.
15          PROSPECTIVE JUROR NO. 53:  I mean, the first --
16          THE COURT:  You raised your hand.
17          PROSPECTIVE JUROR NO. 53:  The first time I raised
18  my hand?
19          THE COURT:  I don't know if it was the first time.
20          MS. ZACK:  No.  The first one was the defendant not
21  testifying.
22          THE COURT:  Let ask you this one first.  Just on the
23  subject area of the case, subject matters, are you so
24  affected by just the subject that it would be difficult for
25  you to be fair and impartial?

1          PROSPECTIVE JUROR NO. 53:  I just believe that a
2   marriage is between a man and a women, not two men.
3          THE COURT:  So your source of concern is just -- and
4   I say "just," I don't mean just.  But you have strong beliefs
5   in the immorality of the lifestyle choice?
6          PROSPECTIVE JUROR NO. 53:  Yes.
7          THE COURT:  Sexual orientation?
8          PROSPECTIVE JUROR NO. 53:  Yes, ma'am.
9          THE COURT:  If it was marriage -- and we are not
10  talking about same sex marriages.
11         PROSPECTIVE JUROR NO. 53:  I understand that.
12         THE COURT:  Is your belief in the moral wrong, a
13  belief that says that being homosexual is morally wrong?
14         PROSPECTIVE JUROR NO. 53:  I didn't hear everything
15  you said.
16         THE COURT:  Is your belief in the moral wrong, a
17  belief that just being homosexual is morally wrong, putting
18  aside same sex marriage?
19         PROSPECTIVE JUROR NO. 53:  I just don't believe in
20  it.
21         THE COURT:  Do you believe that people who follow a
22  homosexual lifestyle are morally flawed in a way that would
23  affect your judgment if you were to be on this jury?
24         PROSPECTIVE JUROR NO. 53:  No, ma'am.
25         THE COURT:  Do you believe that they are more likely

to, that they are -- let me put it this way.  Is your belief
in the religious basis for heterosexuality likely to make you
biased or prejudice against the defendant in this case who is
gay?

PROSPECTIVE JUROR NO. 53:  I wouldn't think so.

THE COURT:  Are you likely to believe that the
defendant is guilty of something?

PROSPECTIVE JUROR NO. 53:  Is what?

THE COURT:  Guilty of doing something criminal
because of his, because he is gay and follows a gay
lifestyle?

PROSPECTIVE JUROR NO. 53:  No.

THE COURT:  Doesn't matter to you?

So is it a fair summary, sir -- I am just
trying to understand where you are coming from.

PROSPECTIVE JUROR NO. 53:  Yes, ma'am.

THE COURT:  Is it a fair summary that you think it
is morally wrong for a woman to marry a woman or a man to
marry a man, but if a man wants to be homosexual and follow
that lifestyle, that doesn't bother you?

PROSPECTIVE JUROR NO. 53:  That's up to them.
That's not what I believe in.

THE COURT:  It's not your personal choice for
yourself --

PROSPECTIVE JUROR NO. 53:  I understand that.

```
 1          THE COURT:  -- but you are not going to hold it
 2   against somebody who makes that choice for himself or
 3   herself?
 4          PROSPECTIVE JUROR NO. 53:  No, ma'am.
 5          THE COURT:  Okay.
 6              Nobody likes the subject matter of sexual
 7   exploitation of children, nobody likes it.
 8          PROSPECTIVE JUROR NO. 53:  Yes, ma'am.
 9          THE COURT:  That's not the test.  The test is
10   whether you can start the case with an open mind not starting
11   out leaning against the defendant.  So that's my first
12   question.  Can you do that?
13          PROSPECTIVE JUROR NO. 53:  Yes, ma'am.
14          THE COURT:  And can you keep that open mind
15   throughout the case and require the government, the
16   prosecution to prove to you beyond a reasonable doubt that
17   the defendant committed the acts that are alleged in the
18   indictment?
19          PROSPECTIVE JUROR NO. 53:  That's hard to answer
20   without knowing --
21          THE COURT:  You haven't heard any evidence.
22          PROSPECTIVE JUROR NO. 53:  Correct.  That's hard to
23   answer the question.
24          THE COURT:  I know.  But it's really not.
25              The question is, let's assume that the
```

1   government produces some evidence of guilt.

2          PROSPECTIVE JUROR NO. 53:  Okay.

3          THE COURT:  But not evidence beyond a reasonable

4   doubt.

5          PROSPECTIVE JUROR NO. 53:  Okay.

6          THE COURT:  And that standard is enough evidence to

7   convince you in making a decision on the most important of

8   your own affairs.  So it would have to be the same amount and

9   strength of proof that you would rely on in deciding who to

10  marry, where to live, what kind of work to get, whether to

11  buy a house.

12         PROSPECTIVE JUROR NO. 53:  Yes, ma'am.

13         THE COURT:  Would you require the government to have

14  that much proof before you said "I'll commit?"

15         PROSPECTIVE JUROR NO. 53:  That's a harder -- that's

16  just something I can't answer right now.

17         THE COURT:  So you just don't know?

18         PROSPECTIVE JUROR NO. 53:  I mean, yeah, I just

19  don't know because there's -- if I don't know -- if I am

20  selected and I hear everything, then I don't know --

21         THE COURT:  Let's assume for the purpose of this

22  discussion that the government produces some evidence of

23  guilt but not beyond a reasonable doubt.

24         PROSPECTIVE JUROR NO. 53:  Okay.

25         THE COURT:  Let's just assume that.  Would you be

1  tempted to convict just because of the nature of the
2  allegations?
3          PROSPECTIVE JUROR NO. 53:  Probably so.
4          THE COURT:  That's what I wanted to know, exactly.
5              Any questions?
6          MR. BUCKLEY:  Nothing from us, Your Honor.
7          MS. ZACK:  No, Your Honor.
8          THE COURT:  Thank you, sir.
9          PROSPECTIVE JUROR NO. 53:  Yes, ma'am.
10         THE COURT:  Just take the seat that you currently
11 occupy.
12             Next, please, No. 54.  You raised your hand in
13 your response to the question of, first of all, if the
14 defendant decided not to testify, you would hold that against
15 him or her?
16         PROSPECTIVE JUROR NO. 54:  Yes.  I think he should
17 testify because he should prove his innocence.
18         THE COURT:  That's requiring the defendant to prove
19 his own innocence.  The Constitution says that's not
20 required.
21         PROSPECTIVE JUROR NO. 54:  But I think it might have
22 been and --
23         THE COURT:  So you couldn't put it aside?
24         PROSPECTIVE JUROR NO. 54:  No.
25         THE COURT:  Any questions?

1    MR. BUCKLEY:  Nothing from us, Your Honor.

2    THE COURT:  Just take the seat the seat you

3 currently occupy.

4    PROSPECTIVE JUROR NO. 54:  Thank you.

5    THE COURT:  Next, please, No. 55.  How are you?

6    PROSPECTIVE JUROR NO. 55:  Good.

7    THE COURT:  You raised your hand in response to a

8 question that you had some connection to a prosecution

9 office.

10    PROSPECTIVE JUROR NO. 55:  Yeah.  My husband was

11 with the district attorney for New York City for seven years.

12    THE COURT:  And was your husband's work in any way

13 connected to the kind of case that we are talking about here?

14    PROSPECTIVE JUROR NO. 55:  No.  It was more drugs.

15    THE COURT:  Is there anything about his work that

16 would affect your judgment if you were to be on this jury?

17    PROSPECTIVE JUROR NO. 55:  No.

18    THE COURT:  Is that the same family members in law

19 enforcement work that you raised your hand on?

20    PROSPECTIVE JUROR NO. 55:  I don't think I raised my

21 hand on that.

22    THE COURT:  Family members in law enforcement?

23    PROSPECTIVE JUROR NO. 55:  No.  It was more the last

24 question.

25    So I would have a commitment in Montgomery

1   Court for court, and I have plane tickets a week from Sunday.

2           THE COURT:  For jury service for Montgomery County?

3           PROSPECTIVE JUROR NO. 55:  Yes.

4           THE COURT:  We can take care of that.  We will

5   notify them that you're here for jury service.

6           PROSPECTIVE JUROR NO. 55:  I'm very popular.

7           THE COURT:  Lightning did strike twice.

8           PROSPECTIVE JUROR NO. 55:  Yes.

9               And I do have plane tickets for out of the

10  country a week from Sunday.

11          MS. ZACK:  No problem.

12          THE COURT:  You will be fine.

13              Any questions?

14          MR. BUCKLEY:  I believe there may have been

15  regarding a personal interest in a criminal case.  Did I get

16  that wrong?

17          PROSPECTIVE JUROR NO. 55:  You got that wrong, yes.

18          MR. BUCKLEY:  Sorry about that.  My mistake.

19          PROSPECTIVE JUROR NO. 55:  I don't have that.

20          THE COURT:  Thank you.

21              Next, please.  No. 57, you raised your hand.

22  You have friends or family members in law enforcement, the

23  prosecution office?

24          PROSPECTIVE JUROR NO. 57:  Yeah.  It was just an

25  uncle, a medical malpractice lawyer.

1    THE COURT:  Is there anything about his work and the
2  fact that he's your uncle that would affect your judgment if
3  you were to be on this panel?
4    PROSPECTIVE JUROR NO. 57:  No, Your Honor.
5    THE COURT:  Was that the only time you raised your
6  hand?
7    PROSPECTIVE JUROR NO. 57:  Yes, ma'am.
8    THE COURT:  Any questions, counsel?
9    MR. BUCKLEY:  Nothing from us, Your Honor.
10   MS. ZACK:  Nothing from the United States.
11   THE COURT:  Thank you, sir.  Please take your seat.
12       Yes, ma'am.  How are you?
13   PROSPECTIVE JUROR NO. 58:  Good.
14   THE COURT:  No. 58.
15       You raised your hand a couple of times.  You
16  had a negative experience with law enforcement.  What was
17  that?
18   PROSPECTIVE JUROR NO. 58:  I've had two instances
19  where on the report they completely lied, once just about one
20  fact, another about the entire incident.
21   THE COURT:  Involving you?
22   PROSPECTIVE JUROR NO. 58:  Yes.  Well, one was
23  someone I was with.  The other with me.  So it's just kind
24  of, you know.
25   THE COURT:  Was this recent?

1              PROSPECTIVE JUROR NO. 58:  Three years ago and eight
2    years ago.
3              THE COURT:  Were these federal or state law
4    enforcement?
5              PROSPECTIVE JUROR NO. 58:  Not federal, for sure.
6    It was state people.
7              THE COURT:  Did it have anything to do with anything
8    that looks like the issues in this case?
9              PROSPECTIVE JUROR NO. 58:  No, no.
10             THE COURT:  Would that in any way affect your
11   judgment if you were to be on this jury?
12             PROSPECTIVE JUROR NO. 58:  No.
13             THE COURT:  You understand that all law enforcement
14   officers are people?
15             PROSPECTIVE JUROR NO. 58:  Exactly.
16             THE COURT:  And there are some really good ones and
17   some really bad ones and all points in between.  You
18   understand that?
19             PROSPECTIVE JUROR NO. 58:  I do.
20             THE COURT:  And would you be able to make an
21   individual assessment of the credibility and reliability of
22   each one after they testify and you've heard all of the
23   evidence?
24             PROSPECTIVE JUROR NO. 58:  Yes.
25             THE COURT:  And not in thinking, well, you're a law

1  enforcement guy.  I don't believe a word you said, or I
2  believe everything you say?
3          PROSPECTIVE JUROR NO. 58:  Right.
4          THE COURT:  Could you make that kind of individual
5  credibility assessment after they testify?
6          PROSPECTIVE JUROR NO. 58:  I could.
7          THE COURT:  All right.  And you would?
8          PROSPECTIVE JUROR NO. 58:  I would.
9          THE COURT:  All right.
10          You also indicated that you would have
11  difficulty if the defendant chose not to testify?
12          PROSPECTIVE JUROR NO. 58:  Correct.
13          THE COURT:  If I instructed you that our law, it's
14  in the Constitution if a defendant chooses not to testify,
15  you may not consider that fact in deciding guilt, you must
16  disregard it entirely, you cannot hold it against the
17  defendant, could you, would you follow that instruction?
18          I just need an honest answer.
19          PROSPECTIVE JUROR NO. 58:  Yeah.  I mean, I guess it
20  would depend, if I can be honest, so --
21          THE COURT:  Depend on?  It can't depend.  You have
22  to be able to say "I'll look at all the evidence."
23          PROSPECTIVE JUROR NO. 58:  I would definitely do
24  that.
25          THE COURT:  And I'll apply the Court's instructions.

 1  And if that instruction includes -- and it will -- if the
 2  defendant chooses not to testify, you cannot hold that
 3  against the defendant.  You cannot consider it.  Would you
 4  follow that?
 5          PROSPECTIVE JUROR NO. 58:  I would.
 6          THE COURT:  Even if it was your preference --
 7          PROSPECTIVE JUROR NO. 58:  It wouldn't be easy, but
 8  I would.
 9          THE COURT:  That's okay.
10          PROSPECTIVE JUROR NO. 58:  Yeah.
11          THE COURT:  This is not an easy process.
12          PROSPECTIVE JUROR NO. 58:  No.
13          THE COURT:  Would you make that commitment?
14          PROSPECTIVE JUROR NO. 58:  I would.
15          THE COURT:  Let's assume that the government
16  produced and presented some evidence of the defendant's
17  guilt, and let's assume he didn't testify; but the
18  government's burden is to produce evidence beyond a
19  reasonable doubt.  And the standard is evidence of the sort
20  and amount that would convince you in making a decision in
21  the most important of your own affairs.
22              When you get married.
23          PROSPECTIVE JUROR NO. 58:  I'm sorry?
24          THE COURT:  Who to get married to.
25          PROSPECTIVE JUROR NO. 58:  Right.

1        THE COURT:  I'm not going to marry this guy.  Am I
2   going to take this job?  Am I going to buy this house?  The
3   most important of your own affairs.
4            So the government -- so you got the
5   hypothetical, it's only a hypothetical.  The government's
6   produced some evidence of guilt and the defendant chooses not
7   to testify, and I instruct you that you cannot return a
8   verdict of guilty unless all of you find that the government
9   has proven guilt beyond a reasonable doubt, and you cannot
10  consider the defendant's decision to remain silent.  Would
11  you --
12       PROSPECTIVE JUROR NO. 58:  Yes.
13       THE COURT:  -- apply that standard?
14       PROSPECTIVE JUROR NO. 58:  I would.
15       THE COURT:  You would not be tempted to reduce that
16  burden because are you really would like to hear the
17  defendant testify?
18       PROSPECTIVE JUROR NO. 58:  No.
19       THE COURT:  All right.
20            Questions?
21       MR. BUCKLEY:  There was another issue, Your Honor,
22  fair and impartial regarding the subject matter.
23       THE COURT:  I think we just talked about that.
24            It does involve children.  Nobody likes that.
25       PROSPECTIVE JUROR NO. 58:  Right, yeah.

1          THE COURT:  Nobody likes sexual exploitation.  But

2   the standard, the burden on the government doesn't change

3   because these are the allegations.  Can you apply them the

4   same, with the same rigor regardless of the subject matter?

5          PROSPECTIVE JUROR NO. 58:  Yeah.

6          MR. BUCKLEY:  Briefly, Your Honor.

7              Good afternoon, ma'am.  Regarding the

8   discussion about following the Court's instructions, if you

9   heard evidence in this case that caused you to feel that

10  following the Court's instructions would make you angry and

11  feel that an injustice was being done, can you commit here

12  and now to still follow those instructions even if it

13  produces that result in your view?

14         PROSPECTIVE JUROR NO. 58:  I could.

15         MR. BUCKLEY:  Okay.  Thank you, ma'am.

16         THE COURT:  Any questions?

17         MS. ZACK:  Nothing.

18         THE COURT:  Thank you.

19             Take the seat you occupied.

20             Next, please.  Come on up No. 59.  How are you?

21         PROSPECTIVE JUROR NO. 59:  Good.  How are you?

22         THE COURT:  Let me find where you raised your hand.

23  Do you have some connection to criminal law work?

24         PROSPECTIVE JUROR NO. 59:  Yeah.  My cousin's

25  husband is a sheriff or was a sheriff for L.A. County.

1            THE COURT:  Is there anything about -- did your
2    cousin share with you many of the details of his work?
3            PROSPECTIVE JUROR NO. 59:  No.  He never spoke about
4    his job.
5            THE COURT:  Is there anything about his work and the
6    fact he is your cousin that would raise a concern about your
7    ability to be fair and impartial?
8            PROSPECTIVE JUROR NO. 59:  No.
9            THE COURT:  I think those are the only times you
10   raised your hand.
11           PROSPECTIVE JUROR NO. 59:  I think I raised my hand
12   also in connection to if I was ever a part of the agency that
13   had prosecution or law enforcement.  I used to work for the
14   TNRCC.
15           THE COURT:  Which one?
16           PROSPECTIVE JUROR NO. 59:  TNRCC, the predecessor to
17   the TCQ.
18           THE COURT:  Yes, sir.
19           PROSPECTIVE JUROR NO. 59:  And they had a section
20   there for criminal investigation that sometimes I was an
21   investigator, but just, you know, right with our
22   environmental entity.  Sometimes they used our investigations
23   to prosecute.
24           THE COURT:  Is there anything about that work that
25   would affect your judgment if you were to be on this jury?

1      PROSPECTIVE JUROR NO. 59:  No.
2      THE COURT:  Any other questions?
3      MR. BUCKLEY:  Nothing from us, Your Honor.
4      MS. ZACK:  Nothing.
5      THE COURT:  Thank you, sir.  Just take the seat you
6  occupy.
7           Next, please.  No. 62, how are you, sir?
8      PROSPECTIVE JUROR NO. 62:  I'm good.
9      THE COURT:  You are toward the end of the alphabet,
10  so thanks for being patient.
11           You raised your hand in response to a question
12  about significant hardship.
13      PROSPECTIVE JUROR NO. 62:  Yes.
14      THE COURT:  What was that?
15      PROSPECTIVE JUROR NO. 62:  Next Tuesday I am leaving
16  on a family vacation.
17      THE COURT:  What time Tuesday?
18      PROSPECTIVE JUROR NO. 62:  10:00 a.m., I believe
19  that's when my flight is.
20      THE COURT:  And is this all prepaid?
21      PROSPECTIVE JUROR NO. 62:  Yes.
22      THE COURT:  Okay.
23           Could you rearrange your flight and arrive the
24  next day if you had to?
25      PROSPECTIVE JUROR NO. 62:  No.  My whole family is

1  going at the same time.

2         THE COURT:  Thank you for letting us know, sir.

3               Any questions, counsel?

4         MR. BUCKLEY:  Nothing from us.

5         MS. ZACK:  No.

6         THE COURT:  Thank you, sir.

7               Next.

8         PROSPECTIVE JUROR NO. 64:  Hello.

9         THE COURT:  Hello.  No. 64, thank you for coming up.

10  You raised your hand in response to a question about having

11  difficulty being fair given the subject matter.

12         PROSPECTIVE JUROR NO. 64:  Yes.  I was a victim of

13  sexual abuse when I was 10 and 11 years old, and that played

14  a very huge role in my life.  And as soon as I heard the

15  allegation --

16         THE COURT:  Could you be fair in this case?

17         PROSPECTIVE JUROR NO. 64:  Yes.  That's my concern.

18  It's something that I had to bring up.  I'm still shaking

19  inside, but I had to be honest.  It has played a major role

20  in my life.

21         THE COURT:  And I appreciate your honesty.

22               Given the subject matter, are you the right

23  juror for this case?

24         PROSPECTIVE JUROR NO. 64:  I don't think so.

25         THE COURT:  All right.

1          Questions?

2          MS. ZACK:  No, Your Honor.

3          MR. BUCKLEY:  No, Your Honor.

4          THE COURT:  Thank you.  Just take the seat you

5     currently have.

6               And last, with this part anyway, No. 65.

7          PROSPECTIVE JUROR NO. 65:  Hi.

8          THE COURT:  Sorry to keep you waiting.

9          PROSPECTIVE JUROR NO. 65:  No.  That's okay.

10         THE COURT:  And you raised your hand in response to

11    a question about --

12         PROSPECTIVE JUROR NO. 65:  Being affected by a

13    felony.  My brother, when he was 23, was asked to carry a

14    package back, and it turned out it was drugs.  He went to

15    jail for federal court for a year, I think.  He has been

16    fine.  He has been an outstanding citizen ever since.

17         THE COURT:  Did you believe he was treated fairly or

18    unfairly?

19         PROSPECTIVE JUROR NO. 65:  I wasn't at the court, so

20    I don't know.

21         THE COURT:  So you don't know?

22         PROSPECTIVE JUROR NO. 65:  No.

23         THE COURT:  Is there anything about what you

24    described that would affect your judgment if you were to be

25    on this jury?

1        PROSPECTIVE JUROR NO. 65:  I don't think so.  It was

2 a long time ago.

3        THE COURT:  And a very different set of

4 circumstances.

5        PROSPECTIVE JUROR NO. 65:  Right.

6        THE COURT:  Go ahead.

7        PROSPECTIVE JUROR NO. 65:  I'm sorry.  I raised my

8 hand for another reason.

9        THE COURT:  What was the other one?

10        PROSPECTIVE JUROR NO. 65:  I am a doctor at MD

11 Anderson, and I blocked all my patients out for this week so

12 I could do this.  If it runs until Monday into Wednesday, I

13 have 65 patients whose lives would be changed.

14        THE COURT:  Let's not overstate.  Doctors take calls

15 for each other all the time.  Doctors get sick.

16        PROSPECTIVE JUROR NO. 65:  The doctor who would

17 cover for me has her own clinic on Monday, so it would be

18 very difficult.

19        THE COURT:  Is there another doctor?

20        PROSPECTIVE JUROR NO. 65:  I do T-cell Lymphoma of

21 the skin, and it's a little --

22        THE COURT:  I understand there is lots of

23 specialized --

24        PROSPECTIVE JUROR NO. 65:  I want to do this.  I

25 want to help with the trial.

```
 1           THE COURT:  Would you be able to get coverage?  MD
 2   Anderson I know well.
 3           PROSPECTIVE JUROR NO. 65:  On Monday, no, on Monday,
 4   no.
 5           THE COURT:  You're confident of that, because I'm
 6   not.  I believe that doctors cover for each other.
 7           PROSPECTIVE JUROR NO. 65:  They'd have to cancel all
 8   the appointments.
 9           THE COURT:  They'd have to reschedule.
10           PROSPECTIVE JUROR NO. 65:  Reschedule, right.
11           THE COURT:  Could that be done, because people get
12   sick?
13           PROSPECTIVE JUROR NO. 65:  You know, it's a
14   hardship.  Some people are flying in from out of the country.
15           THE COURT:  They'd have to be notified today.
16           PROSPECTIVE JUROR NO. 65:  Yeah.
17           THE COURT:  And you could do that and reschedule
18   them?
19           PROSPECTIVE JUROR NO. 65:  I couldn't.
20           THE COURT:  Somebody could.
21           PROSPECTIVE JUROR NO. 65:  My scheduler's on
22   vacation.
23           THE COURT:  Do you have somebody else who is taking
24   over for scheduling in her absence?
25           PROSPECTIVE JUROR NO. 65:  It would be a hardship
```

1  for the patients.  For me it's no problem.

2          THE COURT:  I understand that, and I appreciate your

3  concern for your patients; but you understand we can't have

4  people who do specialized work, exempt them from jury

5  service?

6          PROSPECTIVE JUROR NO. 65:  I know.  I understand

7  that.

8          THE COURT:  And we appreciate that understanding.

9              It is not easy for anybody, and we appreciate

10 the impact on others.

11         PROSPECTIVE JUROR NO. 65:  It would be quite a bit.

12 Some of them are getting chemotherapy --

13         THE COURT:  I appreciate that.

14         PROSPECTIVE JUROR NO. 65:  -- and specialized

15 treatment.

16         THE COURT:  Thank you for letting us know.

17         PROSPECTIVE JUROR NO. 65:  Hopefully the trial will

18 be over, but --

19         THE COURT:  We will do our best to be efficient, but

20 we must be thorough.

21         PROSPECTIVE JUROR NO. 65:  Yes.

22         THE COURT:  Okay.  Thank you, doctor.

23         PROSPECTIVE JUROR NO. 65:  You are welcome.  Is that

24 it?

25         THE COURT:  Yes, as far as I know.

1          Any other questions that the lawyers wish me to
2    ask of the panel as a whole or other individuals on the
3    panel?
4          There is the one juror who was called out as
5    saying he had a particular bias or animus towards --
6          MS. ZACK:  You talked to him here.
7          THE COURT:  We talked to No. 34.  I think we need to
8    talk to No. 34, and we've dealt with that.
9          Any other questions that you want me to ask
10   other than the catch-all question?
11         MS. ZACK:  Do you have any concerns about --
12         THE COURT:  Oh, no, no.  We will take up -- his
13   concerns that were reflected?
14         MS. ZACK:  Yes.
15              31.
16         THE COURT:  Did we talk to 31?
17         MS. ZACK:  We did.
18         THE COURT:  Then why do we need to talk to him
19   again?
20         MS. ZACK:  I am concerned because I didn't see the
21   note that I have here.  He indicated that he is bipolar and
22   ADD.  And I don't know if he will be able to --
23         THE COURT:  I will have him up.
24              Anybody else?
25         MR. BUCKLEY:  No, Your Honor.

1          THE COURT:  Okay.

2          MS. ZACK:  And I apologize.

3          THE COURT:  May I see No. 31, please, 31.  Juror 31,

4    come on up, please, sir.  We have one more question to ask of

5    you.

6          MS. ZACK:  No, Judge.  I'm sorry.  46.

7          THE COURT:  I'm sorry.  46.

8               31, have a seat.

9               46.

10         MS. ZACK:  Sorry, Your Honor.

11         THE COURT:  Sorry to bring you back, sir.

12         PROSPECTIVE JUROR NO. 46:  That's quite all right.

13         THE COURT:  We don't mean to pry, but we need to

14   know this.

15         PROSPECTIVE JUROR NO. 46:  Sure.

16         THE COURT:  You noted on your form that you were

17   bipolar and had some form of ADD.  Are you taking medication?

18         PROSPECTIVE JUROR NO. 46:  Yes, I am.

19         THE COURT:  Does that medication control your

20   symptoms?

21         PROSPECTIVE JUROR NO. 46:  Yes.

22         THE COURT:  Does the medication have any side

23   effects, whether they are sedating or -- I just don't know

24   what you are taking.

25         PROSPECTIVE JUROR NO. 46:  Okay.

1          THE COURT:  Does it have side effects that would

2     impact your ability to hear and absorb information and

3     process it and make decisions?

4          PROSPECTIVE JUROR NO. 46:  No.  I will be able -- my

5     mentality, I can function fine.  I can listen and comprehend.

6     The worst I get is just to make sure my electrolytes are in

7     balance because of one of the medications.

8          THE COURT:  And I make, for people who are, for

9     example, diabetic, bring a snack if you need to.

10          PROSPECTIVE JUROR NO. 46:  Okay.

11          THE COURT:  Bring a drink with electrolytes.  If you

12     drink sports drinks or electrolyte drinks in order to

13     maintain balance, bring it on in.

14          PROSPECTIVE JUROR NO. 46:  Yes, ma'am.

15          THE COURT:  Does that help you?

16          PROSPECTIVE JUROR NO. 46:  Yes.  Thank you.

17          THE COURT:  Any questions?

18          MS. ZACK:  No, Your Honor.

19          PROSPECTIVE JUROR NO. 46:  Thank you very much.

20          THE COURT:  Thank you.

21          I will ask the catch-all question, also now do

22     the strikes, excuse people for hardship, then we can do

23     your -- after we do challenges for cause you can do your

24     peremptories and we will figure out how big the panel is and

25     how many you get on both sides.

1                        (In open court)

2          THE COURT:  Ladies and gentlemen, Chapter 3 of this

3    process.  Thank you for your patience as we worked through

4    Chapter 1 and 2.  The good news for you is Chapter 3 is the

5    last chapter of this part of the book.

6                    You have now all had some time to think.  I am

7    going to ask you what, for reasons that will immediately

8    become apparent, we call the catch-all question.

9                    Is there anything that you have not yet shared

10   with us of any concern that you have about your ability to be

11   fair and impartial if you are selected to serve on this jury?

12   If you have already shared it with us, you don't need to do

13   it again.

14                   Anything that has come to your mind since you

15   were up here, or if you didn't come up here, since you have

16   been sitting here.  I see one hand, two hands.  Come on up

17   one at a time.

18                   Anybody else?

19                       (No response )

20         THE COURT:  The rest of you, please go outside, wait

21   in the hallway.  We will be as fast in picking the jury as

22   possible.  Don't go anywhere, because if we do need to talk

23   to any of you more, the entire process is going to grind to a

24   halt while we find you and bring you in.  So just hang in the

25   hallway.  We'll try to make it fast.

1            Yes, sir.

2            PROSPECTIVE JUROR NO. 46:  My father, he was for a

3    time an attorney for the Potter County courts in defense.

4            THE COURT:  Is there anything about his work or his

5    relationship to you that would affect your judgment if you

6    were picked for this jury?

7            PROSPECTIVE JUROR NO. 46:  No.  I just wanted to be

8    clear and honest in my relationship.

9            THE COURT:  Thank you.  You, too, can wait outside.

10           PROSPECTIVE JUROR NO. 46:  Yes, ma'am.  Thank you.

11           THE COURT:  Yes, sir.  No. 28.

12           PROSPECTIVE JUROR NO. 28:  I haven't mentioned, I

13   have a planned vacation for Saturday.  I won't be here next

14   week.

15           THE COURT:  Yes, you will if you are on this jury.

16               Would you be able to reschedule your vacation?

17           PROSPECTIVE JUROR NO. 28:  No, ma'am.  It's like a

18   family --

19           THE COURT:  Can you postpone it two days, or is it

20   all prepaid?

21           PROSPECTIVE JUROR NO. 28:  It's all prepaid.

22           THE COURT:  Thank you for letting us know.

23               Are the only people in the courtroom now

24   interns?

25           MS. ZACK:  Those are ours.

1       THE COURT:  Do the parties invoke the rule?

2       MR. BUCKLEY:  Yes, Your Honor.

3       MS. ZACK:  Yes.

4       THE COURT:  Parties and the lawyers must instruct

5  all their clients and witnesses on the effect of the rule.

6       MS. ZACK:  We will have to make a call.  The two

7  British officers are upstairs hanging out.  We explained what

8  the rule is.

9       THE COURT:  You will have that chance.  Let's get

10  this part done.

11          All right.  Can we agree on any of the

12  challenges for cause or hardship excuses?

13       MR. BUCKLEY:  No. 1.

14       THE COURT:  Only if you are challenging him for

15  cause, striking him.  Why don't you get back at counsel table

16  and we can do it on the record.

17                  (In open court)

18       THE COURT:  No. 1, any disagreement about

19  challenging this one for cause, striking him for cause?

20       MS. ZACK:  No, Your Honor.

21       THE COURT:  All right.  I agree.  No. 1 is stricken.

22          Next.

23       MR. BUCKLEY:  There was a question of eligibility on

24  No. 4, Your Honor.

25       THE COURT:  Yes.  The question was felony conviction

1    for welfare fraud some years ago.

2              Any objection to excusing her given that doubt?

3         MR. BUCKLEY:  No objection.

4         MS. ZACK:  No objection.

5         THE COURT:  She, too, is gone.

6         CASE MANAGER:  4?

7         THE COURT:  That's 4, yes.

8              Next.

9         MR. BUCKLEY:  Move to challenge 10, Your Honor.

10        THE COURT:  Any objection?

11        MS. ZACK:  No, Your Honor.

12        THE COURT:  All right.  I agree, removed.

13             Next.

14        MR. BUCKLEY:  Move to challenge 11.

15        THE COURT:  This is the one who --

16        MS. ZACK:  No objection.

17        THE COURT:  Yes.  I agree.  Stricken.

18             Next.

19        MR. BUCKLEY:  As to No. 14, no objection as to

20   hardship.

21        THE COURT:  Any disagreement, Ms. Zack?  He's got

22   vacation.

23        MS. ZACK:  No, Your Honor.

24        THE COURT:  That he sort of forgot about until the

25   very end.

1          MR. BUCKLEY:  Move to challenge No. 16.

2          THE COURT:  Any objection?

3          MS. ZACK:  No objection, Your Honor.

4          CASE MANAGER:  16?

5          THE COURT:  16, 1-6.

6          MR. BUCKLEY:  Move to challenge No. 27.

7          THE COURT:  Any objection?

8          MS. ZACK:  No objection, Your Honor.

9          THE COURT:  I agree.

10              Next.

11          MR. BUCKLEY:  We have no objection to excusing 28.

12          THE COURT:  Any objection?  Family vacation.

13          MS. ZACK:  No objection, Your Honor.

14          THE COURT:  I agree.

15              Next.

16          MR. BUCKLEY:  Move to challenge 34 for cause.

17          THE COURT:  Any objection?

18          MS. ZACK:  No objection.

19          THE COURT:  I agree.  We're on a roll.

20              Any other through 46?

21          MR. BUCKLEY:  No objection to excising 41 on

22      hardship.

23          THE COURT:  I don't remember --

24          MS. ZACK:  No objection.

25          THE COURT:  That's fine.

1             Next.

2             MR. BUCKLEY:  Pardon me, Your Honor.  I know we

3    passed this, but move to challenge No. 19.

4             MS. ZACK:  We would object, Your Honor.

5             THE COURT:  We will come back to No. 19.

6             Next.

7             MR. BUCKLEY:  Move to challenge No. 47.

8             THE COURT:  Any objection?

9             MS. ZACK:  No objection.

10            THE COURT:  I agree.

11            MR. BUCKLEY:  Move to challenge No. 48.

12            THE COURT:  Any objection?

13            MS. ZACK:  No objection.

14            THE COURT:  I agree.

15            Next.

16            MR. BUCKLEY:  Move to challenge No. 50.

17            THE COURT:  Any objection?

18            MS. ZACK:  No objection.

19            THE COURT:  Next.

20            MR. BUCKLEY:  Move to challenge No. 52.

21            THE COURT:  Any objection?

22            MS. ZACK:  No objection.

23            THE COURT:  I agree.

24            Next.

25            MR. BUCKLEY:  Move to challenge No. 53.

1            MS. ZACK:  No objection.

2            THE COURT:  I agree.

3                   Next.

4            MR. BUCKLEY:  Move to challenge No. 54.

5            THE COURT:  Any objection?

6            MS. ZACK:  No objection.

7            THE COURT:  I agree.

8                   Next.

9            MR. BUCKLEY:  We have no objection to excusing 62 on

10   hardship.

11            THE COURT:  Any objection?

12            MS. ZACK:  No objection.

13            THE COURT:  I agree.

14            MR. BUCKLEY:  Move to challenge No. 64.

15            THE COURT:  Any objection?

16            MS. ZACK:  No objection.

17            MR. BUCKLEY:  I believe the government said no

18   objection.

19            MS. ZACK:  No objection.  I'm sorry, Your Honor.

20            THE COURT:  All right.  Thank you.  I agree.

21                   So the only one that has moved on the part of

22   the defendants to challenge for cause that the government has

23   not agreed to is No. --

24            MS. ZACK:  19.

25            THE COURT:  -- 19, correct.

1          MR. BUCKLEY:  And I would also note, Your Honor, as
2     to 65.

3          THE COURT:  Let's stay with 19 for a moment.

4               What's your basis, and then I will hear the
5     response.

6          MR. BUCKLEY:  Our recollection on this juror, Your
7     Honor, is that she had kids of her own.  She stated she had
8     kids of her own and she was subject to being emotional.  She
9     thinks she can be fair.  She's a scientist.  But I believe
10    she indicated that if she was the defendant she would not
11    want herself on the jury.  That's our recollection.

12         THE COURT:  Response.

13         MS. ZACK:  Your Honor, we have no recollection that
14    she said she would not want to be on the jury.  I believe
15    that when asked if she could be fair and impartial, she very
16    much told this Court she could be fair and impartial; and I
17    don't believe that was how she answered that question about
18    being on the jury.

19         THE COURT:  She credibly said -- this is a
20    professor.  She's a scientist, self-described, and she is.
21    By credentials, she's a professor at Rice.  She has a Ph.D.
22    in biology and evolution.  She is a disciplined thinker.  She
23    described herself as such or agreed with that
24    characterization.

25               She credibly said she would be fair, would be

```
 1  fair, not could be but would be.  She understood how
 2  important it was, and she would do it.
 3              So I think that at the end of the day she
 4  credibly said that she would be a fair and impartial juror,
 5  and I am not going to strike her for cause.
 6              MR. BUCKLEY:  Yes, Your Honor.
 7              THE COURT:  So that's overruled.
 8              Anybody else on behalf of the defense?
 9              MR. BUCKLEY:  Well, the only one is No. 65.  We do
10  not object to --
11              THE COURT:  Okay.  Go ahead.
12              MR. BUCKLEY:  65 is a physician at MD Anderson, and
13  we do not object.
14              THE COURT:  On substantial hardship.  She's the
15  doctor who said it was going to hurt her patients.  And I
16  don't mean to minimize her concern at all.
17              MS. ZACK:  No.  I don't think we are going to get
18  there.
19              THE COURT:  Can we excuse her for hardship so that
20  she is not having to be subject to other jury calls as well
21  next week?
22              MS. ZACK:  Yes.
23              THE COURT:  All right.  Very good.
24              Are there any challenges for cause on the part
25  of the government that have not been already covered?
```

1        MS. ZACK:  No, Your Honor.

2        THE COURT:  Great.

3             Lisa, how far are we going to get if we pick

4   14?  And just to be clear, the ones who were gone are 1, 4,

5   10, 11, 14, 16, 27, 28, 35 -- 34, I'm sorry.  Bad x'ing.

6   34 -- 35 is fine -- 40, 41 --

7        MS. ZACK:  No one struck 40.

8        THE COURT:  I thought we struck 41, too?

9        MS. ZACK:  We struck 41.

10       THE COURT:  We struck 41, not 40.  Again, I marked

11  through it and then marked through it.  That's why I am doing

12  this.

13            47, 48, 50, 52, 53, 54, 62, 64 and 65.

14       MS. ZACK:  Yes, Your Honor.

15       MR. BUCKLEY:  Yes, Your Honor.

16       THE COURT:  All right.  Got that, Lisa?

17       MS. ZACK:  Your Honor, we were just informed that

18  there is a juror in the hallway on the phone discussing which

19  jurors are going to be picked.

20       THE COURT:  Okay.  Bring that juror in here, that

21  panel member.  Let's make sure they're not already stricken

22  before we go on.

23       MS. ZACK:  No. 26.

24       THE COURT:  26, he's not.  Bring him in.  Thank you.

25            No. 26.

1          PROSPECTIVE JUROR NO. 26:  Yes, ma'am.

2          THE COURT:  We have heard a report that you were

3    speculating to somebody on the phone about which jurors would

4    be picked.  Is that correct?

5          PROSPECTIVE JUROR NO. 26:  No.  I said I don't know,

6    I have not been picked; but we're at the end of the voir

7    dire.

8          THE COURT:  And have you discussed with anybody or

9    allowed them to discuss with you anything about the case?

10          PROSPECTIVE JUROR NO. 26:  No, ma'am.

11          THE COURT:  That's what we needed to know.  I just

12    needed to be sure.  Thank you.

13              Any questions, counsel?

14          MR. BUCKLEY:  No, Your Honor.

15          MS. ZACK:  No, Your Honor.

16          THE COURT:  Thank you, sir.  Apologize for bringing

17    you in.

18          PROSPECTIVE JUROR NO. 26:  That's fine.

19          THE COURT:  I just needed to be careful.  We are

20    just being careful.

21          CASE MANAGER:  So to go with the standard 10 and 6,

22    we would go to No. 39.

23          THE COURT:  How many jurors are left, how many panel

24    members?

25              Yes, sir?

1            MR. BUCKLEY:  I didn't want to interrupt Your

2   Honor's inquiry, but I was wondering if there would be a --

3            THE COURT:  If there would be what?

4            MR. BUCKLEY:  An alternate.

5            THE COURT:  Oh, we are going to have 14 jurors.  We

6   are picking 14.

7            MR. BUCKLEY:  Understood, Your Honor.

8            MS. ZACK:  We are up through 39?

9            THE COURT:  Right.

10           CASE MANAGER:  Then we start getting into other

11  numbers.  There's a bunch stricken shortly after that, 16

12  that are un-struck past 39.

13           THE COURT:  I'm sorry?

14           CASE MANAGER:  There is 16 that are not struck that

15  are past No. 39.

16           THE COURT:  So if we wanted to give extra strikes

17  and keep the proportion the same, 10 and 6, how far would we

18  go, two extra strikes?

19           CASE MANAGER:  That would be 12 and 8.

20           THE COURT:  12 and 8.  Does that work?

21           MR. BUCKLEY:  Fine with us, Your Honor.

22           THE COURT:  All right.

23           CASE MANAGER:  To No. 44.

24           THE COURT:  All right.

25           MR. BUCKLEY:  The additional strikes can be used

1 within a certain zone, Your Honor?

2       THE COURT:  Unless there is an objection.

3       MR. BUCKLEY:  Not from us.

4       THE COURT:  All right.  Very good.

5         Okay.  How long do you want?

6       MR. BUCKLEY:  To complete our strikes, Your Honor, I

7 believe we can be done in 10 minutes.

8       THE COURT:  Good.

9         Do you have your room?

10       MR. BUCKLEY:  We won't mind more time, but I'm

11 trying to be honest.

12       THE COURT:  I assume you always are, Mr. Buckley.

13       CASE MANAGER:  He doesn't have a room yet.

14       THE COURT:  I know he doesn't, but the government

15 needs to leave and the interns need to leave, unless you want

16 to use our jury room.  Why don't you go to the jury room and

17 the government can stay here.

18       MR. BUCKLEY:  We have a room to the side, Your

19 Honor, also.

20       CASE MANAGER:  I haven't given you the key.  We

21 still have a jury out there, so I prefer not.

22       THE COURT:  I will check back in 10 minutes.  Be

23 ready then.  I want Mr. Gandy be able to participate if he

24 wants to, if you want him to and he wants to.

25       MR. BUCKLEY:  He does, Your Honor.

 1          THE COURT:  Do you need a break before we bring the
 2   jury back in?
 3          CASE MANAGER:  There's a bathroom in the jury room.
 4          MR. BUCKLEY:  I don't believe he does.
 5          THE COURT:  Let's have the Marshals escort him in
 6   until he is finished in the bathroom, and then you all can
 7   meet with him, and the Marshals will be right outside the
 8   jury room.  Does that work?
 9          MR. BUCKLEY:  Yes, Your Honor.
10          THE COURT:  Thank you, sir.  Appreciate it.
11                    (Recess taken)
12          THE COURT:  Ms. Eddins, have you shared with the
13   lawyers the jurors who have been selected to serve on this
14   case?
15          CASE MANAGER:  I have.
16          THE COURT:  Are there any objections?
17          MR. BUCKLEY:  No objections.
18          MS. ZACK:  No, Your Honor.
19          THE COURT:  Bring the panel in, please.
20          What I propose to do is go through the -- seat
21   the jury, give them instructions and preliminary
22   instructions.  I don't know how long that's going to take,
23   but you asked for about 20, 25 minutes.  We should get
24   through opening today, okay, so you need to be ready.
25          MR. BUCKLEY:  And for the Court's information, mine

 1  may be substantially shorter than that.

 2          THE COURT:  Are you going to open at this point?

 3          MR. BUCKLEY:  I will open prior to the state putting

 4  on their case, if that was the Court's question.

 5          THE COURT:  That's my question.

 6              Bring in the jurors.

 7              (Jury panel enters courtroom)

 8          THE COURT:  You may be seated as soon as you are in

 9  your place.  Please be seated, ladies and gentlemen.

10              It took a while, but I finally figured out the

11  right way to ask the question, not is there anybody who is

12  not back; but are the same people who were sitting next to

13  you before we broke for this phase still sitting next to you?

14  No empty places, right?

15              Okay.  I am going to call out the numbers of

16  the people who have been selected to serve on this jury.  As

17  you hear your name called, please go up to the jury box and

18  be seated as indicated and directed by Ms. Eddins.

19              No. 2, No. 5, 9, 15, 18, 20, 22, 23, 24, 26,

20  29, 30, 31, 36.

21              Ladies and gentlemen, those of you whose number

22  were not called, thank you.  Wait, wait.  We couldn't have

23  done this without you.  Your time here was well spent, and we

24  are deeply appreciative.

25              You are released for the day, but keep

checking.  You may be called for another panel, and you must
check, as previously instructed, in order to keep up with the
messages.  With that, you need not check out with anyone;
safe travels home, and thank you again.

Those of you who are going to serve as our jury
in this case, please remain standing, raise your hand to take
the oath that will enable you to serve as jurors.

Ms. Eddins, please administer the oath.

CASE MANAGER:  Do you solemnly swear or affirm that
in the case of the United States versus Jason Gandy, the
defendant, you will a true verdict render according to the
law and the evidence?

JURORS:  "I do."

THE COURT:  Ladies and gentlemen, please be seated.

I am now going to give you preliminary
instructions that will govern your conduct as jurors in this
case.  We will then directly go, depending on the time, to
opening statements by the attorneys and then you will be
excused for the day.  You will have to return tomorrow and
every day that we are in court no later than 9:00 o'clock.
You have to be here by 9:00.

When you come back, before you leave today you
are going to get these paper badges swapped out for more
durable plastic badges.  You will get shown to the jury room,
which will be your home away from home.

1             When you arrive in the morning and you are
2    waiting for the rest of the jury to assemble, do not talk
3    about the case at all with each other, and I am going to
4    amplify that on my instruction.  We will have breakfast for
5    you, and it will be muffins or bagels or breakfast tacos,
6    something like that, maybe some fruit, and we will also have
7    snacks in the jury room, granola bars, trail mix, gold fish,
8    things like that that you may help yourself to during the
9    day.  We want you well fed and energetic.  You may bring
10   drinks with you into the jury room as long as they're not
11   obtrusive and they don't destruct.  We have a full
12   refrigerator and a microwave and coffee maker in the jury
13   room.  We will have coffee ready when you come.
14            If you want to bring lunch from home, I would
15   recommend that highly.  It's much more efficient; it helps
16   things go faster.  We have a refrigerator.  You can store
17   whatever.  We have got a place to microwave; it's yours to
18   re-heat.  So we try to be accommodating and make this as easy
19   for you as possible, and we need you to be here on time
20   because we can't start until every single one of you is here.
21   So if one of you is late, look around you and do the same
22   math, it's that many hours that we're taking, so do your
23   best.
24            If at any time you can't see or hear, raise
25   your hand, pull on your ear.  If I don't see you, someone

 1  will bring it to my attention promptly.

 2          Members of the jury, now that you have been
 3  sworn I will give you some instructions to guide you in your
 4  participation in the trial.  It is your duty to find from the
 5  evidence what the facts are.  You, the jurors, and you alone
 6  are the judges of the facts.  You will have to apply to those
 7  facts the law that I, as the Court, the Judge presiding, will
 8  give to you.  I will give you individual written copies of
 9  the instructions on the law and I will give you aloud, to you
10  orally, and you will have these copies to take with you into
11  the jury room to use during your deliberations.

12          You must follow the law that I instruct you
13  applies whether you are agree with it or not.  Nothing that I
14  may say or do during the course of the trial is intended to
15  indicate or should be taken by you as indicating in any way
16  what your verdict should be.

17          The evidence from which you will find the facts
18  will consist of the testimony of witnesses, documents and
19  other items received into the record as exhibits and evidence
20  and any facts that the lawyers may agree to or that the Court
21  may instruct you to find.

22          But there are certain things that are not
23  evidence and must not be considered as evidence by you, and I
24  am going to list those things for you now.

25          One, statements, arguments and questions by the

1  lawyers are not evidence.

2         Two, objections that one or the other side may
3  make to a question is not evidence.  An objection is not
4  evidence.  Lawyers have an obligation to their clients to
5  make objections when they believe that evidence being offered
6  is improper under the rules or that questions being asked are
7  improper under the rules.  You should not be influenced by
8  the objection or by my ruling on the objections.

9         If I sustain the objection, ignore the
10  question.  If I sustain an objection to an answer, ignore the
11  answer.  If I overrule the objection, treat the question and
12  the answer like any other.

13         If you are instructed that some item of
14  evidence is received for just a limited purpose, you have to
15  follow that instruction and you cannot consider it for other
16  purposes.

17         Other things that are not evidence, testimony
18  that I have excluded or told you to disregard, that's not
19  evidence.  You must not consider that at all for any purpose.

20         Anything that you may have seen, heard or read
21  or observed outside the courtroom is not evidence, and you
22  may not consider it for any purpose in this case.  You must
23  disregard it.

24         Anything that happened outside that is not
25  evidence in this case you may not consider.  You must decide

1   this case based solely on the evidence presented here in this
2   courtroom.
3              There are two kinds of evidence, ladies and
4   gentlemen, direct and circumstantial.  So what's the
5   difference?  Direct evidence is direct proof of a fact, an
6   eyewitness says I saw it happen.
7              Circumstantial evidence is proof of facts from
8   which you can infer or conclude that other facts exist.  For
9   example, there are tracks in the snow in the shape of feet.
10  A person made those, for an example.
11             I will give you further instructions on this as
12  well as other matters at the end of the case, but keep in
13  mind that you can consider both direct and circumstantial
14  evidence.
15             You will hear testimony of witnesses that the
16  government will call.  I remind you that the defense has no
17  obligation to call any witness or to present any evidence at
18  all, it's only the government's burden; and it will be up to
19  you, no matter who calls witnesses, to decide which ones to
20  believe, which ones not to believe or how much of any
21  witness's testimony to accept or reject.  And again, I will
22  give you some guidelines for determining the credibility of
23  witnesses at the end of the case, but you must know that that
24  is part of your job.
25             And as I told you at some length, this is a

1  criminal case.  We try a criminal case with certain basic
2  rules that apply here.  First, the defendant, Mr. Jason
3  Gandy, is presumed innocent unless and until he is proven
4  guilty.  The indictment against Mr. Gandy is only
5  accusations, nothing more, it is not evidence.  It is not
6  proof of guilty or anything else.  Mr. Gandy starts out with
7  a totally clean slate.
8              Second, the burden of proof, you are aware of
9  this, is on the government, on the prosecution until the very
10 end of the case.  The defendant has no burden to prove his
11 innocence.  The defendant has no burden to present any
12 evidence.  The defendant has no burden, no obligation to
13 testify.  Those are critical.  Because the defendant has the
14 right to remain silent, a Constitutionally protected right,
15 the law prohibits you from arriving at your verdict by
16 considering that the defendant may not have testified.
17             Third, the government must prove the
18 defendant's guilt beyond a reasonable doubt; and I am going
19 to give you more instruction on that later.  But you have to
20 remember, if you have been involved in civil cases before,
21 this is different.  It is a different burden, a different
22 proof requirement that the prosecution has to meet.
23             I have given you -- and I will give you
24 details I haven't given you -- I will give you detailed
25 instructions on the applicable law at the end of the case to

1    control your deliberations and decisions.  That law will
2    explain the elements of each of the offenses that the
3    defendant is charged with.  I have summarized for you what
4    those counts are, and the parties will go through them again
5    and the evidence that they expect to present, receive in
6    their opening statements, which will occur next.

7                The opening statements are not evidence.  They
8    are merely a summary of what the parties' lawyers expect the
9    evidence will look like, but what they say is not itself
10   evidence of anything.

11               During the course of the trial, as I told you
12   repeatedly, you have to limit what you consider to the
13   evidence presented in this courtroom.  That means that during
14   the course of this trial you may not speak with any witness,
15   you may not speak with the defendant, you may not speak with
16   any of the lawyers in the case, and you may not talk to
17   anybody about the case or allow anybody to discuss it in your
18   presence, and I mean communicate in any way.

19               So, to start with, the attorneys and the
20   parties' witnesses, you may find yourself in an elevator with
21   someone you recognize as a witness or one of the lawyers.  If
22   that happens, give them the cold shoulder.  Ordinarily small
23   talk, fine.  Not here.  We don't even want to create an
24   appearance of impropriety.  So do not engage the attorneys if
25   you find yourselves in the hallway or bathroom or in an

1  elevator with them, even in small talk, and they will not put
2  you in an awkward position of having to engage them in small
3  talk.  Maintain the stoney silence, okay.

4           Similarly, you cannot possibly know who the
5  next witnesses in the case are going to be or what they look
6  like, so hold yourself apart from other people you run into
7  in the courthouse.  That's one reason we urge you to bring
8  your lunch with you and not go down to the cafeteria and
9  engage in a nice conversation and find out when we resume
10  court after lunch that the person you were talking to is the
11  next witness in the case.  We don't want that to occur.  To
12  avoid it, hold yourself apart from people you may encounter
13  in and around the courthouse except those you know to be
14  court personnel, such as Ms. Eddins.

15           And if you have any concern on scheduling or if
16  anybody should attempt to approach you to talk about the case
17  or communicate about it in any way before the case is
18  completely over, let Ms. Eddins know as promptly as possible.
19  She will bring any issues to my attention.

20           In addition and equally important, during the
21  course of this trial don't talk about the trial with anybody.
22  This includes your family, your friends, the people with who
23  you work.  That means that when you get done today and you
24  call your family, you call your employer, you call your best
25  friend and say I got picked for a jury, they will ask you two

questions:  How long are you going to be on this jury
service, how long is it going to take and what's the case
about?

You can give them your best estimate of time,
recognizing it's only an estimate, but you can't tell them
what the case is about or anything about it.  There you have
to say, I'm not going to tell you now.  We are not talking
about it.  When it's all over, I will not be subject to this
restriction.  But until then you can't talk about it.  That
includes, ladies and gentlemen, not talking about the case
even among yourselves until you have heard all of the
evidence, you have heard my instructions on the law, and you
have heard closing arguments from the attorneys and you are
all together deliberating at the end of the case.  Until
then, talk about your kids, talk about your summer, talk
about anything in the world but not this case.  When you are
on breaks, gathering in the morning, wait for all to arrive.

And finally, the prohibition against any kind
of communicating about the case extends to any kind of
virtual communication.  No texting, no posting, no
Facebooking, no anything.  Do not attempt through any means
or medium, electronic or otherwise, to get any information
about the case that you don't get in this courtroom.  Don't
do any research on the case on the internet or about any of
the people you hear referred to, none.  Do not text anybody

1    about it or anybody and any social media or any kind of
2    electronic messaging at all, anything about the case, and do
3    not allow anybody to do that to you.  Any attempt to violate
4    these instructions you need to let Ms. Eddins know right
5    away.
6            Don't engage in any outside reading on any
7    issue about the case or any of the people it involves.  Don't
8    visit any of the places you might hear mentioned, whether in
9    person or on maps or online resources such as Google, do not
10   do it.
11           You must not read anything about the case.  I
12   don't know if there is going to be any media attention.  I
13   give this instruction in every case out of an abundance of
14   caution.  If there is anything in the paper, don't read it.
15   If there is anything in the news or on television or radio,
16   turn it off, don't listen, don't watch.
17           You have to base your verdict on what you hear
18   and see as evidence in the courtroom and my instructions on
19   the law, not on what you might hear some reporter say or some
20   outside person might say to you.
21           Do not get on the internet or any other form of
22   electronic communication to get or provide any information
23   about the case or anybody else, anything else, any other
24   media platform.  That includes every kind of search engine,
25   every kind of social media that is out there today, and I

1  can't list them all.  Do not do any research into anybody,
2  the parties, the witnesses, the lawyers or the Judge.
3          The reason for these rules -- and I can't say
4  this often enough -- your decision in this case has to be
5  based on what happens inside the courtroom.
6          We are about to begin the next phase of the
7  trial.  First the government is going to make an opening
8  statement.  This is simply an outline to help you understand
9  the evidence as it is admitted that the government believes
10 will be presented, then the defendant's attorney plans on
11 making an opening statement.  That will do the same thing
12 from his client's perspective.
13          Opening statements are not evidence, they are
14 not legal instructions, they are not instructions on the law,
15 and they're not going to be arguments, it's an outline; and I
16 have limited them to time, so if you hear me say "two
17 minutes," you'll understand why.
18          When we are finished with opening statements,
19 the prosecution will present its witnesses and the defense
20 counsel may cross-examine them.  After the government has
21 presented all of its witnesses in what we call its case in
22 chief, the defendant may, no requirement, but he may present
23 evidence himself, present witnesses.  And if the defendant
24 does present witnesses, the government may cross-examine them
25 and we may even have rebuttal witnesses when the cases are

1  completed otherwise.

2          After all of the evidence is in, I will
3  instruct you on the law, you will hear closing arguments from
4  the attorneys and the case will then be yours to deliberate.
5  That's our process.

6          We will generally work from 9:00 in the morning
7  until 5:00 at night.  There may be occasions in which we stay
8  somewhat longer if we can finish a witness completely, which
9  might be important if the witness is from out of town or out
10 of country; but I won't keep you past 5:00 unless all of you
11 can make that work.  We will try to give you advance notice.

12         We will generally take a brief break in the
13 morning, we will take about an hour for lunch, no more.  We
14 may try to do it shorter, a brief break in the afternoon and
15 try to get you out of here.  The nice thing about July in
16 Houston is traffic is a little bit less than when school
17 starts up again, but it's still traffic and we know that.

18         There will be times when I work with the
19 lawyers over breaks because I don't allow the testimony of
20 witnesses to be interrupted by an extensive legal argument on
21 points that may arise, and sometimes I can't decide those
22 points without hearing from the attorneys.  So rather than
23 have them huddle up here and keep you in your chairs, and it
24 can go on a while and be disruptive because it interrupts
25 everything, what I may do and I often do is tell the lawyers

move on to a different area and we will pick it up at the next regularly scheduled break.  That may extend some of the breaks even though we are working, but we will try to make those occasions as few as possible and if they are inevitable, as short as possible; but please understand that we must be thorough, we must be careful and that can take time.

Ladies and gentlemen, you may bring note pads in with you, you may take notes.  If you do take notes -- and we'll provide the pads, they're in the jury room, and we have got the pens in there for you -- if you do take notes, leave your notebooks in the jury room at the end of the day, do not take them home.

And if you do take notes, be careful that you don't get so distracted taking notes that you don't pay attention to what's going on.  And in a group as big as yours, there is a certain risk that some people may take better notes than others and there is the risk that the jurors who do not take notes at all or don't take good notes will depend on the jurors who do take them or take better notes.

The jury system depends on each one of you to separately pay close attention in arriving at a unanimous verdict as to each count.  The jury system works well if each of you remembers that your notes are only memory aids.  You

1    should not give the notes of anyone precedence over your

2    individual, independent recollection of the evidence; and if

3    you didn't take notes or you took bad notes, you should rely

4    on your independent recollection and not be unduly influenced

5    by the notes of other jurors.  Notes are not entitled to any

6    greater weight than the memory or impression of each juror as

7    to what the testimony may have been.  Whether you take notes

8    or not, each of you must form and express your own opinion as

9    to the facts of the case.

10           We do have a court reporter making a record of

11   the case, but we will not have typewritten transcripts

12   available for you to use in making a decision.  You will have

13   in the jury room with you all the exhibits that have been

14   admitted into evidence.

15           And remember, ladies and gentlemen, you are the

16   judges of the facts.  It is your duty to base your verdict on

17   the evidence and my instructions on the law without bias,

18   prejudice or sympathy.  That was the promise you made and the

19   oath you took before being accepted by the parties as jurors,

20   and the parties and the Court have the right to expect

21   nothing less.

22           So with that, ladies and gentlemen, I will

23   invite you to give your attention to the attorneys as they

24   address you in their opening statements.  I have limited them

25   to the time, as I've said.  I believe we will begin with the

1    government, the prosecution, and I will refer to them

2    sometimes as the government and sometimes as the prosecution;

3    it's the same.

4              Go ahead, Ms. Leo.

5              MS. LEO:  Thank you, Your Honor.  May it please the

6    Court.

7              THE COURT:  Please use the microphone or use the

8    podium, please.

9              MS. LEO:  Ladies and gentlemen of the jury, good

10   afternoon.  Love, acceptance, a place to stay and money.

11   Love, acceptance, a place to stay and money, those are four

12   things that you will hear about that the minor victims in

13   this case wanted, and those are four things that the

14   defendant, Mr. Gandy, knew that the minor boys wanted.

15             THE COURT:  This is not argument.  Please explain

16   what you think the evidence will show.

17             MS. LEO:  Yes, Your Honor.

18             The evidence will show that those are the

19   things that Mr. Gandy knew that those boys wanted when he

20   befriended them.

21             As the Court stated, this is the part of the

22   trial that is called opening statements, and it's basically

23   what both parties feel that the evidence will show as to what

24   you are going to hear throughout the trial.

25             In this case the counts of the indictment can

1   be grouped into four different sections.  You are going to

2   hear about events that took place in July of 2012.  The

3   evidence and the events that took place around that time

4   involved Minor Victim No. 1 and it involved him being

5   transported to London for the Olympics.

6            You will hear from Minor Victim No. 1, he will

7   testify; and basically what he will testify to is how he came

8   in contact with Mr. Gandy.  He will testify that he was about

9   14 when he first met Mr. Gandy.

10           He will testify that shortly after he turned 15

11  that this defendant met him and took him to the Galleria.

12  The evidence will show that at that time the defendant gave

13  him a wad of cash because the defendant had learned from

14  Minor Victim No. 1 that Minor Victim No. 1 wanted money.  He

15  was a 15-year-old boy.  He came from a family of six, and

16  that for him he wanted to be able to have clothes, a

17  skateboard, be able to do different things that normal 15

18  year olds wanted to do.  And the evidence will show that the

19  defendant knew that.  And the evidence will show that the

20  defendant then took him to the mall, gave him money and let

21  him go spend this money on clothing and on skateboards.

22           The evidence will show that afterwards the

23  defendant took him back to his place and began an intimate

24  relationship with this 15-year-old boy.  The evidence will

25  show that at the time it started and it began, this

1  relationship, that the defendant then started to ask Minor
2  Victim No. 1 if in fact he would help him in his massage
3  business.
4          The evidence will show and you will learn
5  through the trial that the defendant did in fact have a
6  massage business.  However, this wasn't a normal massage
7  business.
8          The evidence will show and Minor Victim No. 1
9  will testify that the defendant told him that he would give
10 massages to other male clients and that he instructed Minor
11 Victim No. 1 on how to give these particular massages.  And
12 these massages were massages in which either the client or
13 the customer, the paying customer was masturbated or the
14 defendant or Minor Victim No. 1 was.  So these were massages
15 that go beyond what you would normally think of massages.
16 For a lack of a better word or for the slang term, they were
17 massages with a happy ending.
18         Ladies and gentlemen, you will hear that this
19 took place between April of 2012 and July of 2012 and that
20 the defendant would have Minor Victim No. 1 come over and
21 perform these massages, all the while he is getting paid for
22 it, and in turn he gives some of the money over to Minor
23 Victim No. 1.
24         Ladies and gentlemen, you will also hear that
25 during this time frame the defendant brought up the idea of

1  going to London with Minor Victim No. 1, and Minor Victim No.

2  1 was eager to travel.

3        The evidence will show that the defendant had

4  contacted Minor Victim No. 1 and helped him to obtain a

5  passport and helped him with getting paperwork needed in

6  order to travel.

7        The evidence will show that they did in fact

8  leave here in Houston and they traveled to England on or

9  about July the 18th of 2012.  The evidence will show that

10  once they arrived in the UK they were actually not admitted

11  into the UK.

12        You will hear testimony from a border officer

13  who worked in the UK, Officer Reeves.  He will testify that

14  he was the first person that basically came into contact with

15  the defendant and Minor Victim No. 1 when they arrived in the

16  UK.

17        He will testify that as his job he is supposed

18  to be trying to see which people should or should not be

19  allowed entry into the United Kingdom.  He will testify that

20  on this particular occasion that he saw the defendant and

21  Minor Victim No. 1 approach him with passports.  He started

22  questioning them like he would do any other passenger who was

23  getting off of a plane and trying to come into the country;

24  and when he started to ask them questions, there was some

25  discrepancies.  And one of the flags that it sent out for him

1    was the fact that there was this man, the defendant, who was

2    in his mid 30s and there was this young boy who was 15, and

3    they were not related.

4           Officer Reeves will testify that in his

5    training to become a border officer he has taken classes that

6    are safeguard classes, basically the different things to look

7    for in regard to exploitation and vulnerable victims that are

8    being brought into the country.

9           Officer Reeves will testify that based off of

10   that training and the discrepancies in what the defendant and

11   Minor Victim No. 1 was telling him about, he decided that it

12   didn't seem right at that point to admit them into the

13   country.  And what he did is basically he asked for a more

14   thorough investigation or Secondary.

15          You will hear from the Secondary officer, who

16   is Officer O'Donavan.  That officer will testify in regards

17   to what she did when she got this case.  She will testify

18   that she conducted further investigations and interviews both

19   with Minor Victim No. 1 and the defendant.  She will also

20   testify that she saw the same discrepancies and even more so

21   and she caught them in different statements that they were

22   making that were not adding up.

23          At that point in time, after deciding what to

24   do, she decided that they were not going to be allowed entry

25   into the UK., and it was determined that they were going to

1  have to be put back on a plane and sent back to the United
2  States.
3          The evidence will show they were separated and
4  they were sent back to the United States on two different
5  flights.  The evidence will show that when Minor Victim No. 1
6  arrived back into the United States, he came back carrying a
7  computer with him, a laptop.
8          The evidence will show that after Minor Victim
9  No. 1 came back into the country, he was interviewed at a
10 child advocacy center.  The evidence will show and he will
11 testify as to what happened regarding his relationship and
12 how it came to be that he was going over to the UK with the
13 defendant.
14          The evidence will show that, and he will
15 testify, that again he met the defendant on Facebook and that
16 he was engaging in this massage business with the defendant
17 at the defendant's behest in order so that the defendant
18 would make money.
19          He will testify that the reason that they were
20 going over to the UK was that the defendant had wanted to set
21 up a massage business over in the UK and was trying to get
22 some clients and customers over there.
23          You will also hear, and Minor Victim No. 1 will
24 testify, that the laptop that he was carrying was the
25 defendant's and the defendant had asked him in fact to carry

1    it with him.

2              You will hear from Jeff Chappell, who is

3    employed through Homeland Security Investigations.  He is a

4    forensic examiner.  And he looked at that particular

5    computer, that laptop.  He will testify that after looking at

6    the laptop, he was able to determine there were about 50

7    images of child pornography on that laptop.  He was also able

8    to determine based off of what was on the laptop that the

9    laptop did in fact belong to the defendant Mr. Gandy.

10              You will also hear from Minor Victim No. 1 that

11    in order to get the business for these massages that the

12    defendant would ask Minor Victim No. 1 to take pictures of

13    himself or that the defendant would himself take pictures of

14    Minor Victim No. 1, and these pictures included pictures

15    where Minor Victim No. 1 was not wearing any clothing or very

16    minimal amount of clothing.

17              And specifically there is one image, and this

18    is an image that Special Agent Chappell found while he was

19    doing the examination on the laptop.  It's a picture of Minor

20    Victim No. 1 where he is only wearing boxers, but his boxers

21    are pulled up in a way that it looks almost like a loincloth

22    that is covering his genitals.

23              You will hear evidence or you will hear

24    testimony that that particular picture was in fact posted on

25    Craigslist for purposes of getting business for this massage,

1   the massages that the defendant was performing for purposes
2   of making money.
3            Ladies and gentlemen, you will hear that at
4   this time in July, 2012 when this investigation arose after
5   the defendant and Minor Victim No. 1 came back to the United
6   States, that Special Agent Juanae Johnson with Homeland
7   Security Investigations began to look a little bit deeper
8   into the allegations that Minor Victim No. 1 made against the
9   defendant; and through her investigation she was able to find
10  other officials that came forward, other boys, and those were
11  the other victims that are in the other counts in the
12  indictment.
13           So, dealing with Count 1 is the transportation
14  of the minor, Minor Victim No. 1 to the UK for purposes of
15  prosecution or some other sexual offense.
16           Count 2 is dealing with the attempted
17  production or production of child pornography, and that's in
18  regards to the picture of Minor Victim No. 1.
19           Count 3 deals with the transportation of child
20  pornography in interstate or foreign commerce, and that is
21  the pornography that was found on the laptop computer.
22           And Count 4 deals with the sex trafficking of
23  Minor Victim No. 1.  And those offenses, the time frame on
24  that is April of 2012 up through July of 2012.
25           Now, in regards to the other counts, they are

associated with the other boys that came out during this
investigation.  And I will start with the Minor Victim No. 3
who is listed in, I believe it's Count 5 -- I'm sorry --
Count 6 of the indictment.

You will hear from Minor Victim No. 3.  He is
now someone who is almost 30.  He is going to testify that he
met the defendant back in 2005 in the summer.  He will
testify that at the time he met the defendant, he was -- he
knew the defendant because his dad had been a client of the
defendant and that he also was helping his dad with some
construction equipment and the defendant had requested his
help.

You will hear from him, and he will testify
that at that time in 2005, he was confused.  He was at the
point of his life where his sexuality, he was realizing his
life and his sexuality.

You will hear that the defendant befriended him
and made him feel comfortable, and you will hear the evidence
that at that time the defendant started a relationship with
Minor Victim No. 3, who then was, again, 15 years of age.

You will hear that after this relationship grew
and Minor Victim No. 3 was in love with the defendant, the
defendant brought up the suggestion of having Minor Victim
No. 3 help him with those massages.  Minor Victim No. 3 will
testify that on one occasion that the defendant had asked him

1   if he would help massage his eye and brought him into the
2   room with him to perform this massage.  You will hear from
3   Minor Victim No. 3 that at the time the defendant had told
4   him all he needed to do was just rub his eyelids and he would
5   provide him and pay him money.
6           You will hear that at that time, because Minor
7   Victim No. 3 was in love with the defendant and wanted to do
8   this, he went and he attempt to do this.  And that was one
9   occasion where he did rub an individual's leg, the client's
10  leg and then left the room.
11          You will hear that shortly thereafter the
12  summer ended and Minor Victim No. 3 was no longer able to see
13  the defendant because he went back with his mother who was
14  not living here in the Houston area.
15          You will hear then the following summer when
16  Minor Victim No. 3 came back that he did see the defendant,
17  but at that time, at that point in time the defendant had
18  moved on to another boy, and that boy was Minor Victim No. 2.
19          And you will hear from Minor Victim No. 2.  He
20  will testify that he met the defendant, Mr. Gandy,
21  approximately in the fall of 2005.  You will hear testimony
22  from him that he had a situation come up with his parents and
23  he also was coming forward with his sexuality and his parents
24  didn't believe him about certain things and he reached out to
25  sort of to talk to different individuals online.

1          You will hear testimony from Minor Victim No. 2

2    that he met the defendant online and that the defendant told

3    him he had a place where he could stay, because at that point

4    Minor Victim No. 2 didn't want to be with his family.

5          You will hear Minor Victim No. 2 testify that

6    he then met up with the defendant and the same thing

7    happened.  The defendant started an intimate sexual

8    relationship with Minor Victim No. 2, who at that time was

9    17.

10          You will hear from Minor Victim No. 2 that

11    after the sexual relationship began and after Minor Victim

12    No. 2 fell for and fell in love with the defendant that the

13    defendant approached him and asked him to help him with the

14    massage business.

15          You will hear from Minor Victim No. 2, who will

16    testify, that again there would be a client on the table, the

17    defendant would perform a massage and that now at this point

18    it was Minor Victim No. 2, he would be in the room as well

19    and would be only in his underwear; and that during the

20    massage either the defendant would be massaging the customer

21    client, and at that point the client would turn and would

22    touch either Minor Victim No. 2 or touch the defendant or the

23    defendant would touch the client or Minor Victim No. 2.  So

24    there was some sort of touching, sexual touching that was

25    involved with these massages during that time frame.

1          You will hear from Minor Victim No. 2 that the
2    defendant made money from those clients and that the
3    defendant in turn gave money to Minor Victim No. 2.
4          You will hear from Minor Victim No. 2 that he
5    was with the defendant, Mr. Gandy, for about three years,
6    that three-year time span this was occurring.
7          Now, the other thing is, ladies and gentlemen
8    of the jury, at this point there is another minor victim who
9    is involved, and that's Minor Victim No. 4.  And Minor Victim
10   No. 4 is in the last count of the indictment.  And Minor
11   Victim No. 4 met the defendant in approximately August,
12   September 2006.  Minor Victim No. 4 was an individual who
13   also, about his junior year in high school, came out to his
14   parents that he was gay.  Minor Victim No. 4's family did not
15   take kindly to that, and basically he got into a fight with
16   them, left and wound up going, getting into a relationship
17   with an older man.
18         At some point he finds himself being in a
19   situation, that is Minor Victim No. 4, where he didn't have a
20   place to stay.  The older boyfriend that he had cheated on
21   him and so he is now not knowing what to do.
22         He will testify, Minor Victim No. 4, that he
23   went online and he met the defendant and that the defendant
24   told him that he had money, that he had a place to stay and
25   that he would help put him in private school because at this

1  point Minor Victim No. 4 is going to be a senior in high

2  school.

3           Minor Victim No. 4 will testify that he thought

4  that was great, he thought that was a good idea and went with

5  the defendant.  Again, a very similar situation.  The

6  defendant starts an intimate sexual relationship with Minor

7  Victim No. 4, and at some point shortly thereafter he

8  approaches Minor Victim No. 4 and asks him to help him with

9  these massages, again paying the minor victim, getting paid

10 by his client for a sex massage and then paying a portion of

11 that to Minor Victim No. 4.

12          Now, the evidence will show that during these

13 massages with Minor Victim No. 4 they are now taken a little

14 bit more to the extreme.  Minor Victim No. 4 will testify

15 that he is now naked and he is in the massage room and that

16 there was some sort of sexual activity going on in regards to

17 either the client, him masturbating the client or the client

18 masturbating him or the defendant masturbating the client

19 while someone else, while the client is touching Minor Victim

20 No. 4.

21          He will testify that this went on for a period

22 of a full week, and at some point in time he realized that

23 it was not a situation that he should be in and realized that

24 he was basically just acting as a prostitute for the

25 defendant; and he was able to get himself away from the

1  defendant at that point in time.

2           Ladies and gentlemen of the jury, it is the job

3  of the Court to rule on all of the legal issues that come up

4  in this case and it is the job of y'all to decide all of the

5  credibility issues for all of the witnesses who take the

6  stand and testify, and it's the job on behalf of myself and

7  the staff of the U.S. attorney's office and the government to

8  prove to you the elements beyond a reasonable doubt.  I am

9  hopeful after you hear all the evidence that you will in fact

10  find the defendant guilty since the government has proven to

11  you beyond a reasonable doubt that he is in fact guilty of

12  the crimes charged in the indictment.

13           Thank you.

14       THE COURT:  Thank you very much.

15           On behalf of the defendant.

16       MR. BUCKLEY:  Thank you, Your Honor.  May it please

17  the Court, counsel.

18           Good afternoon, ladies and gentlemen of the

19  jury.  The evidence will not show that Jason Gandy committed

20  the crimes that are alleged in the indictment.

21           You are going to see and hear a lot of things

22  in this case that you don't like.  You are not going to like

23  them, and you are going to see things and hear things that

24  you may find and probably will find deeply personally

25  offensive.

1           But this is a case about very specific federal

2    crimes.  This indictment charges very specific federal

3    crimes.  And the evidence will show that Mr. Gandy did not

4    travel with a minor to engage in prostitution or other

5    illegal sexual activity.  The evidence will show that Mr.

6    Gandy did not produce or attempt to produce material that is

7    defined under federal law as child pornography.

8           The evidence will show that Mr. Gandy did not

9    knowingly travel with material that's defined under federal

10   law as child pornography.  And the evidence will show that

11   Mr. Gandy did not engage in the offense defined under federal

12   law as sex trafficking.

13           This is a fairly simple and straightforward

14   case when you really break it down, and I am going to give

15   you, I think, a very brief framework about what I think the

16   evidence will show from our perspective, and it's going to be

17   very short.

18           Much of this case has to do with four young men

19   who made a conscious decision to engage with Mr. Gandy, and

20   they deliberately worked to make themselves enticing to Mr.

21   Gandy, and they did this for a number of reasons, some of

22   them individual to each of these young men, for financial

23   support, to explore their own sexuality, for emotional

24   support, and in some cases in the pursuit of what they

25   believed was true love.

1          And you may find that Mr. Gandy's involvement
2     in these interactions was deeply offensive, and I don't think
3     there is any question that you will.
4          What the evidence will show is what many of you
5     would commonly as lay people already understand to constitute
6     statutory rape.  But that's not what's charged in this
7     indictment.  That's a different case for a different court
8     for a different indictment.
9          The other part of this case, of course, is not
10    just the young men, but it's Mr. Gandy himself.  Mr. Gandy
11    enjoys the company of the young men and enjoys the company of
12    some young men who are under the age of consent.  Some of
13    that happened in this case, but that's not the specific crime
14    that Mr. Gandy is charged with.  That may be an element, as
15    you will see, of some of the crimes the federal government
16    has charged, but that's not what this case is.  This is not a
17    statutory rape case.
18          Mr. Gandy used poor judgment.  Let me rephrase
19    that.  In many cases probably the worst possible judgment in
20    the way he related to these young men.  But in his view at
21    the time, and I expect what the evidence will show, that Mr.
22    Gandy genuinely believed that he was engaging with these
23    young men in a way that they wanted it, in a way that they
24    were seeking out from him, and in no way that made them feel
25    like victims.

1          Because this case has an element and an
2    accusation of sex trafficking, let me say this.  The evidence
3    in this case will not show that anyone, that any of these
4    minor complainants, these alleged minor victims, no one was
5    locked in a room, no one was ever smuggled across the border
6    without his consent, no one was ever held in a basement, no
7    one was ever prohibited from leaving a house or prohibited
8    from having a cell phone, prohibited from going to the mall.
9          This is not the sex trafficking case that you
10   hear about on the news that gives you feelings of horror.
11   That's not what these allegations are, and none of that
12   happened in this case.
13          You will hear, we expect, from the four men who
14   are listed as Minor Victims 1 through 4.  And I don't know
15   yet exactly what they will tell you, but for varying reasons
16   unique to each of them they have decided to cooperate with
17   the government's case and testify in the manner that they
18   will.
19          In some cases it will be because they have
20   taken the paths of least resistance in dealing with the power
21   and the magnitude of the federal government.  In at least one
22   case one of these men is seeking validation, is seeking the
23   validation of being doted on by the federal prosecutors and
24   agents who specialize in these types of cases and recognized
25   as the victim of a sex crime and a specific federal crime

1  that, frankly, didn't occur; and in at least two of these

2  cases the motivation underlying the testimony involves

3  personal resentment toward Mr. Gandy himself.

4         So I won't go on and belabor the issue except

5  to say that's our framework for the case.  You will hear

6  several days of evidence on very specific federal crimes,

7  very specific; and at the end of the evidence and at the end

8  of the presentation, I will ask you to find Mr. Gandy not

9  guilty on all counts, which will be consistent with your

10  directives under the Court's instructions and within the

11  limits of the indictment.

12         I thank you in advance for your tolerance of a

13  subject matter that is difficult for all of us.  Thank you.

14         THE COURT:  Thank you very much.

15         May I see the attorneys here at the bench very

16  briefly.

17         (Conference before the bench)

18         THE COURT:  Do you have a witness ready?

19         MS. ZACK:  I think they were sent away.  When you

20  said we were just going to do opening, I don't know if they

21  sent them away.  I can find out very quickly.

22         THE COURT:  Do you have a witness we can make a

23  meaningful start on?

24         MS. ZACK:  Yes.  If they're here, we have that.

25         I think they were -- like you said, we were

1  only going to do opening.  We sent them back.

2          THE COURT:  This is more efficient otherwise, but I

3  don't think the jury will mind going on a little bit more.

4  It's 45 minutes.

5          MR. BUCKLEY:  I never complain about leaving early.

6          THE COURT:  It's 45 minutes.

7          MR. BUCKLEY:  I understand, Your Honor.

8          MS. ZACK:  If we can have two minutes.

9          THE COURT:  Is it just one?  Who is it going to be?

10          MS. ZACK:  Steven Reeves.  He is one of the UK

11  border officers.

12                    (In open court)

13          THE COURT:  Ladies and gentlemen, I told you we are

14  going to be efficient with your time, and we are going to be.

15  We have a witness ready to go.  We are going to start with

16  their testimony in the case.  We will go until 5:00 o'clock,

17  a few minutes before, and then Ms. Eddins will take you to

18  the jury room and introduce you to your new home here and

19  show you the coffee maker and the refrigerator, the

20  microwave, the important parts, and where the bathrooms are

21  and then we will excuse you for the day.  Remember, you need

22  to keep all of the instructions in mind.

23          Are we waiting or they're not here?

24          MS. LEO:  Your Honor, there was miscommunication.

25          THE COURT:  Okay.  Not here.

1          All right.  Ladies and gentlemen, due to no
2   fault of anybody but me, we are not going to have a witness
3   until tomorrow morning.  So I am sure you're grief stricken
4   to have to leave 40 minutes early.
5          So Ms. Eddins is going to take you right now,
6   show you the jury room, and then, keeping in mind all of the
7   instructions, return in the morning.
8          One more thing.  The temperature is pretty good
9   in here right now, but this building is showing signs of age.
10  Some days, whether it's July outside and close to 100, which
11  I understand it's supposed to be this week, it is icicles in
12  here.  And people show up in this courtroom in August and
13  July wearing fur-lined boots and bringing parkas; it can be
14  cold.  Sometimes not so much, it can be warmer.
15         So if you are likely to be cold in air
16  conditioning, bring a sweater or wrap in layers.  If you
17  usually become warm, even in air conditioning, dress
18  appropriately.  This is a formal proceeding.  Flip-flops,
19  cutoffs, no thank you, but dress so then you will be
20  comfortable; and remember to follow all of the Court's
21  instructions.
22         Ladies and gentlemen, thank you again for the
23  time and the attention you have already given us and that we
24  know you will continue to give.  Thank you.  Follow Ms.
25  Eddins.

1                        (Jury excused)

2          THE COURT:  A couple of things.  Remember, this is a

3    formal proceeding.  Please remember to address each other and

4    your witnesses and parties as Mr. or Ms. or doctor or

5    whatever, agent, not by first names, No. 1.

6                    No. 2, the government brought to my attention a

7    potential confusion or misstatement in the earlier order that

8    I issued on the suppression motion.  We have corrected that.

9    I am going to issue an amended order.  It does not change the

10   reasoning or the outcome at all, but it does not contain that

11   error.  And thank you for pointing it out.

12                   Again, no speaking objections.  Don't ask for

13   bench conferences.

14                   Who will your first witnesses be in the

15   morning?

16         MS. ZACK:  Your Honor, we will start with the UK

17   border protection people and then we will move right into the

18   victims.

19         THE COURT:  All right.

20                   Any legal issues that are going to come up that

21   we know of now for the testimony of any of those individuals?

22         MR. BUCKLEY:  I am not aware of any at this time,

23   Your Honor.

24         THE COURT:  If you become aware of any, let me know

25   by 8:30 tomorrow morning.  I will be here.

1           MR. BUCKLEY:  Yes, Your Honor.

2           THE COURT:  And remember, before the jury comes in

3   at 9:00 o'clock, somebody who knows what they're doing has to

4   come in.  If you guys are going to be using the monitors for

5   showing evidence and anything like that, you need to have

6   your IT people here by 8:30 making sure it works everyday,

7   okay.

8           MS. ZACK:  Does Your Honor have any issue with us

9   moving this way so we are facing the jury?

10          THE COURT:  As long as facial expressions are not

11  used to convey anything by parties or witnesses or anybody

12  else.

13          MS. ZACK:  No.

14          THE COURT:  That's fine.  That is fine.

15              Anything else that we need to take up today?

16          MR. BUCKLEY:  I don't believe so, Your Honor.

17          MS. ZACK:  No, Your Honor.

18          THE COURT:  Very good.  Thank you.

19              Have you gotten your room settled?

20          MR. BUCKLEY:  Pardon me, Your Honor?

21          THE COURT:  Do you have a room now available for you

22  to use?

23          MR. BUCKLEY:  We do.

24          THE COURT:  Good.  And the government has it's

25  regular place.

1          All right.  There being nothing further, you

2    will get this amended order later, probably tomorrow morning.

3          MR. BUCKLEY:  Yes, Your Honor.

4          THE COURT:  And you are excused until -- if there is

5    an issue that comes up, email Ms. Eddins, be here at 8:30.

6    If not, have your IT people, computer people here at 8:30, I

7    will be available, and we will begin as soon as the jury

8    arrives at 9:00 o'clock.

9          MR. BUCKLEY:  Assuming no issues and no technical

10   issues, is the Court requesting we be here still at 8:30 or

11   9:00?

12         THE COURT:  9:00 is fine, but by 9:00 o'clock.

13         MR. BUCKLEY:  Understood.

14         THE COURT:  Anything else?

15         MS. ZACK:  No, Your Honor.

16         THE COURT:  Thank you.

17

18

19         (Conclusion of proceedings for July 18, 2018)

20

21

22

23

24

25

CERTIFICATION

I, Fred Warner, Official Court Reporter for the United States District Court for the Southern District of Texas, Houston Division, do hereby certify that the foregoing pages 1 through 256 are a true and correct transcript of the proceedings had in the above-styled and numbered cause before the Honorable LEE H. ROSENTHAL, Chief United States District Judge, on the 18th day of July, 2018.

WITNESS MY OFFICIAL HAND at my office in Houston, Harris County, Texas on this the 7th day of November, A.D., 2018.

/s/ Fred Warner
Fred Warner, CSR
Official Court Reporter